**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: _____

IN RE: APPLICATION OF
HORACIO MEDINA

Applicant,

v.

Pursuant to 28 U.S.C. § 1782 for Judicial Assistance
in Obtaining Evidence for Use in Foreign Proceedings,

_____/

**DECLARATION OF HANS-ULRICH KUPSCH IN SUPPORT OF HORACIO**
**MEDINA'S *EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE**
**PURSUANT TO 28 U.S.C. §1782**

      I, HANS-ULRICH KUPSCH, hereby declare under penalty of perjury, pursuant to

28 U.S.C. §1746, that the following is true and correct to the best of my knowledge and belief:

      1.      I am a Swiss citizen and reside in Küsnacht, Zurich, Switzerland. I am over the age

of eighteen, and I am fully competent to make this declaration.

      2.      I am admitted to practice law in Switzerland since 2004. I work as an attorney at

the law firm Blum & Grob Attorneys at Law Ltd in Zurich, Switzerland.

      3.      I have extensive experience in international litigation and arbitration matters as well

as proceedings that involve international fraud and asset tracing. I am familiar with the rules of

civil procedure and the conduct of litigation before Swiss courts. A copy of my resume is attached

as Exhibit 1 to this declaration.

4.      I represent Horacio Medina ("Mr. Medina") in preparation of contemplated civil and criminal legal actions in Switzerland against Jorge Alejandro Rodriguez ("Mr. Rodriguez"), (the "Swiss Proceedings"). The Swiss Proceedings relate to damages and claims for compensation of immaterial damage, notably due to infringement of personality rights,  suffered by Mr. Medina as a result of Mr. Rodriguez's false accusations, misleading administration of justice, misuse of judicial proceedings, and wrongful acts constituting unfair competition and harm of personal rights, as further explained below.

5.      I submit this Declaration in support of Mr. Medina's application for judicial assistance in obtaining evidence for use in foreign proceedings pursuant to 28 U.S.C. §1782 ("Application").

6.      The Application seeks evidence from Mr. Ivan Freites ("Mr. Freites") in the form of a deposition testimony and requests for production of documents, as outlined in a proposed subpoena. *See* Exhibit 2, Proposed Subpoena to Mr. Freites.

7.      The evidence sought from Mr. Freites will be used in the Swiss Proceedings.

8.      Mr. Freites resides in Miami, Florida, and can be found within the geographic jurisdiction of the United States District Court for the Southern District of Florida.

9.      The facts stated in this declaration are based on my personal knowledge about Swiss law, as well as background information provided by Mr. Medina, including documents and information he provided to me relating to the U.S. proceedings described below.

I.      **Factual Background of the Swiss Proceedings**

   A.      **Relevant Parties and Entities**

10.      Mr. Medina is a Venezuelan national, and he resides in Miami, Florida. He is the president of PDVSA Ad Hoc, which is an administrative board appointed by the Venezuelan

National Assembly in 2015 to protect and manage Petróleos de Venezuela, S.A.'s ("PDVSA") foreign assets in jurisdictions that recognize the Venezuelan opposition-led authorities. PDVSA Ad Hoc differs from PDVSA since PDVSA is operated and controlled by the Maduro administration.

11.     Mr. Rodriguez is a Venezuelan engineer and public commentator on oil-and-gas matters that lives in Switzerland. He describes himself as a political activist and comments in news outlets and social-media platforms. His last known address is Eichholzstrasse 2, 6312 Steinhausen, Switzerland.

12.     Mr. Freites is a Venezuelan national and a former president of Union of Oil Workers of the state of Falcón, Venezuela, which is associated with the national federation of petroleum workers ("FUTPV"). He resides in Miami, Florida, at this address: 5531 NW 112th Avenue, Apt. 102, Doral, Florida 33178. *See* Exhibit 3, Joint Notice of Change of Address. He is occasionally quoted in media outlets regarding issues related to PDVSA's labor and operation.

13.     PDVSA is a Venezuelan state-owned oil company. It was created in January 1976 following the 1975 nationalization of the oil industry. PDVSA is a vertically integrated company. Its oil-related business includes exploration, production, refining, and marketing. Historically, PDVSA has been the principal source of revenue for the Venezuelan government.

14.     Citgo Petroleum Corporation ("CITGO") is a US-based refining corporation, with its headquarters in Houston, Texas. It operates three refineries: Lake Charles in Louisiana, Lemont in Illinois, and Corpus Christi in Texas. It also operates a nationwide network of CITGO-branded gas stations, mostly owned and operated by independent retailers. CITGO has long been an indirect subsidiary of PDVSA through a chain of US holding companies, PDV Holding, Inc., and CITGO Holding, Inc.

### B.     Mr. Rodriguez's Wrongful Conduct

15.     Although they are not admitted to practice law in the United States, Mr. Rodriguez and Mr. Freites have filed and acted as *pro se* co-plaintiffs in multiple lawsuits in US federal courts against various defendants, including Mr. Medina. After filing those lawsuits, Mr. Rodriguez and Mr. Freites publicly solicited former PDVSA employees to join, as plaintiffs, in the lawsuits filed by Mr. Rodriguez and Mr. Freites.[1]

16.     Accordingly, Mr. Rodriguez has been directing and coordinating these proceedings from Switzerland, apparently tries to extend it to Switzerland, and has purportedly derived financial benefit from his involvement in such litigation matters, also in the United States.[2] Indeed, Mr. Rodriguez lives in Switzerland, where he is believed to maintain his permanent domicile.

17.     Mr. Rodriguez's repeated and frivolous filings in the United States, which he has prepared and transmitted from Switzerland, have caused Mr. Medina economic harm, as he has been required to incur legal expenses and dedicate considerable time and resources to defending his position against those baseless claims, and he is supposed to has also frivolously initiated legal proceedings against Mr. Medina in Switzerland.

---

[1]     *See* Exhibit 4, Mr. Ivan Freites post on X dated January 29, 2024; Exhibit 5, Google Form prepared by Mr. Rodriguez and Mr. Freites. Mr. Rodriguez and Mr. Freites invite former PDVSA employees to join them in the lawsuits by completing a Google Form. *Id.*

[2]     *See* Exhibit 6, News Article titled "I Have Decided to Withdraw from the Oil Workers Case," published on Medium by Carlos Ramírez López. In the article, Mr. Ramírez states: "At this point in the development of my intervention in the case, a person I did not know suddenly appeared before me—Jorge Alejandro Rodríguez Moreno, who lives in Zurich, Switzerland. Upon searching for information about him, I learned that he was not a lawyer but a deputy of the '*Avanzada Progresista*' party, who demanded to intervene alongside me and proposed that I sign a fee-sharing agreement. I refused, as I was not pursuing 'fees' in this case. I later learned that this individual was acting in coordination with the union leader Iván Freites, who had originally requested my involvement."

C.     **The Delaware Lawsuit**

18.     On September 7, 2023, former PDVSA employees, including Mr. Rodriguez, Mr. Freites, and Miguel Otero ("Mr. Otero"), filed a lawsuit in the United States District Court for the District of Delaware, seeking millions of dollars from PDVSA, as damages for alleged wrongful termination of their employment with PDVSA ("Delaware Lawsuit").[3] *See* Exhibit 7, Amended Complaint filed in the Delaware Lawsuit, at 76, 107–10.

19.     At first, plaintiffs filed their complaint under seal. Then, the district court ordered that all plaintiffs, except Mr. Freites and Mr. Otero, to be referred to by pseudonyms. *See* Exhibit 8, Order dated February 9, 2024, ¶¶ 5–6. The district court also disclosed Mr. Rodriguez's identity and granted him e-filing rights. *See* Exhibit 9, PACER Report, at 10.

20.     Mr. Rodriguez and Mr. Freites made their involvement in the Delaware Lawsuit public by soliciting former PDVSA's employees to join the Delaware Lawsuit. Their solicitation efforts were done via social media platforms. *See* Exhibit 4.

21.     Despite that his identity and participation in the Delaware Lawsuit was public, on April 1, 2025, Mr. Rodriguez filed in the Delaware Lawsuit a "Supplemental Notice Regarding Related Criminal Proceedings Arising from Unauthorized Disclosure and Harassment." ("Notice"). *See* Exhibit 10, Notice.

22.     The Notice states that, on January 31, 2025, Mr. Rodriguez filed a criminal complaint in Switzerland, with the Kantonspolizei Zürich, against Mr. Cesar Moya ("Mr. Moya"). *Id.*

23.     The Notice alleges that Mr. Moya engaged in cyber-harassment, defamation, hate speech, and obstruction of justice. *Id.*

---

[3]     *Freites C., et al. v. Petróleos de Venezuela, S.A., et al.*, Case No. 23-cv-989.

24.    The Notice further alleges that, between September and October 2024, Mr. Moya published defamatory, threatening, and misleading statements, including references to sealed matters and privileged information in the Delaware Lawsuit. *Id.*

25.    The Notice also claims that "there is credible evidence" that Mr. Medina has coordinated and financially supported Mr. Moya's defamatory campaign. *Id.*

26.    Based on these allegations, Mr. Rodriguez may have filed (or soon will file) a separate but related criminal complaint against Mr. Medina in Switzerland with the Kantonspolizei Zürich.

### D.    The Florida Lawsuits

27.    On October 28, 2024, Mr. Freites, along with eight *pro se* plaintiffs, filed a lawsuit in the United States District Court for the Southern District of Florida, in an attempt to establish Florida as a secondary venue for the Delaware Lawsuit. The *pro se* plaintiffs quickly attracted scrutiny from the court, which ultimately dismissed the case without prejudice because of the *pro se* plaintiffs' repeated failures to follow the court's orders. *See* Exhibit 11, Order Dismissing Case, at 2–4.

28.    Further, in an attempt to gain leverage in the Delaware Lawsuit, on January 30, 2025—two days after the dismissal of the first Florida lawsuit—Mr. Freites filed another lawsuit in Florida, joined by Mr. Otero and Mr. Rodriguez, as co-plaintiffs ("Second Florida Lawsuit")[4]. *See* Exhibit 12, Amended Complaint filed in the Second Florida Lawsuit.

29.    In the Second Florida Lawsuit, Mr. Freites broadened the list of defendants to include Mr. Medina and other individuals and entities that he alleged to have engaged in a

---

[4]    *Ivan R. Freites C et al. v Horacio Medina, et al.* Case No. 25-cv-20465.

"coordinated and malicious campaign [of] defamation, intimidation, obstruction of justice, witness tampering, and racketeering against Plaintiffs" as a result of plaintiffs' involvement in "legal proceedings related to the Venezuelan state-owned company, PDVSA, and its U.S. subsidiary, CITGO". *See id.*

30.    On April 16, 2025, Mr. Freites filed a Notice of Filing and Request for Judicial Notice Pursuant to Federal Rule of Evidence 201 ("Notice of Filing"). In this filing, Mr. Freites attached a copy of correspondence sent by Mr. Rodriguez to the Legal Atache of the Federal Bureau of Investigations at the US Embassy in Bern, Switzerland, allegedly "reporting coordinated cyberstalking, digital harassment, and threats believed to be part of a transnational conspiracy involving the same individuals and entities named as Defendants in the [Second Florida Lawsuit.]" *See* Exhibit 13, Notice of Filing, at 2 and 3.

31.    After Mr. Medina moved to dismiss the Second Florida Lawsuit, the court granted his motion and dismissed all claims with prejudice. *See* Exhibit 14, Order Dismissing the Case with Prejudice.

32.    In the Notice of Filing and its attached correspondence, Mr. Rodriguez identified himself as a lead plaintiff in the Delaware Lawsuit and disclosed his participation in both the Delaware Lawsuit and Second Florida lawsuit. Additionally, he states in the Notice of Filing that he filed the criminal complaint against Mr. Moya for allegedly disclosing public information concerning the Delaware Lawsuit.

33.    Accordingly, Mr. Rodriguez is believed to have filed (or soon will file) a criminal complaint against Mr. Medina in Switzerland with the Kantonspolizei Zürich.

## II.     Causes of Action in the Swiss Proceedings

34.     As a result of Mr. Rodriguez's allegations and purported criminal complaint in Switzerland, Mr. Medina can and intends to bring criminal proceedings in Switzerland against Mr. Rodriguez for these causes of action under Swiss law:

(i)     <u>False Accusations (Art. 303 Swiss Criminal Code)</u>: A claim for false accusations arises when someone makes an accusation to the <u>authorities</u> that a person whom they know to be innocent has committed a felony or a misdemeanor, with the intention of causing a criminal prosecution to be brought against that person, or when someone otherwise carries out malicious acts with the intention of causing a criminal prosecution to be brought against a person whom they know to be innocent.

(ii)     <u>Misleading Administration of Justice (Art. 304 Swiss Criminal Code)</u>: A claim for misleading administration of Justice arises when someone reports the commission of a criminal offence to the judicial authorities which they know has not been committed.

(iii)     <u>Offences against personal honor (Art. 173 et seqq. Swiss Criminal Code)</u>: A claim arises when someone in addressing a third party (and knowing their allegations to be untrue), makes an accusation against or casts suspicion on another of dishonorable conduct or of other conduct that shall be liable to damage another's reputation.

35.     As already stated, in the Delaware lawsuit Mr. Rodriguez's notice stated that he had filed a criminal complaint in Switzerland against Mr. Moya for cyber harassment, defamation, hate speech, and obstruction of justice, as well as for publishing defamatory, threatening, and misleading statements. The Notice also claims that there is credible evidence that Mr. Medina has coordinated and financially supported this defamatory campaign. Currently, there is no possibility for Mr. Medina to verify, whether a complaint against him has been filed since in Switzerland, persons accused in criminal proceedings are generally not notified upon the filing of a criminal complaint against them. Typically, they do not receive any information about the existence or

content of a complaint—even upon request—until they are summoned for an initial interview (interrogation) by the authorities or until other compulsory procedural measures are taken against them (such as house searches or seizures).

36.    If Mr. Rodriguez made these accusations the subject of a criminal complaint against Mr. Medina in Switzerland, be it against Mr. Medina as an accomplice or assistant to Mr. Moya or by means of an independent criminal complaint against Mr. Medina, this could constitute both the criminal offense of false accusation under Art. 303 of the Swiss Criminal Code and misleading of the administration of justice under Art. 304 of the Swiss Criminal Code.

37.    The same applies to Mr. Rodriguez's accusations in the Second Florida lawsuit, which alleges that Mr. Medina, among others, engaged in a "coordinated and malicious campaign [of] defamation, intimidation, obstruction of justice, witness tampering, and racketeering against Plaintiffs." The Notice of Filing contained a copy of correspondence allegedly "reporting coordinated cyberstalking, digital harassment, and threats believed to be part of a transnational conspiracy." It also stated that Mr. Rodriguez had filed a criminal complaint against Mr. Moya for disclosing public information.

38.    Furthermore, if the documents to be disclosed reveal that Mr. Rodriguez has addressed such accusations not only in proceedings but also to third parties, he may also have committed the offense of defamation under Art. 173 et seqq.

39.    In Switzerland, criminal proceedings are initiated by filing a criminal complaint with the police or public prosecutor. The complaint must state what has happened and any available evidence must be presented. In the preliminary proceedings, based on the suspicion that a crime has been committed, the police and public prosecutor conduct investigations and gather evidence to determine whether charges should be brought against the accused person. If, on the basis of the

investigation, the public prosecutor considers the grounds for suspicion to be sufficient, it brings

charges before the competent court. This is followed by the first instance proceedings before the

court, which are concluded with a judgment.

40.     In addition to criminal proceedings, Mr. Medina can and intends to bring civil

proceedings in Switzerland against Mr. Rodriguez for these causes of action under Swiss law:

> (iv)   Protection of legal personality (Art. 28 et seqq. Swiss Civil Code): Any
> person whose personality rights are unlawfully infringed may petition the
> court for protection against all those causing the infringement. The applicant
> may, among others, claim for damages and satisfaction and may, within the
> framework of preliminary injunction proceedings, request that the
> personality infringement be immediately prohibited and that the
> counterparty be ordered to refrain from any further such acts.

> (v)    General Tort Liability (Art. 41 Swiss Code of Obligations): A claim for
> general tort liability arises when a person unlawfully causes damages to
> another - whether intentionally or negligently. The applicant may claim
> compensation and satisfaction.

> (vi)   Claim under the Unfair Competition Act (UCA): A claim arises for any
> conduct or business practice that is misleading, or which otherwise violates
> the principle of good faith such that it influences the relationship between
> competitors or between suppliers and customers is unfair and unlawful.

41.     The accusations made by Mr. Rodriguez and the purported unjustified criminal

complaints may constitute a violation of the legal personality under Art. 28 of the Swiss Civil Code.

Personality is the totality of an individual's characteristics, which includes various aspects, among

them a person's honor.[5] In the absence of consent from the injured party, i.e. Mr. Medina, in the

absence of an overriding private or public interest, and in the absence of legal justification, the

violation would also be unlawful (Art. 28 para. 2 of the Swiss Civil Code), which would give rise

to a claim under Art. 28 of the Swiss Civil Code. In addition to the claim for prohibition, cessation,

---

[5]     *Meili*, Basler Kommentar Zivilgesetzbuch I, Art. 28 N 17 and 28.

and declaration of the unlawful infringement pursuant to Art. 28a CC, the injured party may also claim damages and compensation for pain and suffering. This would compensate Mr. Medina for the financial losses already mentioned, mainly the legal expenses as well as time and resources to defend his position against these baseless claims.

42.   Mr. Medina can also invoke Art. 41 of the Swiss Code of Obligations as a further basis for his claim. According to this provision, anyone who causes unlawful damage to another person, whether intentionally or through negligence, is liable. The prerequisite is that damage, i.e., an involuntary reduction in assets, has occurred. Furthermore, the damaging action must be unlawful and have caused the damage. The unlawfulness may lie, among other things, in the violation of legal personality under Art. 28 of the Swiss Civil Code. Finally, the damage must have been caused through culpability, whether intentionally or negligently. All of the requirements appear to be met in this case. Mr. Medina suffered damage, Mr. Rodriguez's conduct violated Mr. Medina's personality and was therefore unlawful, it also caused the damage incurred. Finally, Mr. Rodriguez made the accusations intentionally, or at least negligently. This gives Mr. Medina a claim under OR 41 OR, on the basis of which he can sue Mr. Rodriguez for compensation.

43.   In Switzerland, civil proceedings for monetary payments against private individuals are initiated by conciliation proceedings before the conciliation authority, in which an amicable settlement is sought. If the settlement fails, a lawsuit must be filed with the competent ordinary court. Under the Swiss Code of Civil Procedure, the principle of party presentation (Verhandlungsmaxime) applies, according to which it is primarily up to the parties to allege the facts upon which they base their claim; the court does not investigate the facts ex officio."

### III.   The Application

44.   Mr. Medina requires the assistance of the United States District Court for the Southern District of Florida to obtain documents and testimony from Mr. Freites, which are reasonably calculated to lead to admissible evidence to be used in the Swiss Proceedings.

45.   As explained above, in Switzerland, particularly in civil proceedings, it is up to the parties to present the facts of the case and provide the necessary evidence. If they fail to do so, or do so insufficiently, they run the risk of the court dismissing the claim. The court is not obliged to make the necessary inquiries and gather evidence on its own initiative.

46.   In order to fulfill this obligation, it is necessary for the plaintiff or complainant to inform the Swiss authorities about the background of the proceedings in the US and to submit documents and correspondence that allow conclusions to be drawn about the relationships, actions, and involvement of the persons involved in both the US and Swiss proceedings.

47.   Currently, Mr. Medina is not in possession of any documents or communications relating to the purported criminal complaint in Switzerland. Additionally, Mr. Medina has an interest in initiating potential civil proceedings in Switzerland against Mr. Rodriguez, as Mr. Rodriguez, who is not an attorney, has been acting in concert with Mr. Freites to initiate frivolous lawsuits as pro se plaintiffs against Mr. Medina and other defendants in the US, while directing and coordinating these actions from Switzerland, and upon information and belief, deriving financial benefit from his involvement in such litigation matters. These potential civil proceedings would seek, among other things, compensation for the damages Mr. Medina has suffered as a result of Mr. Rodriguez's frivolous filings.

48.   Mr. Medina requests this Court's assistance in obtaining evidence concerning the criminal complaint that Mr. Rodriguez may have filed in Switzerland, as well as any related

evidence reflecting Mr. Rodriguez improperly directing or coordinating actions from Switzerland in connection with the U.S. lawsuits brought along with Mr. Freites.

49.     Mr. Freites may be in possession of information and documents related to the causes of action in the Swiss Proceedings.

50.     To my knowledge, there are no laws or policies that would prevent the Swiss courts from admitting and giving due weigh to evidence obtained through the Application.

51.     The discovery sought in the Application does not and would not circumvent any Swiss proof-gathering restrictions under the circumstances of this case. Nor would any policy prevent the regulatory and criminal authorities from receiving and admitting such evidence.

52.     In my opinion, the discovery that Mr. Medina is seeking through his Application is not malicious or burdensome. It is an efficient, adequate, and proportional means to obtain evidence that would assist Mr. Medina in bringing the Swiss Proceedings.

53.     The Swiss courts and authorities are receptive to evidence obtained through US judicial assistance, like the Application.

54.     However, the court decides whether the evidence presented is admissible and it forms its opinion after freely evaluating the evidence.

55.     If the Swiss courts consider that Mr. Medina has obtained any evidence in violation of Swiss law, the courts would exclude such evidence. As well, if Mr. Rodriguez is sued by Mr. Medina in Switzerland, Mr. Rodriguez can petition the Swiss courts to exclude of such evidence.

Executed on November 26, 2025.

HANS-ULRICH KUPSCH



# Hans-Ulrich Kupsch

Attorney at Law; lic. iur.; LL.M., Partner
E-Mail: h.kupsch@blumgrob.ch



**Education:**
University of Fribourg (lic. iur., 2001);
Admission to the Bar in Switzerland (2004);
University of Chicago, Law School (LL.M., 2008)

**Professional Experience:**
Law Clerk at a Zurich District Court (2002-2003); Associate (2005-2012) and Partner (since 2012) with various business law firms in Zurich; Lecturer at ETH Zurich in the CAS advances studies program of ETH Zurich

**Memberships:**
ZAV (Zurich Bar Association)
SAV (Swiss Bar Association)
German-Swiss Lawyers Association
ASA (Swiss Arbitration Association)
DIS (German Arbitration Institute)

**Admission:**
All Swiss Courts

**Competencies:**
Litigation & Arbitration, Real Estate, White Collar Crime & Asset Recovery

**Working Languages:**
German, English, French

**Publications:**
Der Bauprozess, in: Handbuch Bauwesen, 2. Auflage, St. Gallen 2018 [together with Dr. Martin Kurer]

Asset Protection in der Schweiz, in: Asset Protection - Vermögen schützen, in Deutschland, Österreich und der Schweiz (Schweizer Teil), Regensburg 2014 [together with Walter H. Boss]

Die Kosten des Rechtsstreites, in: Management, Magazin für Architekten und Ingenieure, 2/2014

Preismodelle, in: Management, Magazin für Architekten und Ingenieure, 1/2014 [together with Dr. Martin Kurer]



Die vorsorgliche Beweisabnahme in baurechtlichen Streitigkeiten, Art. Art 158 ZPO als Instrument zur Ermittlung der Prozesschancen und Erhöhung der Vergleichschancen, in: Blickwinkel Nr. 30; Ausgabe 3/2013 [together with Dr. Martin Kurer]

Der Begriff Urheberrecht, in: Modulor 06/ 2013 [together with Dr. Martin Kurer und Walter Maffioletti]

Der Bauprozess, in: Handbuch Bauwesen, St. Gallen 2012 [together with Dr. Martin Kurer]

La gestion des risques dans les projets de construction Identification et répartition des risques, in: ASPECTS Nr. 27, édition 6/2012 [together with Dr. Martin Kurer]

Risikomanagement bei Bauprojekten, Identifikation der Risiken und Risikoverteilung, in: Blickwinkel Nr. 27; Ausgabe 6/2012 [together with Dr. Martin Kurer]

Grundregeln für den Erfolg in baurechtlichen Streitigkeiten, in: Modulor 07/2012 [together with Dr. Martin Kurer und Walter Maffioletti]

International Arbitration in Switzerland, in: A Guide to International Financial Centres, What Chinese Investors need to know, Longtail International (Editor), London/Beijing 2011[together with Dr. Martin Kurer]

Switzerland: a short guide to proper (legal) risk management, in: A Guide to International Financial Centres, What Chinese Investors need to know, Longtail International (Editor), London/Beijing 2011 [together with Dr. Martin Kurer]

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| In Re: Application of Horacia Medina | ) | |
| *Applicant* | ) | |
| | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                          Ivan Freites
                        4370 NW 107th Ave., Apt. 102, Doral, Florida 33178
                        *(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: DIAZ, REUS & TARG LLP<br>100 Southeast 2nd Street, 3400 Miami Tower,<br>Miami, FL 33131 | Date and Time: |
|---|---|

The deposition will be recorded by this method:     Video and stenographic recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
                        See Schedule A attached to this subpoena.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     11/26/2025

            *CLERK OF COURT*
                                          OR
                                          /s/ Javier Coronado
_____                    _____
  *Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Plaintiff
_____ , who issues or requests this subpoena, are:
Javier Coronado - Address: 100 Southeast 2nd Street 3400 Miami Tower, Miami, FL 33131 - Attorney's Email:
jcoronado@diazreus.com - Attorney's phone number: (305) 375-9220

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**SCHEDULE A**

**DEFINITIONS**

1.     "You" or "Your" shall refer to Ivan Freites, including any agents, attorneys, representatives, employees, or any other persons purporting to act on your behalf.

2.     "Mr. Rodriguez" shall refer to Jorge Alejandro Rodriguez, including any agents, attorneys, representatives, employees, or any other persons purporting to act on his behalf.

3.     "Mr. Otero" shall refer to Miguel Otero, including any agents, attorneys, representatives, employees, or any other persons purporting to act on his behalf.

4.     "Mr. Medina" shall refer to Horacia Medina, including any agents, attorneys, representatives, employees, or any other persons purporting to act on his behalf.

5.     "Mr. Moya" shall refer to Cesar Moya, including any agents, attorneys, representatives, employees, or any other persons purporting to act on his behalf.

6.     "PDVSA" shall refer to Petróleos de Venezuela, S.A., including any agents, attorneys, representatives, employees, or any other persons purporting to act on its behalf.

7.     "Junta Administradora" shall refer to Junta Administradora Ad-Hoc de PDVSA, including any agents, attorneys, representatives, employees, or any other persons purporting to act on its behalf.

8.     The "Swiss Criminal Action" means the criminal complaint filed with the Kantonspolizei Zürich against Mr. Cesar Moya, as stated in the "Supplemental Notice Regarding Related Criminal Proceedings Arising from Unauthorized Disclosure and Harassment," which is attached as Exhibit 1 to this Schedel.

9.      The "Delaware Lawsuit" means *Freites, et al. v. Petróleos de Venezuela, S.A., et al.*, Case No. 23-cv-00989-JLH, pending before the United States District Court for the District of Delaware.

10.      The "Florida Lawsuits" means (1) *Freites, et. al. v. Median, et. al,* Case No. 25-cv-20465, pending before the United States District Court for the Southern District of Florida, and (2) *Freites C. et al. v. Viero-Blanco et al.*, No. 24-cv-24176, filed in he United States District Court for the Southern District of Florida.

11.      The words "and" and "or" shall be construed both conjunctively and disjunctively so as to make each request inclusive rather than exclusive.  The singular form of any word includes the plural and *vice versa*; the masculine includes the feminine and *vice versa*.

12.      "Including" means including without limitation.

13.      "Communication(s)" shall mean any oral or written statement or exchange of information of any type between two or more persons, including but not limited to documents, electronic or other computer-generated mail, telephone or face-to-face conversations, or meetings.

14.      "Document" shall mean originals, drafts, and non-identical copies of any writing or other tangible thing or data compilation – whether printed, typed, reproduced by any process, written or produced by hand, including any graphic matter however produced or reproduced, or produced by any mechanical means – either presently maintained in paper form or in electronic, magnetic, chemical, mechanical, or other form of data storage capable of being transformed into, written or oral matter, including, but not limited to, letters, e-mails, affidavits, filings, inventory data, reports, agreements, communications, correspondence, permits, licenses, regulatory filings, financial records, accounting records, contracts, letter agreements, telegrams, mailgrams, memoranda, summaries and/or records of personal or telephone conversations, diaries, calendars,

photographs, tape recordings, facsimiles, models, statistical statements, maps, graphs, charts, plans, drawings, minutes or records of conferences, reports and/or summaries of interviews, conversations, summaries of investigations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of any documents, purchase orders, invoices, receipts, original or preliminary notes, films, videos, microfiche, microfilm, punch cards, slides, pictures, laboratory results, magnetic tapes or any other matter which is capable of being read, heard, or seen with or without mechanical or electronic assistance. **FOR THE AVOIDANCE OF DOUBT, THE TERM "DOCUMENT" EXPRESSLY ENCOMPASSES EMAILS, TEXT MESSAGES, AND ANY OTHER FORM OF WRITTEN COMMUNICATION, INCLUDING MESSAGES EXCHANGED THROUGH APPLICATIONS SUCH AS WHATSAPP, SLACK, FACEBOOK, AND INSTAGRAM.**

15.     The phrase "show" "relate to" or "relating to" shall mean refer to, reflect, contain, allude to, respond to, comment upon, discuss, show, disclose, explain, mention, analyze, constitute, comprise, evidence, set forth, summarize, support, refute, or characterize, either directly or indirectly, in whole or in part.

16.     The use of the singular includes the plural, and the use of the plural includes the singular, so as to be inclusive of any documents that may otherwise be excluded from production.

17.     The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any documents that otherwise may be excluded from production.

18.     All defined terms shall have the same meaning regardless of their capitalization.

19.     Unless otherwise indicated, all terms used in these Requests shall have the same meaning as reflected in the operative pleading.

## INSTRUCTIONS

Production of documents and items requested herein shall be made at the offices of Diaz Reus & Targ, LLP, 100 Southeast 2nd Street, 3400 Miami Tower, Miami, Florida, 33131.

1.     These requests shall include all documents that are in Your possession, custody or, control or in the possession, custody, or control of Your present or former agents, representatives, or attorneys, or any and all persons acting on Your behalf or on behalf of Your present or former agents, representatives, or attorneys.

2.     If any document responsive to a request has been destroyed, describe the content of that document, the location of that document, the date of such destruction, and the name of the person who ordered or authorized such destruction.

3.     In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

4.     If a document or other information is stored electronically, the document or other information shall be produced in native format. In conjunction with the production of any electronically stored information, all metadata and other bibliographic or historical data relating to such electronically stored information shall also be produced.

5.     Format for Production of Electronically Stored Information (ESI):

   a.   Single page .tif files, unless documents are in color and the color is key to understanding the document, then produce color .jpg files.

   b.   OCR at document level – all documents are to be provided searchable text (.TXT) files with the exception of any redacted documents.

   c.   Electronic documents and emails are to be processed and converted from the electronic format to single page .tif.

   d.   Native documents should be produced for spreadsheets, databases, and any other files not reasonably capable of being converted to .tif format. A placeholder .tif shall be inserted into image folders for documents being

4

produced in native format. The placeholder should bear the phrase "produced in native format" or words with similar meanings.

e.   All metadata values should be extracted and produced in a text file with Pipe "|" and Caret "^" delimiters; metadata fields are described below.

f.   The following metadata fields shall be produced where available:

| Field Name | Meta Data Description |
| --- | --- |
| DOCID | Image bates number |
| TO | To |
| FROM | From |
| CC | CC |
| BCC | BCC |
| SUBJECT | Subject |
| HEADER | Header |
| FOLDERID | Folder ID |
| FOLDERNAME | Folder Name |
| READ | Read |
| DATECREATED | Date Created |
| DATESAVED | Date Saved |
| DATERCVD | Date Received |
| TIMERCVD | Time Received |
| DATESENT | Date Sent |
| TIMESENT | Time Sent |
| APPLICATION | Application |
| ATTACHRANGE | Attachment Range |

5

| | |
|---|---|
| ATTACHTITLE | Attachment Title |
| ATTACHCOUNT | Attachment Count |
| CUSTODIAN | Custodian of collection |
| MEDIA | Edoc, Email, Attachment |
| ATTACHID | Attachment bates |
| PARENTID | Parent bates id |
| FOLDER | Folder path |
| FILENAME | File Name |
| AUTHOR | File Author |
| FILEEXT | File Extension |
| HASHCODE | MD5 Hash |

To the extent reasonably available, the "Custodian" "Source" or "Original Path" field with respect to ESI gathered from an individual's hard drive will provide metadata sufficient to identify the custodian from whose hard drive such ESI has been gathered.

Delivery Format:

g. Data shall be delivered in Summation-ready format, i.e., dii file including @Fulltext DOC and an @DOCLINK (containing path to native file in deliverable) for any native documents produced.

h. The TIFF files and extracted text files (OCR) shall be named as the corresponding DOCID and stored in the same folder named "IMAGES" and loaded using the industry standard DII file that loads both Image and Text files simultaneously (@Fulltext DOC).

i. The file to load the metadata into the above-referenced fields shall be in .TXT format with "|" and "^" as the delimiters. The first row of the file shall contain the metadata fields, the preferred format referenced in the table above, and should remain uniform for all files of this type.

      j.   The native files shall be stored in a separate folder named "Native Files" and shall be loaded through the data in the @Doclink token in the dii file.

      k.   Delivery by CD, DVD, External Hard Drive, or Secure FTP location is acceptable.

6.     These requests should be deemed continuing, and supplemental production shall be provided as additional documents become available.

7.     In the event You withhold any documents as privileged, please provide a privilege log with the following information for each document withheld:

      a.   The ground(s) on which the document is being withheld;

      b.   The date, or, if no date, the date or the approximate date on which it was prepared;

      c.   The names, employment positions, and addresses of the author(s) or preparer(s);

      d.   The name(s), employment positions, and addresses of the person(s) to whom the document, or a copy of the document, was directed;

      e.   The title or, if none, a description of the documents;

      f.   The type of document and, if electronically stored information, the software application used to create it;

      g.   The document's Bates stamp number(s);

      h.   The title and a description of the document's subject matter sufficient to enable Plaintiff to assess the privilege claim.; and

      i.   The number of the Request under which such document would be produced but for the objection.

8.     The relevant time period for these Requests is from January 1, 2023, to the present.

## <u>REQUESTS FOR PRODUCTION</u>

1.      All documents and communications exchanged between You and Mr. Rodriguez, Mr. Otero, or any third party relating to the Swiss Criminal Action.

2.      All documents and communications exchanged between You and Mr. Rodriguez, Mr. Otero, or any third party relating to the Delaware Lawsuit.

3.      All documents and communications exchanged between You and Mr. Rodriguez, Mr. Otero, or any third party relating to the Florida Lawsuits.

4.      All documents and communications exchanged between You and Mr. Rodriguez, Mr. Otero, or any third party relating to Mr. Medina.

5.      All documents and communications exchanged between You and Mr. Rodriguez, Mr. Otero, or any third party relating to Mr. Moya.

6.      All documents and communications exchanged between You and Mr. Rodriguez, Mr. Otero, or any third party relating to PDVSA.

7.      All documents and communications exchanged between You and Mr. Rodriguez, Mr. Otero, or any third party relating to Junta Administradora.

8.      All documents and communications showing the identity of the individuals or entities funding or paying for the legal fees and costs related to or incurred in the Swiss Criminal Action.

9.      All documents and communications showing the identity of the individuals or entities funding or paying for the legal fees and costs related to or incurred in the Delaware Lawsuit.

10.      All documents and communications showing the identity of the individuals or entities funding or paying for the legal fees and costs related to or incurred in the Florida Lawsuits.

11.     All documents filed or submitted in the Swiss Criminal Action.

FILED BY _____ MC _____ D.C.

MAY 0 8 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-20465-BB

IVAN R. FREITES C., MIGUEL ENRIQUE OTERO, and JORGE
ALEJANDRO RODRIGUEZ,

    *Plaintiffs,*                  v.

 HORACIO MEDINA, et al.,

# JOINT NOTICE OF CHANGE OF ADDRESS AND PARTIAL WITHDRAWAL OF CONSENT TO ELECTRONIC SERVICE

Plaintiffs **Ivan R. Freites C., Miguel Enrique Otero C.,** and **Jorge Alejandro
Rodriguez M.**, appearing pro se, respectfully notify the Court and all parties of the
following changes regarding their contact information and method of service:

1. **Plaintiff Ivan R. Freites C.** hereby **withdraws his consent to electronic
   service** and **requests that all future service be made exclusively by
   U.S. Mail** at the following address:

              **Ivan R. Freites C.**

              c/o Villasana

              4370 NW 107th Ave, Apt. 102

              Doral, Florida 33178

2. **Plaintiff Miguel Enrique Otero C.** is to be served **electronically by email** at the following updated address:

**Plaintiff.v.Medina@proton.me**

3. **Plaintiff Jorge Alejandro Rodriguez M.** is to be served **electronically by email** at the following updated address:

**Plaintiff.2.v.Medina@proton.me**

These updates are effective immediately upon filing. Plaintiffs respectfully request that the Clerk of Court update the docket accordingly and that all parties ensure proper service moving forward in compliance with Federal Rule of Civil Procedure 5(b).

This Notice does not waive any pending objections or rights, including those relating to the disqualification of counsel and related matters.

Respectfully submitted,

**/s/ Ivan R. Freites C.**

 Pro Se Plaintiff

c/o Villasana

4370 NW 107th Ave, Apt. 102

Doral, Florida 33178

**/s/ Miguel Enrique Otero C.**

Miguel Enrique Otero C.

Email: Plaintiff.v.Medina@proton.me

Pro Se Plaintiff

**/s/ Jorge Alejandro Rodriguez M.**

Jorge Alejandro Rodriguez M.

Email: Plaintiff.2.v.Medina@proton.me

Pro Se Plaintiff

**Certificate of Service**

I hereby certify that on  , 2025, a true and correct copy of the foregoing **Document** was submitted to the Clerk of the Court, to be docketed and served via the Court's CM/ECF electronic filing system (or, if CM/ECF was unavailable to pro se parties, via electronic mail) upon the parties.

**Respectfully submitted,**

*Dated:*    *, 2025.*

← **Post** ⟨ Reply ⟩ ⇄

 **@IvanRFreites** ✓
@IvanRFreites

 ⋯

Attention, oil workers!!

Join the thousands of workers suing @PDVSA and @CITGO in the United States. Your rights are being violated by a criminal regime that must be punished. It is your human rights, your family's stability, and your well-being and basic human needs that are being stolen from you, what we are pursuing.

Register at the link below, and you will participate in
a transcendental and fair labor action:
forms.gle/MCcbde1gfaPzD8...

If you have any questions, please contact us by this means.
Long live workers.

Translate post

---

(Reserve of identities respectfully requested)

Plaintiffs,

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

V.

| | |
|---|---|
| Petróleos de Venezuela, S.A. <br><br> (PDVSA); Defendant <br><br> ● Holding, Inc.; Defendant <br><br> ● America, Inc.; Defendant | COMPLAINT FOR VIOLATION OF LABOR RIGHTS, HUMAN RIGHTS, FREEDOM OF SPEECH RIGHTS, BREACH OF CONTRACT AND OTHER VIOLATION OF HUMAN RIGHTS CAUSES. |



Defendant

Demand For Jury Trial

**THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER**

2

**SECOND Amended Complaint**

Corporation; Defendant

Junta Administradora Ad-Hoc

de PDVSA; Defendant

Defendants,

Case No:

1:23-cv-009█-MN\*SEALED\*

4:55 PM · Jan 29, 2024 · **1,025** Views

morningtrans.com

 **MORNINGSIDE**
A Questel Company

# TRANSLATION CERTIFICATION

Date: 2/21/2025

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Spanish

To:

- English

The documents are designated as:
- Captura de pantalla 2025-02-18 a la(s) 4.12.04 p. m

Prince Williams, Project Coordinator in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_____
Signature of Prince Williams

← **Post**  

 **@IvanRFreites** ✓
@IvanRFreites  

Atención trabajadores petroleros!!
Súmate a los miles de trabajadores que estamos demandando a
@PDVSA y @CITGO en Estados Unidos. Son tus derechos violentados
por un régimen criminal que deben ser indemnizados, Son tus derechos
humanos, es la estabilidad familiar que estás demandando,
es el bienestar que te han robado lo que estás demandando.
Regístrate en el siguiente link y quedarás registrado para una acción
laboral trascendental y justa:
forms.gle/MCcbde1gfaPzD8…
Cualquier duda contáctanos por esta vía.
Vivan los trabajadores.

Translate post

(Reserve of identities respectfully requested)

Plaintiffs,

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

V.

| Petróleos de Venezuela, S.A. | COMPLAINT FOR VIOLATION OF LABOR RIGHTS, HUMAN RIGHTS, FREEDOM OF SPEECH RIGHTS, BREACH OF CONTRACT AND OTHER VIOLATION OF HUMAN RIGHTS CAUSES. |
|---|---|
| (PDVSA); Defendant | |
| Holding, Inc.; Defendant | |
| America, Inc.; Defendant | |



Demand For Jury Trial

Defendant

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND
ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER

2

SECOND Amended Complaint

Case No:
1:23-cv-009███-MN*SEALED*

Defendants,

Corporation; Defendant

Junta Administradora Ad-Hoc

de PDVSA; Defendant

4:55 PM · Jan 29, 2024 · **1,025** Views

# Affidavit CITGO PDVSA Claim Management Trust Agreement

Use to facilitate the provision of data once the terms have been reviewed.

mbazzid@gmail.com   Switch Account

The name, email, and photo associated with your Google account will be recorded when you upload files and submit this form

* Means that the question must be answered

Last Name *

Your answer

Name *

Your answer

Email *

Your answer

Mobile number *

Your answer

Address *

Your answer

**The following body of the Affidavit expresses my situation.** *

I, the undersigned former employee of CITGO, PDVSA, or their subsidiaries or contractor companies, with start date, date of layoff, and last position held in said company or subsidiaries, as indicated in the annex to this Affidavit in accordance with the law, hereby declare, under penalty of perjury, the following:

1. I intend to file a joinder or similar proceeding in this honorable court of law, to be protected in the case related to the Violation of Human Rights and Workers' Rights initially filed by Mr. Iván R. Freites and others against the Bolivarian Republic of Venezuela, PDVSA, CITGO and others in the courts of the State of Delaware signed with number 00989.

2. I am fully aware of the relevance of the case to my own condition regarding the risk of making any unrealistic expectation of precautionary measures or other remedies for damages caused by the defendants, especially given the circumstances of the Crystallex International Corporation case. Bolivarian Republic of Venezuela Case Number: 1:17-mc-00151- LPS in the District of Delaware.

3. This action arises from the extensive harm inflicted on individuals, including engineers, technicians, skilled workers, and contractors, who were employed or hired by Defendants at various facilities in Venezuela and throughout the Americas. These violations spanned from 2003 to the present and included services at PDVSA facilities such as oil refineries in El Palito, Amuay, Cardón, Bajo Grande, Puerto La Cruz, Barinas, PDVSA Joint Ventures and PDVSA Petroleum Exploration and Production, the refining units of CITGO Petroleum Corporation in Lake Charles, La., Lemont, Ill., and Corpus Christi, as well as the headquarters of CITGO Petroleum Corporation in Katy, TX, among others.

4. I was unfairly fired, my de facto contract was canceled, and PDVSA officials unfairly prohibited me from seeking employment within PDVSA Corporation or its subsidiaries in Venezuela, the United States, and Europe.

5. Plaintiffs in Mr. Ivan R. Freites' Lawsuit assert that PDVSA violated employment contracts by failing to pay our full wages and benefits, mismanaging the workers' pension fund, violating contract terms related to housing and other benefits, and engaging in a

variety of other wrongdoings, which are basically the same inflicted by PDVSA and other defendants.

6. In addition, PDVSA and its subsidiaries have benefited from unjust enrichment through withholdings, wages, contractor teams, unpaid and unprocessed invoices, and other funds owed to workers like me. This unjust enrichment represents substantial sums that have been improperly withheld.

7. Several of the plaintiffs, myself included, were denied our right to work by the defendants and co-conspirators as an act of political retaliation.

8. Defendants have unlawfully caused serious injury and deprived me and thousands of workers of our right to justice. Our properties were confiscated, and we were subjected to physical and psychological harm.

9. I will allege and provide evidence that CITGO and PDVSA jointly participated in these actions and collaborated with the Defendants by carrying out these illegal actions against Workers and other individuals in similar situations.

10. If I am protected by the lawsuit filed by Ivan Freites et al., I understand that it is possible to be compensated for the amount of one hundred thousand U.S. dollars. In which case, I will be satisfied with the damages caused by violation of my or my representative's human rights.

In accordance with the principles of justice, equity, and protection of human rights, I hereby affirm the truthfulness of the statements contained in this Affidavit and express my intention to seek redress through this honorable court of law.

With a fill out date according to the Google Forms Timestamp.

○ Yes, I accept

○ No

I, identified above, accept, approve, and consent to what is expressed in the **Engagement Letter** and in the **Workers and affected entities Claim Management Trust,** which I have had for my reading and consultation. Likewise, regarding the sworn statement *Affidavit* related to joining the lawsuit already initiated, I swear that what is expressed in said Affidavit is true and that it expresses my situation.

○ Yes, I swear.

○ No

---

Upload identity card or passport, valid or not. *

Upload 1 supported file: PDF or image. Maximum size: 10 MB

⬆**Add file**

---

Upload short video, saying your name, license, where you worked (Refinery, exploration, etc.), and: *
**"I swear that I have read and accepted these terms, and so help me God, I will get justice."**
If you are not religious, you may omit the reference to God.

Upload 1 supported file: video. Maximum size: 10 MB

⬆**Add file**

---

Submit                          Page 1 of 1                     **Delete form**

! Never send passwords via Google forms.

This content has not been created or approved by Google. - Terms of Service - Privacy Policy

Does this form look suspicious? Report

# Google Forms

morningtrans.com



# TRANSLATION CERTIFICATION

Date: 2/21/2025

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Spanish

To:

- English

The documents are designated as:

- Declaracion Jurada Demanda CITGO PDVSA _ Affidavit CITGO PDVSA Claim Management Trust Agreement

Prince Williams, Project Coordinator in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_____
Signature of Prince Williams

# Declaracion Jurada Demanda CITGO PDVSA / Affidavit  CITGO PDVSA Claim Management Trust Agreement

Usar para facilitar el suministro de datos una vez revisados los terminos. Use to facilitate the provision of data once the terms have been reviewed.

**mbazzid@gmail.com** Switch account

⊘ Draft saved

The name, email, and photo associated with your Google account will be recorded when you upload files and submit this form

* Indicates required question

Apellido / Last Name *

Your answer

⊙ This is a required question

Nombre / Name *

Your answer

⊙ This is a required question

Correo Electronico / Email *

mbazzid@gmail.com

Numero de Telefono CELULAR / Mobile number *

Your answer

⊘ This is a required question

Direccion / Address *

**El siguiente texto del cuerpo de la Declaracion Jurada, expresa mi situacion.**   *

Yo, el suscrito ex trabajador de CITGO, PDVSA o sus filiales o empresas contratistas, con fecha de primer empleo, fecha de cese de hecho y último cargo desempeñado en dicha empresa o filiales, según se indica en el anexo de esta Declaración Jurada en lo que me corresponde, Por la presente declaro bajo pena de perjurio lo siguiente:

1. Tengo la intención de presentar una acción de acumulación o similar en este honorable tribunal de justicia, para ser amparado en el caso relacionado con la Violación de los Derechos Humanos y de los Derechos de los Trabajadores presentado incialmente por el Sr. Iván R. Freites y otros contra República Bolivariana de Venezuela, PDVSA, CITGO y otros en las cortes del Estado de Delaware signado con el numero 00989.

2. Soy plenamente consciente de la relevancia del caso para mi propia situación, en lo que respecta al riesgo de hacer ilusoria cualquier expectativa de medidas cautelares u otros recursos por los daños causados por los demandados, especialmente dadas las circunstancias del caso Crystallex International Corporation v. Bolivarian Republic of Venezuela Case Number: 1:17-mc-00151-LPS in the District of Delaware.

3. Esta acción surge de los grandes daños infligidos a personas, incluidos ingenieros, técnicos, trabajadores calificados y contratistas, que fueron empleados o contratados por los Demandados en diversas instalaciones en Venezuela y en todo el continente americano. Estas violaciones abarcaron desde 2003 hasta la actualidad e incluyeron servicios en instalaciones de PDVSA como refinerías de petróleo en El Palito, Amuay, Cardón, Bajo Grande, Puerto La Cruz, Barinas, Empresas Mixtas de PDVSA y Exploración y Producción de Petróleo de PDVSA,  las unidades de refinacion de CITGO Petroleum Corporation en Lake Charles, La., Lemont, Ill., y Corpus Christi, asi como la sede central de CITGO Petroleum Corporation en Katy, TX, entre otras.

4. Fui despedido injustamente, me cancelaron mi contrato de facto y funcionarios de PDVSA me prohibieron injustamente buscar empleo dentro de PDVSA Corporation o sus filiales, en Venezuela, Estados Unidos y Europa.

5. Los Demandantes en la Demanda del Sr. Iván R. Freites afirman que PDVSA violó contratos de trabajo al no pagar nuestros salarios y beneficios completos, administrar mal el fondo de pensiones de los trabajadores, violar los términos del contrato relacionados con la vivienda y otros beneficios, y comprometerse en una

variedad de otras actividades dañinas, que son básicamente los mismos males que sufrí por parte de PDVSA y otros demandados.

6. Además, PDVSA y sus subsidiarias se han beneficiado de un enriquecimiento injusto mediante retenciones, salarios, equipos de contratistas, facturas impagas y no procesadas y otros fondos adeudados a trabajadores como yo. Este enriquecimiento injusto representa sumas sustanciales que han sido retenidas indebidamente.

7. A varios de los demandantes, incluido yo mismo, los demandados y co-conspiradores les negaron nuestro derecho a trabajar como un acto de represalia política.

8. Los acusados han causado lesiones graves ilegalmente y me han privado a mí y a miles de trabajadores de nuestro derecho a la justicia. Nos confiscaron propiedades y nos sometieron a daños físicos y psicológicos.

9. Alegaré y proporcionaré evidencia de que CITGO y PDVSA participaron conjunta  coordinadamente en estas acciones y colaboró con los Demandados, al llevar a cabo estas acciones ilegales contra Trabajadores y otras personas en situaciones similares.

10. En caso de ser amparado por la demanda presentada por Ivan Freites y otros, entiendo que en la misma es posible se me indemnice por la cantidad de cien mil dolares americanos. En tal caso me considerare como satisfecho en lo tocante a los danos causados por violacion de derechos humanos a mi persona o representado.

De acuerdo con los principios de justicia, equidad y protección de los derechos humanos, por la presente afirmo la veracidad de las declaraciones contenidas en esta Declaración Jurada y expreso mi intención de buscar reparación a través de este honorable tribunal de justicia.

Con fecha de llenado segun Marca de Tiempo de Google Forms.

◯  Si, acepto

◯  No

**Yo, arriba identificado, acepto, apruebo y consiento lo expresado en la CARTA COMPROMISO y en el Acuerdo de Fideicomiso para la Administración de Reclamaciones, que he tenido para mi lectura y consulta. Asi mismo, respecto a la declaracion jurada \*Affidavit\* relativa a unirme a la demanda ya iniciada, juro que lo expresado en tal Affidavit es cierto y que expresa mi situación.** *

I, identified above, accept, approve and consent to what is expressed in the **Engagement Letter**  and in the **Workers and affected entities Claim Management Trust**  , which I have had for my reading and consultation. Likewise, regarding the sworn statement \*Affidavit\* related to joining the lawsuit already initiated, I swear that what is expressed in said Affidavit is true and that it expresses my situation.

○ Si, lo juro.

○ No

---

Cargar cedula o pasaporte, vigente o no. *

Upload 1 supported file: PDF or image. Max 10 MB.

⬆ Add file

---

Cargar video corto, diciendo su nombre, cedula, donde trabajo (Refineria, Exploracion, etc.) y luego: *
**"Juro que he leido y aceptado estos terminos, para con el favor de Dios, lograr se nos haga justicia".**
Si no es creyente puede omitir la referencia a Dios.

Upload 1 supported file: video. Max 10 MB.

⬆ Add file

---

Submit                              Page 1 of 1                              Clear form


Never submit passwords through Google Forms.

This content is neither created nor endorsed by Google. - Terms of Service - Privacy Policy

Does this form look suspicious? Report

Google Forms

Case 1:25-mc-25576-BB    Document 1-2    Entered on FLSD Docket 11/26/2025    Page 51 of 125

Open in app ↗


 Sign up    Sign in


# Medium    🔍 Search                    ✎ Write    👤

# I HAVE DECIDED TO WITHDRAW FROM THE OIL WORKERS CASE

Carlos Ramirez Lopez · Follow
6 min read · Sep 13, 2023

👏 1        💬                                    🔖  

Carlos Ramirez Lopez @CarlosRamirezL3 @DrLeyCRL



As is known, I have been active in the issue of recognition of the rights of the great mass of workers arbitrarily dismissed from PDVSA by Hugo Chávez between 2002-2003. My participation was motivated by the request of the

president of the *Union of Oil Workers of the state of Falcón,* Mr. **Iván Freites** ,
who lives in Miami and told me that a friend recommended that he present
the case to me asking for my intervention, which I accepted within my usual
line of struggle in defense of human rights, freedom, and legality. Also
because the case is closely related to the entire problem of PDVSA and Citgo,
which I have been dealing with for years.

Studying and analyzing the case, I observed that in the more than twenty
years of that labor genocide, no one ever considered as their first task the
option of recognizing the rights and benefits of the workers, in addition to
the corresponding punishment. That the victims' claims be documented,
which should include both the concepts of benefits and the material and
moral damages of that monstrous act of the National Guard taking the
families of the workers from their homes in the urbanization " *Los Semerucos*
" in Punto Fijo, Falcón state, at the point of tear gas bombs and machete
attacks.

The only thing that was promoted regarding those events was a complaint to
the *International Labour Organization* (ILO) that did not advance beyond
certain recommendations to the government that were not followed.

Examining the case in search of justice, I first set out to develop a program of
activities so that the workers had a real alternative for justice, then I came to
a first conclusion which consisted of the need for their rights to be formally
recognized by the corresponding authority, in this case by the president of
the company that owes such debts, that is, *Pdvsa* , which is currently divided
into two factions, one within the country, which is under the control of the
government of Nicolás Maduro, and the other, chaired by engineer Horacio
Medina under the name *Pdvsa Ad hoc* , which operates in the United States

with recognition from the American government and which is currently under the authority of the *National Assembly* elected in 2015.

In developing that idea, I designed a plan that consisted, first of all, in trying to obtain voluntary recognition of the rights in question from the aforementioned *2015 National Assembly* , currently chaired by Deputy Dinorah Figuera. I had a long telephone conversation with her through a connection provided to us by a deputy friend. She listened to me patiently and asked me for a written summary of the case, which I did. I never received a response.

Secondly, I publicly proposed that Mr. Horacio Medina voluntarily acknowledge the workers' rights by signing a document dispelling any doubts about their imprescriptibility and authorizing the transfer to whomever the beneficiary workers wanted for future collection, as if it were a public debt bond. The organizations *Unapetrol and Gente del Petróleo* then issued a statement rejecting these proposals, which they described as " *sterile initiatives* ."

*Given the inattention of the AN and the PDVSA ad hoc* authority, I conceived the idea of suing the aforementioned labor claim as another debt within those that are being sued in the US courts and for which *PDVSA* 's shares in *Citgo* are about to be auctioned .

**THEN THE WOLVES APPEARED.** At this point in the development of my intervention in the case, a person I did not know suddenly appeared to me, who lives in Zurich, Switzerland, by the name of **Jorge Alejandro Rodríguez Moreno** and who, upon searching for information about him, turned out not to be a lawyer but a deputy of the " *Avanzada Progresista* " party, demanding that I intervene on a par with me and proposing that I sign a contract for the

division of fees, all of which I refused to do because I was not after "fees" in this case. **Later I found out that this person was acting in conjunction with the unionist Iván Freites** who originally requested my intervention.

None of these people had previously visualized a strategy to deal with this case. They liked the one I formulated and wanted to take advantage of it as their own with the obvious intention of benefiting economically. **Now this Ivan Freites, who lives in Miami in serious violation of immigration laws, is threatening me so that I do not divulge this dirty scheme.**

Within the workers' movement, I have been asked to continue with the case, not to give it up, but with the distortion of economic ambitions that are appearing from the unionist Freites and the deputy Rodríguez Moreno, I prefer to withdraw and I am making this known to the workers who placed their hopes in my intervention. The strategy that I designed for them to achieve their just aspirations remains there for them, and I hope that these gentlemen can achieve them. Of course, I will not take my eyes off the development of the case.

**THE CLANDESTINE DEMAND.** These gentlemen Freites and the deputy Rodriguez Moreno are briefly reporting that they have filed a lawsuit in a United States court, strangely they do not offer more information. They do not say what type of lawsuit it was that they say they have filed. Nor before which court. So far it is a *supposed lawsuit* and for which they are making the workers sign a suspicious contract where they reserve the right to introduce changes without consulting them.

**THE LAWSUIT THAT HORACIO MEDINA TRIED TO FILE AND THAT I WANTED TO JOIN.** On August 16, 2023, *Pdvsa Ad hoc* , chaired by engineer Horacio Medina, through attorneys, formalized a *Right of Certiorari* action

before the Supreme Court of the United States requesting that the decision of the *United States Court of Appeals for the Third Circuit* that authorized the execution against *Citgo* of the judgment in favor of *Crystallex issued by the ICSID* arbitration tribunal be reviewed and annulled . The fundamental argument of said lawsuit consists of rejecting the concept of " *Alter ego* " that we have written and talked so much about, which consists of having held the *Citgo* company responsible to the point of auctioning it off to pay *Crystallex* the damages caused by the expropriation ordered by Hugo Chávez.

**I fully agree with this argument and therefore with the aforementioned claim** , which must be supported. However, as a Venezuelan who is familiar with the subject, I do not understand: **1)** why this action was filed so late, almost on the date set for the auction, since it is a defense that I have been dealing with publicly for more than five years without it being taken into account. **2)** why the issue of the nullity of this and all other *ICSID* judgments in arbitration proceedings against Venezuela, proceedings where the latter, the defendant, did not have legal representation to exercise the right to defense, was not raised in this same claim.

On this second point I was working together with other Venezuelans who, with a true attitude of patriotic detachment, set out to do so. Our work was focused on supporting the aforementioned lawsuit filed by the lawyers hired by *Pdvsa Ad hoc with an Amicus curiae* . This support has meant that we have made progress in the preparation of the appeal, which is not easy at all, and we have contacted lawyers for this activity, but **I have stopped here with that, I will not continue any further.** Unfortunately, the lust for money of the unionist Ivan Freites and his partner Jorge Rodríguez Moreno ruined all the work that we had been doing selflessly.

2/25/25, 8:36 AM
Case 1:25-mc-25576-BB   Document 1-2   Entered on FLSD Docket 11/26/2025   Page 56 of 125
He Decided to Withdraw from the Oil Workers Case | by Carlos Ramírez López | Medium

**My recognition** goes to the group of people who have accompanied me in the task explained, investing their time, their work and even their own money, among others the Venezuelan/American economist Federico Alves, the lawyer Rolando Araujo, the organization of Venezuelan/American citizens IVAC, chaired by Ernesto Akerman, on whose behalf we were going to file the lawsuit.

Carlos Ramirez Lopez    Ivan Freites    Oil Workers    PDVSA    Writ of Certiorari



### Written by Carlos Ramirez Lopez

1.3K Followers   ·   43 Following

Follow

Venezuelan litigator with 40+ years of experience. Specialist in Procedural, Criminal, Civil and Constitutional Law. Studies in International Courts.

## No responses yet



What are your thoughts?

Respond

# More from Carlos Ramirez Lopez



 Carlos Ramirez Lopez

### THE FABLE OF THE CHICK AND THE HAWK (for Chuo Torrealba)

See also at CarlosRamirezLopez.com

Sep 15, 2016 👏 3



 Carlos Ramirez Lopez

### Maduro's fraudulent appointment of Reinaldo Muñoz Pedroza as...

Carlos Ramirez Lopez @CarlosRamirezL3

Jan 27 👏 2



 Carlos Ramirez Lopez

### This is the ruling of the Delaware District Court.

Carlos Ramirez Lopez @CarlosRamirezL3
@DrLeyCRL

Jan 14, 2024    👏 2                          



 Carlos Ramirez Lopez

### On the swearing-in of Edmundo González Urrutia

Carlos Ramirez Lopez @CarlosRamirezL3

Jan 6    👏 3                                  

---

See all from Carlos Ramirez Lopez

---

## Recommended from Medium





2/25/25, 2:08 AM
Case 1:25-mc-25576-BB Document 1-2 Entered on FLSD Docket 11/26/2025 Page 59 of 125
He decidido retirarme del caso de los trabajadores petroleros | by Carlos Ramirez | Feb, | Medium



Jessica Stillman

## Jeff Bezos Says the 1-Hour Rule Makes Him Smarter. New...

Jeff Bezos's morning routine has long included the one-hour rule. New...

✦ Oct 30, 2024   👏 23K   💬 675

Singh Bhai

## How to Read Someone's Personality in 10 Seconds (Backe...

The Subtle Signs That Reveal Who Someone Really Is.

✦ Jan 27   👏 9.5K   💬 216

## Lists



### Staff picks
817 stories · 1632 saves



### Stories to Help You Level-Up at Work
19 stories · 943 saves



### Self-Improvement 101
20 stories · 3316 saves



### Productivity 101
20 stories · 2790 saves



 In DataDrivenInvestor by Austin Starks

## I used OpenAI's o1 model to develop a trading strategy. It is...

It literally took one try. I was shocked.

✦ Sep 15, 2024   👏 8.9K   💬 236



In Level Up Coding by Jayden Levitt

## Warren Buffett Just Sold $133 Billion in Stock: Does He Know...

It's a stock market signal that's becoming hard to ignore.

✦ Feb 5   👏 4.6K   💬 118

2/25/25, 8:04 AM
Case 1:25-mc-25576-BB Document 1-2 Entered on FLSD Docket 11/26/2025 Page 60 of 125
He decidido retirarme del caso de los trabajadores petroleros | by Carlos Ramírez | Medium





 In ILLUMINATION by Sufyan Maan, M.Eng

## I Did a 2-Minute Plank Every Day for 31 Days — Here's What Happened

No, I didn't get the abs, but 4 things happened

✦ Feb 4   👏 8.5K   💬 185

In Notes by Aure's Notes

## This Man Controls 40% of the Internet and It's a Problem

Meet Matt Mullenweg.

✦ Nov 3, 2024   👏 10K   💬 233

See more recommendations



FILED

MAR 8 2024

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Dated: January 9th, 2024

**YOU ARE IN POSSESSION OF A DOCUMENT FILED IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE THAT IS CONFIDENTIAL AND FILED UNDER SEAL. If you are not authorized by Court order to view or retrieve this document read no further than this page and you should contact the following person:**

**COURT CLERK FOR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**



Plaintiffs,

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

V.

| | |
|---|---|
| **Petróleos de Venezuela, S.A.** <br><br> **(PDVSA)**; Defendant <br><br> **PDV Holding, Inc.;** Defendant <br><br> **PDV America, Inc.;** Defendant <br><br> **CITGO Holding, Inc.;** Defendant | **COMPLAINT FOR VIOLATION OF LABOR RIGHTS, HUMAN RIGHTS, FREEDOM OF SPEECH RIGHTS, BREACH OF CONTRACT AND OTHER VIOLATION OF HUMAN RIGHTS CAUSES.** <br><br> **Demand For Jury Trial** |

| CITGO Petroleum Corporation; Defendant Junta Administradora Ad-Hoc de PDVSA; Defendant Defendants, | Case No: 1:23-cv-00989-MN*SEALED* |
|---|---|

# TABLE OF CONTENTS

| | |
|---|---|
| Certificate of Compliance With Type-Volume Limit | 1 |
| File for **COMPLAINT FOR VIOLATION OF LABOR RIGHTS, HUMAN RIGHTS, BREACH OF CONTRACT AND OTHER CAUSES.** | 2 |
| TABLE OF CONTENTS | 6 |
| TABLE OF AUTHORITIES | 8 |
| INTRODUCTORY STATEMENT | 10 |
| **CLASS ACTION CONSIDERATIONS** | 17 |
| **CLAIMS FOR RELIEF** | 35 |
| STATEMENT OF THE IDENTITY OF THE PLAINTIFFS, OUR  INTEREST IN THE CASE, AND THE SOURCE OF OUR AUTHORITY TO FILE | 38 |
| APPLICABLE LAW, JURISDICTION AND VENUE<br>Applicable Law<br>Jurisdiction and Venue. | 41<br>41<br>43 |
| THE PARTIES | 45 |
| Plaintiffs | 45 |
| Defendants | 45 |
| Co Conspirators | 49 |
| SUMMARY OF ARGUMENT AND ARGUMENT | 52 |

| | |
|---|---|
| TOLLING AND SUSPENSION OF THE STATUTES OF LIMITATION | 79 |
| LEGAL ALLEGATIONS AND CAUSE OF ACTION | 82 |
| FIRST CAUSE OF ACTION - Contractual | 84 |
| SECOND CAUSE OF ACTION-Tort-related causes of action | 86 |
| THIRD CAUSE OF ACTION - Precedent causes of action | 92 |
| FOURTH CAUSE OF ACTION (Equity-related causes of action) | 93 |
| FRAUDULENT CONCEALMENT | 94 |
| DAMAGES | 96 |
| JURY TRIAL DEMAND | 98 |
| PRAYER FOR RELIEF | 98 |
| PROPOSED ORDER | 101 |
| List, identification and standing of Plaintiffs. List of other entities and acronym | Attachment I |
| Statements and evidence on terrorist activities of the Venezuelan Government including persecution of union leaders, civic leaders, etc. | Attachment II |

**TABLE OF AUTHORITIES**

**Federal Cases**

1. Cuba R. Co. v. Crosby, 222 U.S. 473 (1912)

2. Slater v. Mexican National R. Co., 194 U. S. 120, 194 U. S. 126.

3. American Banana Co. v. United Fruit Co., 213 U. S. 347, 213 U. S. 356.

4. Bean v. Morris, 221 U. S. 485, 221 U. S. 486-487.

5. Comm. of Blind Vendors v. District of Columbia, Civ. A. No. 88-0412-OG on the "continuing wrong doctrine"

6. Syms v. Olin Corp., 408 F.3d 95, 108 (2d Cir. 2005). on the "continuing tort doctrine,"

7. National RR Passenger Corp. v. Moigan, 536 U.S. 101, 110, 114 (2002) on "continuing violation doctrine" and "continuing violations doctrine".

8. 114 F. Supp. 2d 117, 134-35 (E.D.N.Y 2000)

**Rules**

1. Federal Rule of Civil Procedure 4(k); Federal Rule of Civil Procedure 44.1

2. 28 U.S.C. § 1332

3. 28 U.S.C. § 1391(b) ; 28 U.S.C. § 1391(b)(2) ; 28 U.S.C. § 1391(f)(3)..

4. Del. C. § 321(a), 10

5. Del. C. § 3111

**Foreign Laws**

1. Constitution of the Bolivarian Republic of Venezuela - Constitución de la República Bolivariana de Venezuela

2. Organic Labor Law of the Bolivarian Republic of Venezuela - Ley Orgánica del Trabajo de la República Bolivariana de Venezuela

3. Law against discrimination of the Bolivarian Republic of Venezuela - Ley contra la discriminacion de la Republica Bolivariana de Venezuela.

01. *in limine litis* Plaintiffs pray the court to file the case with pseudonyms for the Plaintiffs in order to protect the identity of claimants for the safety concerns explained in the claim. 

02. Plaintiff ███████████████████████████████████████

███████ waives the identity protection request.

████████████████████████████████████

██████████████████████████████████████

## 05. INTRODUCTORY STATEMENT

06. A second amended complaint is brought to this honorable court of law in the above caption matter.

07. The need for an amended complaint from plaintiffs arises from the following.

08. Plaintiffs are to underline that the claim is mainly a claim on the violation of human rights of plaintiffs and a large number of American and Venezuelan families in the same or similar situation of Plaintiffs whose rights have been violated by Defendants, as early as 2003 and as late as that the violations are ongoing. The affected individuals, in the case of those in similar

circumstances to Plaintiffs and to whom the Court might decide to indemnify is of over twenty thousand persons.

09. According to statements of Defendants, the number of oil workers affected by the abusive actions of Defendants is of over twenty thousand persons.

10. According to statements of Defendants, the number of persons of the families affected by the actions of Defendants is of over one hundred thousand persons (direct dependants of the affected persons).

11. The actions of Defendants not only affected its employees but also a number of contractors, not only specialty contractors but also firms and workers in the media, as Defendants engaged for several years in policies in order to ban the work █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

12. Where Plaintiffs state the loss of wages, loss of contracts, seize or destruction of property and similar wrongs from Defendants, it is to be underlined that such wrongs were some of the means by which political persecution and freedom of speech was attacked for several years by Defendants and against Plaintiffs.

13. Plaintiffs are to underline that Defendants acted in concert as conspirators in order to violate the human rights of claimants.

14. In several cases, Defendants were responsible or co-responsible for the loss of life and other atrocious damages to non direct plaintiffs in the same condition of Plaintiffs.

15. Plaintiffs have been victims of terrorist actions by Defendants, within the meaning and scope of the law.

16. This case is brought to this honorable court in an extremely difficult and complicated situation for Plaintiffs and all affected and therefore pray for the understanding of the court due to the special circumstances of the case. The particular circumstances are the risk for life, unlawful prison, property seizure, injuries and other material threats that relate to the presentation of the case by Plaintiffs against some of the Defendants. Exceptions and special considerations prayed to the court include ███████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████

17. Identification, standing of Plaintiffs as well as some specific details of the injuries suffered is provided ██████████████ the causes of action do not single them in such a specific way in order to avoid the possibility of Plaintiffs being singled and identified by any specific characteristic of their cases.

20. **Plaintiffs and all those individuals in the same or similar condition as Plaintiffs are at risk of making illusory any expectation for injunctive relief or other relief as per the recent statements expressed by President of Defendant Junta Administradora de PDVSA regarding risk of complete insolvency of Defendants[1]. This would be the case even if considered as preferential creditors under the Laws protecting rights of workers or victims of terrorist actions under Terrorism Risk Insurance Act (TRIA) (H.R. 3210) .**

21. Defendants engaged in a pattern of corruption, mismanagement, money laundering and fraud that has caused significant harm to workers of PDVSA, to its contractors, freelancers, media workers, other workers, human rights activists.

22. Defendants engaged in a pattern of terrorist actions, corruption, mismanagement, and fraud that has caused significant harm to freedom of speech. The financing of terrorist groups, militia and similars that have taken action against Plaintiffs, either workers, former workers, journalists, media

---

[1] Reuters: Claims pursuing Citgo's assets surpass $20 billion, supervisory board says

Reuters.
https://www.reuters.com/business/energy/claims-pursuing-citgos-assets-surpass-20-bln-supervisory-board-2023-05-31/

workers, media directors, media owners, has been an ongoing activity carried out by Defendants for all times material.

23. The prosecution of separate actions by each of Plaintiffs could potentially establish inconsistent standards of conduct for the Defendants.

24. Final injunctive or declaratory relief is appropriate with respect to the Plaintiffs as a whole because the Defendants acted on grounds generally applicable to Plaintiffs as a whole.

25. Common questions of law or fact predominate over issues of each of the individual Plaintiffs, and this action is a proper mechanism for fairly and efficiently resolving the controversy.

26. As Plaintiffs pray the court for applicable law - substantive - that of Venezuela, it is to be underlined that the Constitution of the Bolivarian Republic of Venezuela (CRBV) expressly prohibits discrimination on any grounds, including political grounds. Article 21 of the CRBV states that "all persons are equal before the law, without distinction of race, color, sex, creed, age, marital status, social origin, economic condition, social condition, language, religion, political or philosophical opinion, union affiliation, or any other personal or social condition." Article 22 of the CRBV states that "the State shall guarantee equal rights and opportunities for women and men in all spheres of life. It shall promote the eradication of

all forms of discrimination against women, on grounds of gender, race, ethnicity, sexual orientation, gender identity, age, social condition, economic condition, language, religion, political or philosophical opinion, union affiliation, or any other personal or social condition." The Organic Law of Labor, Workers, and Working Women (LOTTT) also prohibits discrimination on political grounds. Article 25 of the LOTTT states that "workers have the right to participate in political and union life, without discrimination on grounds of political or union affiliation." Article 14 of the Organic Law Against Discrimination establishes that "discrimination is any distinction, exclusion, or restriction based on race, color, sex, ethnicity, national or social origin, age, disability, health condition, economic condition, social condition, language, creed, political or philosophical opinion, union affiliation, or any other personal or social condition, that has the purpose or effect of nullifying or impairing the recognition, enjoyment, or exercise in equal conditions of human rights and fundamental freedoms in the political, economic, social, cultural, or any other sphere of public or private life." Article 15 of the Organic Law Against Discrimination establishes that "all forms of discrimination are prohibited, especially those that refer to: Access to employment, education, health care, housing, social security, culture, sports, recreation, leisure time, decent work, political

participation, public services, public goods and services, justice, legal security, protection of mental health, and participation in public spaces." The Organic Law Against Discrimination also establishes sanctions for persons who commit acts of discrimination. Article 23 of the law establishes that "persons who commit acts of discrimination shall be punished with a fine of one thousand to five thousand tax units, without prejudice to the civil reparation that may correspond." In conclusion, Venezuelan laws expressly prohibit discrimination on political grounds. Persons and organizations who are discriminated against on the basis of their political opinion are entitled to file a complaint with the competent authorities.

27. This action is for damages upon the Plaintiffs,



from 1987 to 2023. The Plaintiffs who were employed or contracted by Defendants and that after being wrongfully fired or their contracts canceled, or were banned by CITGO

officials to seek employment in CITGO Corporation or its affiliates. The Plaintiffs allege and will prove beyond doubt that PDVSA violated their employment contracts by failing to pay them their full wages and benefits and by abusing the management of the workers pension fund, by breach of contract in housing and other benefits, as well as a number of additional damages explained in this writing. And by benefiting with an unjust enrichment derived from unduly retaining workers fees, wages, contractor equipments, unpaid and unprocessed invoices and a number of other abusive conducts for substantial amounts;

28. Upon discretion of the Court or by acceptance of Defendants, damages can be agreed on more than twenty-thousand oil workers and their families, totalling approximately one-hundred-twenty-thousand persons to be indemnified due to the wrongs of Defendants and ███████████

████████████████████████████████████████████

29. This action is as well for damages upon the Plaintiffs, who are either

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ that caused

significant harm to freedom of speech in Venezuela as well as the financing by Defendants of terrorist groups, militia and similars which took actions

that wronged ████████████████████████████████████████

████████████████

30. Plaintiffs allege and will prove beyond doubt that Defendants violated universally recognized freedom of speech rights, by breach of contract in contracting with media, as well as a number of additional damages explained in this writing and a number of other abusive conducts for substantial amounts; as well as for the Plaintiffs to whom the right to work was denied by the Defendants and CoConspirators in grounds of political retaliation; as well as for the properties that were seized, were physically or psychologically wronged by the Defendants and CoConspirators in grounds of political retaliation.

31. It is to be noted that right to work was impeded by the Defendants and CoConspirators in grounds of political retaliation, both in the case of ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████. Defendants have unlawfully imprisoned, prosecuted and caused enormous injuries to Plaintiffs. Defendants have illegally seized family property of Plaintiffs. Plaintiffs allege as well that Defendants Petróleos de Venezuela, S.A. (PDVSA); PDV Holding; PDV America, CITGO; were

active perpetrator of these actions and collaborated among them (the Defendants) and also colaborated with co-conspirator GOVERNMENT OF BOLIVARIAN REPUBLIC OF VENEZUELA in the actions performed against Plaintiffs and others in the same situation.

32. ███████████████████████████████████████████████████

████████████ **the Plaintiffs pray the court to consider granting the Plaintiffs the leave to file in representation of those under their same or similar circumstances, should this honorable court of law so consider in the best interest of fairness and justice.**

33. Each of Plaintiffs has standing as described in the main document and in Attachment I.

34. Plaintiffs have strong reason to consider that once the Discovery process has been performed, a number of additional Defendants will arise.

35. **Plaintiffs understand that the case is of a complex nature and at the moment actively seek for Counsel in the State of Delaware**.

36. Plaintiffs respectfully file this **COMPLAINT FOR VIOLATION OF HUMAN RIGHTS, FREEDOM OF SPEECH, LABOR RIGHTS, BREACH OF CONTRACT AND OTHER CAUSES.**

37. A proposed order is attached to this Second Amended Complaint.

38. The wrongs against Plaintiffs and others in similar situations was performed with the participation of other entities that acted as co-conspirators that joined or served PDVSA and CITGO in their wrongful purposes against Venezuelan workers.





## CLASS ACTIONS CONSIDERATIONS FOR AN EVENTUAL

## CONSIDERATION OF THE COURT

45. Plaintiffs pray the court to consider class action certification, appointment of Plaintiffs as Class Representatives, appointment of Class Counsel on the discretion of the court, and other measures the court might deem as proper.

46. Plaintiffs bring to the attention of the court that ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ former workers for Defendants, have registered as interested parties for their wrongful termination on political

grounds, political persecution, unlawful appropriation by PDVSA of their retirement fund assets, pending wages, etc. This comprises part of the more than Twenty-thousand directly affected oil workers persecuted by Defendants.

47. Additionally, 

Plaintiffs have previously provided a list of affected individuals additional to Plaintiffs as well as short testimonials from each of them to the Court and consider it hereby incorporated..

48. We have reason to assess that a class action settlement for each of the Potential Plaintiffs (Putative Class Members) would allow a complete settlement of the case and avoid costly litigation and further damages.

49. Court might consider, in the best interest of justice, to grant relief to a special group of collectively wronged persons, namely the children of the cancer hospital ███████████, whereas CITGO and PDVSA failed to comply with the contractual duties of paying the hospital invoices for such group of children. As the families of said children are in dire poverty and

unable to claim by themselves, the Plaintiffs bring this issue to the attention of the court, moreover as Lead Plaintiff ▮▮▮▮▮▮▮▮▮▮ expressly notified CITGO and PDVSA of their duties with respect to these children since 2019, and due to political considerations CITGO and PDVSA did not honor the duties of payment, which indeed relates to the early death and suffering of these children. This unusual request relates directly to the unusual circumstances of the case.

50. **The Plaintiffs pray, if the court considers to certify a class action and so considers, to be appointed Class Representatives. Plaintiffs are aware of the usual denial of Class Certification or Counsel for Pro Se litigants therefore it is brought to light for an eventual special consideration in this case for the alleged reasons and perhaps in the best interest of justice. While most of the affected are persons currently domiciled in Venezuela, several dozens of these wronged persons are US residents, in the states of Texas, Florida, New York and other States of the Union as well as other countries.**

51. **The court might consider the following reasoning with regards to an eventual class action certification or similar, which is,**

*CLASS ACTION JUSTIFICATION*

*The fundamental aims of class actions are (1) "to promote judicial economy and efficiency by obviating the need for multiple adjudications of the same issues[,]" 5 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 23.02 (3d ed.1998) (citing General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) and American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)), (2) "to afford aggrieved persons a remedy if it is not economically feasible to obtain relief through ... multiple individual damage actions[,]" id. (citing Deposit Guar. Nat. Bank v. Roper, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, ----, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997)("the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir.1997)); Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)), (3) to enhance access to the courts "by spreading litigation costs among numerous litigants with similar claims[,]" id. (citing United States Parole Comm'n v. Geraghty, 445 U.S. 388, 402-403, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)), (4) "[to protect] the defendant from inconsistent adjudications[,]" id., and (5) "to ensure ... that the interests of absentee class members are considered fairly and adequately," id. (citing Hansberry v. Lee, 311 U.S. 32, 42-43, 61 S.Ct. 115, 85 L.Ed. 22 (1940) and Baby Neal ex rel. Kanter v. Casey, 43 F.3d 48, 55 (3rd Cir.1994)).*

*Rule 23's requirements for class action suits should be interpreted in light of the basic purposes of the rule. In re A.H. Robins Co., 880 F.2d 709, 740 (4th Cir.), cert. denied, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989); see also Mace, 109 F.3d at 344; Andrews v. Amer. Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir.1996); 5 MOORE, supra, at § 23.04.*

*The Advisory Committee pointed to, as the outstandingly clear or typical example or archetype of a case eligible for (b)(2) certification, "actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." Id. (collecting civil rights cases including Potts v. Flax, 313 F.2d 284 (5th Cir.1963) and Bailey v. Patterson, 323 F.2d 201 (5th Cir.1963), cert. denied, 376 U.S. 910, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964)). In fact, "Rule 23(b)(2) was promulgated ... essentially as a tool for facilitating civil rights actions." 5 MOORE, supra, § 23.43[a], at 23-191. Under the majority's bright-line rule, however, no consideration is given or importance attached to the fact that the case not only qualifies under the text of Rule 23(b)(2), but also is a civil rights action seeking to permanently enjoin unlawful discrimination. Cf. Jenkins v. United Gas Corp., 400 F.2d 28, 32-33 (5th Cir.1968) ("[The claim to remedy class-wide discriminatory employment practices] has extreme importance with heavy overtones of public interest."); Young v. Pierce, 544 F.Supp. 1010, 1028 (E.D.Tex.1982)("[W]hen the relief sought is injunctive relief, the benefits ... would inure not only to known class, but also to a future class of indefinite size."); Note, Antidiscrimination Class Actions Under the Federal Rules of Civil Procedure: The Transformation of Rule 23(b)(2), 88 Yale L.J. 868, 873 n.32 ("The desirability of an injunction to shield all putative class members against whom the discrimination was by its 'very nature' directed, provided the 'most important' reason for upholding class treatment in the (b)(2) situation.") (citing Potts v. Flax, 313 F.2d 284, 289 (5th Cir.1963) and Bailey v. Patterson, 323 F.2d 201, 206-07 (5th Cir.1963)).*

*Rule 23(b)(2) provides that "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition [ ] the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]"*

The Supreme Court, in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, ----, 117 S.Ct. 2231, 2235, 138 L.Ed.2d 689 (1997), held that federal courts "lack authority to substitute for Rule 23's certification criteria a standard never adopted by the rulemakers--that if a settlement is 'fair,' then certification is proper.". For, as the Supreme Court admonished:

And, of overriding importance, courts must be mindful that the rule as now composed sets the requirements they are bound to enforce. Federal Rules take effect after an extensive deliberative process involving many reviewers: a Rules Advisory Committee, public commenters, the Judicial Conference, this Court, the Congress. See 28 U.S.C. §§ 2073, 2074. The text of a rule thus proposed and reviewed limits judicial inventiveness. Courts are not free to amend a rule outside the process Congress ordered, a process properly tuned to the instruction that rules of procedure "shall not abridge ... any substantive right." § 2072(b).

Several decisions and those of the Supreme Court have held that the district court, within the bounds of the Federal Rules, has broad discretion to decide whether to allow the maintenance of a class action; that inherent in that discretion is the district court's duty to rigorously analyze each case to determine whether the certification prerequisites have been satisfied; and that the district court, when necessary, must probe behind the pleadings before coming to rest on the certification question. *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160-161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Gulf Oil Co. v.. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). As this court, in *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996), recently held:

A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 573 (5th Cir.1995). The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23. *Gulf Oil*

*Co. v. Bernard, 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981).*

*NEWBERG, supra, § 4.14 (discussing these approaches with approval and collecting cases therein); 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1775, at 470 (2d ed. 1986) ("If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2). Those aspects of the case not falling within Rule 23(b)(2) should be treated as incidental.").*

*Title VII suit against discriminatory hiring and promotion policies is necessarily a suit to end discrimination because of a common class characteristic, [such as race but not limited to it]. Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir.1969); Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir.1968). The conduct of the employer is actionable "on grounds generally applicable to the class," and the relief sought is "relief with respect to the class as a whole." The class, all sharing a common characteristic subjected to discrimination, is cohesive as to the claims alleged in the complaint. Thus, a Title VII action is usually particularly fit for (b)(2) treatment, and the drafters of Rule 23 specifically contemplated that suits against discriminatory hiring and promotion policies would be appropriately maintained under (b)(2). Advisory Committee, supra at 102.*

*A (b)(2) class is appropriate in a Title VII suit where both final injunctive and monetary relief are granted. See Franks v. Bowman Transp. Co., 495 F.2d 398, 422 (5th Cir.1974); Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 257 (5th Cir.1974); Johnson v. Goodyear Tire & Rubber Co., 491 F.2d 1364, 1375 (5th Cir.1974); Robinson v. Lorillard Corp., 444 F.2d 791, 801-802 (4th Cir.1971); Bowe, 416 F.2d at 720. The basic nature of a Title VII suit has not been altered merely because the plaintiff may also pray for compensatory or punitive damages, if money damages are not the exclusive or dominant relief sought.*

*After the 1991 Civil Rights Act the thrust of a Title VII action
continues to be society's interest in eliminating discrimination and the
individual's interest in being made whole. H.R.Rep. No. 102-40(I), at
64-65, reprinted in 1991 U.S.C.C.A.N. 549, 602-03. Title VII plaintiffs
may still seek extensive and systematic injunctive relief for claims that
arise from a system of employment action that has been uniformly
imposed based on a characteristic common to all class members, such
as race. Therefore, "[t]he conduct of the employer is still answerable
'on grounds generally applicable to the class,' and the primary relief
sought is still 'relief with respect to the class as a whole,' " Wetzel, 508
F.2d at 251, even when nonpredominant money damages are sought.
Cf. Thomas v. Albright, 139 F.3d 227, 1998 WL 135494, 234-35
(D.C.Cir. 1998) (assumption of cohesiveness underlying certification
of a (b)(2) class is not necessarily destroyed when claims for
injunctive relief are coupled with individual claims for monetary
damages).*

*Because equitable relief and legal claims may depend on common
issues of fact, the court must allow the jury to determine in stage I the
issue of legal liability to the class before the court determines whether
the class is entitled to injunctive or declaratory relief. See Dairy
Queen v. Wood, 369 U.S. 469, 479-480, 82 S.Ct. 894, 8 L.Ed.2d 44
(1962). Also, in stage II, the court must clearly instruct the jury that it
is not to revisit the issues decided by the jury in the first phase as to
whether the defendant had an employment policy of unlawful
discrimination but must decide only the issues of whether individual
plaintiffs are entitled to compensatory or punitive damages. See
Gasoline Products Co., Inc. v. Champlin Refining Co., 283 U.S. 494,
51 S.Ct. 513, 75 L.Ed. 1188 (1931)*

*The first stage of a Title VII class action focuses exclusively on
class-wide claims, Price Waterhouse v. Hopkins, 490 U.S. 228, 245 n.
10, 109 S.Ct. 1775, 104 L.Ed.2d 268 (The focus in Stage I is " 'not [ ]
on [the] individual hiring decisions, but on a pattern of
discriminatory decisionmaking.' ") (quoting Cooper v. Federal
Reserve Bank of Richmond, 467 U.S. 867, 876, 104 S.Ct. 2794, 81*

*L.Ed.2d 718 (1984)), whereas the second stage focuses on individual claims.*

## II. EVENTUAL CLASS ACTION ALLEGATIONS

Plaintiffs file this action with standing as follows:

Lead Plaintiff, as he is personal member of the Class, ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

███████████████████████████████████████████

████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

---

[2] According to the Venezuelan Law for the Promotion and Development of Small and Medium Industry and Social Property Units, the company will be:

Small Industry when it has an average annual payroll of up to fifty (50) workers or with an annual billing of up to one hundred thousand Tax Units (100,000 TU).
Medium Industry when they have an average annual payroll of up to one hundred (100) workers or with an annual billing of up to two hundred and fifty thousand Tax Units (250,000 TU).



b.     Questions of law and fact are common to the Class, including but not limited to the following: :

The class members have suffered the same injury or type of injury as a result of actions of the Defendants, specifically from the actions derived from the orders, instructions, statements and policies implemented by principals of the Defendants, its subsidiaries and contractors with regards to the member of the class, namely the workers of Defendants, its subsidiaries, affiliates and contractors due to the instructions given and held by the presidents of PDVSA, CITGO, managers, directors and other principals from 2002 to this date, as well as Hugo Chavez and Nicolas Maduro as presidents of

Venezuela, as well as of the ministers in charge for the energy sector, the authorities of and officers of Defendants, as well as the presidents and executives of other Venezuelan Government, Venezuelan Judiciary, Venezuelan Legislative and other State bodies.

Defendants acted or conspired with co-conspirators to fire, deny rights to the workers, fraudulently conceal assets to avoid collection from the Plaintiffs or any other affected by the wrongdoings of Defendants.;

Defendants and co-conspirators' conduct caused injury to the business and property of Plaintiffs and the members of the Class;

The amount of aggregate damages suffered by the Class as a whole is of consideration;

The Class suffered discrimination injury, political persecution injury;

Defendants were unjustly enriched to the detriment of the Class, entitling the Class to disgorgement of all monies resulting therefrom; and the Class is entitled to restitution and/or disgorgement, in addition to, or as a substitute for, damages under applicable United States and Venezuelan law.

The Claims of the Plaintiffs are typical of the Class: The claims of the class representatives are typical of the claims of the class members. because all members of the Class were injured, and may continue to

be injured, in the same or similar manner by Defendant and co-conspirators' unlawful, criminal and inequitable methods, acts, and practices, i.e., they have persecuted and performed sustainable damage to the Class since 2003 to this date. Moreover, the defenses would involve common issues with respect to the Plaintiffs and the Class members.

d.      The Plaintiffs will fully and adequately protect the interest of all members of the Class. The class representatives are adequate to represent the interests of the class members as former workers of PDVSA, its subsidiaries and SME contractors. ███████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

██████████████████████

The Plaintiffs have no interests that are adverse to, or in conflict with, those of the Class, on the contrary a long standing career in defense of the Class characterizes decades of work by████████████████

███████████████████████████████

█████████████████████



e. The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members.

f.   For the Plaintiffs and the members of the Class bringing this action, a class action is equivalent or superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all workers and firms affected in the United States, Venezuela and worldwide would be impracticable. The Class is readily definable and prosecution as a class action will eliminate the possibility of duplicative litigation, while also providing redress for claims that would otherwise be too small to support the expense of

individual complex litigation. That a large number of the class members are domiciled in Venezuela is an obstacle as well for such potential claimants to obtain redress. The class members will be given adequate notice of the class action, including those who live in Venezuela. The Plaintiffs have the necessary means to communicate with the class members.

Eventually the court could rule to certify the following classes of plaintiffs, adding, combining or elimination, or other measure as the court might deem proper:



The eventual Benefits of Class Action Certification:

Class action certification would allow the class members to obtain justice in a fair and efficient manner. It would also save the time and expense of having to litigate each individual claim.

In the eventuality the court considers that a class action certification can not be granted at the moment, Plaintiffs pray the court to proceed with their joint claims as hereby documented.

52. As early as 2004 it was of public knowledge that persecution of oil workers was extremely harsh as can be read in the "Current situation of employees of the state oil company Petróleos de Venezuela (PDVSA) who were discharged following their participation in strikes during December 2002 and April 2003; work reintegration; access to the public service and the private sector; whether private companies are instructed not to hire workers

fired by PDVSA; remedies undertaken" by:

https://www.refworld.org/docid/41501c7215.html: This report by the :

Canada: Immigration and Refugee Board of Canada and recognized by the

UN Refugee Agency (UNHCR) provides information on the situation of

PDVSA workers who were dismissed for their participation in strikes in

2002 and 2003. : https://www.refworld.org/docid/41501c7215.html

53. **Plaintiffs will send the court, once and if efiling rights are granted, or as required by court, with a list of no less than two hundred sworn affidavits recorded by potential plaintiffs expressing their intention to join or similar into the case.** ▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬ **have in**

**viva voce sworn the following affidavit:**

54. *"The following text from the body of the Affidavit expresses my situation:*

*I, the undersigned former employee of PDVSA or its subsidiaries, with date of first employment, date of de facto termination and last position held in said company or subsidiaries, as indicated in the annex to this*

*Affidavit to the extent that corresponds to me, I hereby declare under penalty of perjury the following:*

*1. I intend to file a joinder or similar action in this honorable court of justice, to consolidate the case related to the Violation of Human Rights and Workers' Rights presented by Mr. Iván R. Freites and others against Bolivarian Republic of Venezuela, PDVSA, CITGO and others.*

*2. I am fully aware of the relevance of the case to my own situation, with regard to the risk of making illusory any expectation of injunctive or other remedies for damages caused by the defendants, especially given the circumstances of the Crystallex International case Corporation v. Bolivarian Republic of Venezuela Case Number: 1:17-mc-00151-LPS in the District of Delaware.*

*3. This action arises from extensive damages inflicted on individuals, including engineers, technicians, skilled workers, and contractors, who were employed or contracted by Defendants at various facilities in Venezuela and throughout the Americas. These violations spanned from 2003 to the present and included services at PDVSA facilities such as oil refineries in El Palito, Amuay, Cardón, Bajo Grande,*

Puerto La Cruz, Barinas, PDVSA Joint Ventures and PDVSA Petroleum Exploration and Production, among others. others.

4. I was unfairly fired, had my contract de facto canceled, and PDVSA officials unfairly prohibited me from seeking employment within PDVSA Corporation or its subsidiaries, in Venezuela, the United States, and Europe.

5. The Plaintiffs in Mr. Iván R. Freites' Lawsuit allege that PDVSA violated employment contracts by failing to pay our full salaries and benefits, mismanaging the workers' pension fund, violating contract terms related to housing, and other benefits, and engaging in a variety of other harmful activities, which are basically the same evils that I suffered from PDVSA and other defendants.

6. Additionally, PDVSA and its subsidiaries have benefited from unjust enrichment through withholdings, salaries, contractor equipment, unpaid and unprocessed invoices, and other funds owed to workers like me. This unjust enrichment represents substantial sums that have been improperly withheld.

7. Several of the plaintiffs, including myself, were denied our right to work by the defendants and co-conspirators as an act of political

*retaliation. They confiscated our properties and subjected us to physical and psychological harm.*

*8. The defendants have unlawfully caused serious injuries and deprived me and thousands of workers of our right to justice.*

*9. I will allege and provide evidence that CITGO played an instrumental role in these actions and collaborated with the Defendants, which include the Government of the Bolivarian Republic of Venezuela, Petróleos de Venezuela, S.A. (PDVSA), PDV Holding, PDV America, and others, by carrying out these illegal actions against Workers and other people in similar situations.*

*In accordance with the principles of justice, equity and protection of human rights, I hereby affirm the truth of the statements contained in this Affidavit and express my intention to seek redress through this honorable court of law.*

*With filling date according to Google Forms Timestamp.*



Screenshot (one of several) showing different affected workers providing their sworn statement on the Affidavit.

55. Given that it could be so considered by the court that all conditions for a class action process are met, Plaintiffs pray the court to certify a Class Action certification or similar action.

56. In the eventuality the court does not consider the class action process as proper, Plaintiffs pray the court to proceed with the joint case of Plaintiffs.

57.

## CLAIMS FOR RELIEF

58. The Plaintiffs seek injunctive relief and pray the court to enjoin Defendants from continuing to violate the Plaintiff's rights; That Defendant, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein; or from entering into any other conspiracy alleged herein, or from entering into ·any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

59. That Plaintiffs be awarded restitution, including disgorgement of profits obtained by Defendant as a result of their acts of unjust enrichment, or any acts in violation of laws of fiduciary duties; That Plaintiffs be awarded their damages, in an amount according to injury.

60. That Plaintiffs be awarded proper interest for damages after the date determined by the court;

61. That Plaintiffs recover their costs of suit including translation costs, accountants, financial and other advisors costs and reasonable attorney's fees; and

62. That the Court grant other legal and equitable relief as it may deem just and proper under the circumstances, including such other relief as the Court may deem just and proper to redress, and prevent recurrence of, the alleged violation to dissipate the effects of Defendant's violations.

63. Order Defendants to pay damages to Plaintiffs in an amount to be determined during the process; and grant such other relief as the Court may deem just and equitable.

64. The Plaintiffs seek ██████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████

65. In the case of the putative Class Members, a proper settlement for each of the putative Class Members would allow a complete settlement of the case and avoid costly litigation and further damages.

66. It is to be noted *prima facie* that a large majority of class members are persons of over 60 years of age, in conditions of hardship at the moment due to the wrongs inflicted by Defendants upon them.

### STATEMENT OF THE IDENTITY OF THE PLAINTIFFS, OUR INTEREST IN THE CASE, AND THE SOURCE OF OUR AUTHORITY TO FILE

67. We, the Plaintiffs state as follows: Identity of Plaintiffs, interest in the case and source of authority to file are stated in Appendix I and considered hereby reproduced.

68. Plaintiffs pray the court for Seal and Reserve of their identities with respect to the Public.

69. In the case of ████████████████████████████████████████, *in chambers* seal of their identity is prayed to the court.

70. Plaintiffs pray the court for in chambers reserve of identity of all Potential Plaintiffs and wronged parties and persons that Plaintiffs bring to the attention of the court.

## COMMENTS ON THE LEGAL AND DE FACTO RELATIONSHIP

## AMONG SOME OF THE DEFENDANTS.

71. According to documents filed with the World Bank's arbitration court, US Owens-Illinois, in a case known to this court filed on February 9th, 2019. Plaintiff Owens-Illinois claimed while PDVSA Holding, Citgo Holding, and Citgo Petroleum were "nominally Delaware corporations," in reality they were "alter egos, and mere instrumentalities of Venezuela itself".

72. According to the decision of the UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT Case: 23-1647, is based on the finding that the opposition-led interim government had used Citgo as its instrumentality, as had also the Chavez and Maduro Administrations done since 2003. Judge Leonard Stark's 61-page opinion reads: "The Guaidó Government has accessed PDVSA's US subsidiaries' assets in the United States and used them to fund itself, bypassing any right PDVSA may have had to corporate dividends. The Guaidó Government has also used PDVSA assets to fund Venezuela's legal Defense . . . PDVSA has started, only later to stop, paying its debts at the direction of Venezuela. President Guaidó announced that he intends to treat Venezuela's debts and PDVSA's debts the same in an eventual debt restructuring."

73. In the field of political persecution of opposition members, it has been shown by reports of International Labor Organization, dated 2004 to reports as recent as 2022 that opposition members, union leaders, union members and all type of workers have been persecuted by PDVSA, CITGO in cooperation with the Venezuelan government.

74. In general terms the US State's Attorney for Southern District of Texas and the US Department of Justice ROBERT ZINK Chief of Fraud Section of Criminal Division have charged CITGO with criminal charges as foreign officials according to the FCPA. in the Case 4:20-cr-00305 *SEALED* filed in the UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION in july 2020. stated,

   a. Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan stateowned and state-controlled oil company. PDVSA and its subsidiaries and affiliates were responsible for, among other things, the exploration, production, refining, transportation, marketing, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government. PDVSA and its wholly-owned subsidiaries, were owned and controlled by, and performed functions of, the Venezuelan government, and were "instrumentalities" of a foreign government as that term is used in the

Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A).

b.  Citgo Petroleum Corporation ("Citgo"), based in Houston, Texas, was a wholly-owned subsidiary of PDVSA that acted primarily as a refiner, transporter, and marketer of petroleum-based products, but also procured goods and services on behalf of PDVSA through its Special Projects group. Citgo was indirectly owned and controlled by, and performed functions of, the Venezuelan government, and was an "instrumentality" of a foreign government as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd3(f)(2)(A).

75. In the United States District Court Southern District of Florida case 22-20552-CR, United States of America v. David RIVERA it was established that CITGO paid several million USD to U.S. Politicians in order to launder the reputation of the Venezuelan Government as recent as 2017, in violation of the Foreign Agents Registration Act and other laws.

76. It has been established and accepted in this District Court of Delaware that CITGO, PDVSA and the Venezuelan government are to be considered as *alter ego* of one another in several cases but that such condition of *alter ego* is to be considered and decided with respect to each case.

77. Plaintiffs have been directly affected by the wrongdoings of Defendants.

78. All above mentioned legal reasonings can be a guide to conclude that while performing commercial activities in the United States and Venezuela, CITGO, PDVSA and all Defendants engaged in a pattern of human rights violations.

79. While Alter ego doctrine is to be evidentiated in each and every case, in this case brought to the attention of the Court shows without need to recurr to Alter ego allegations, that Defendants engaged in the illegal activities alleged by Plaintiffs, not as alter ego of the Republic of Venezuela (which they may or may not have been at any given point in time) but as the legal entities they are and for which their actions and omissions they are to answer.

## 80. APPLICABLE LAW, JURISDICTION AND VENUE

### 81. Applicable Law

82. Procedural Law is that of the United States, the FRCP and the State of Delaware under Federal Rules of Civil Procedure when applicable.

83. Under FRCP 44.1 ; Del. Cod. C. Proc. 44.1; Plaintiffs pray the court to rule that applicable Law is the Law of the country of Republica Bolivariana de Venezuela, as in the context of federal court proceedings, Federal Rule of Civil Procedure 44.1 ("Rule 44.1") provides procedural guidance for the

application of foreign law in federal court.  Rule 44.1 states that: "**[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.  In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The court's determination must be treated as a ruling on a question of law. "**

84. Plaintiffs bring to the attention of the Court that Venezuela is bound by a number of international agreements with regards to Trade Unions Law, Workers Law (the ILO 1958 Convention) to which the US is also part; that Venezuela is bound by a number of international agreements with regards to Human Rights to which the US is also part as the Universal Declaration of Human Rights (UDHR 1948), the  International Covenant on Civil and Political Rights (ICCPR ratified by the US in 1992) ; the  Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT, U.S. ratified CAT in 1994 ):  relevant to the case. In the case of Plaintiffs Leading Plaintiff and Ivan FREITES the  1951 Refugee Convention and its 1967 Protocol. are also applicable.

85. Furthermore Venezuelan Law expressly prohibits discrimination of any sort based on political grounds.When an action is brought upon a cause arising

outside of the jurisdiction, it always should be borne in mind that the duty of the court is not to administer its notion of justice, but to enforce an obligation that has been created by a different law. Cuba R. Co. v. Crosby, 222 U.S. 473 (1912); Slater v. Mexican National R. Co., 194 U. S. 120, 194 U. S. 126. With very rare exceptions, the liabilities of parties to each other are fixed by the law of the territorial jurisdiction within which the wrong is done and the parties are at the time of doing it. American Banana Co. v. United Fruit Co., 213 U. S. 347, 213 U. S. 356. See Bean v. Morris, 221 U. S. 485, 221 U. S. 486-487., federal courts sitting in diversity apply the federal rule so long as it does not violate the Rules Enabling Act, 28 U.S.C. § 2072, by abridging, enlarging or modifying any substantive right–including substantive rights guaranteed under state law.

86. **Jurisdiction and Venue.**

87. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, which provides that federal courts have jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Plaintiffs are residents and domiciled in ███████████████ ██████████████████████████. Defendants CITGO Holding,

CITGO Corporation, PDV Holdings and PDV America are established in Delaware. Therefore, the Court has subject matter jurisdiction over this action.

88. The Court also has personal jurisdiction over the Defendants. Several of the defendants are a Delaware corporation and have sufficient contacts with the State of Delaware to establish personal jurisdiction. Additionally a number of trials involving the Defendants are currently pending in Delaware Courts (See 879 F.3d 79 United States Court of Appeals, Third Circuit. CRYSTALLEX INTERNATIONAL CORP.v.PETRÓLEOS DE VENEZUELA, S.A.).

89. Venue is proper in this Court under 28 U.S.C. § 1391(b) as Defendant resides in this District. Further, a substantial part of the events or omissions giving rise to the claim herein occurred in this District.

90. Venue is proper in this action in the District of Delaware pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(f)(3).. Defendants CITGO and PDV America are subject to personal jurisdiction in the District of Delaware and a substantial part of property that is subject of the action is situated in the District of Delaware.

91. Personal jurisdiction in this District is proper over Defendant pursuant to Del. C. § 321(a), 10 Del. C. § 3111, and Federal Rule of Civil Procedure 4(k).

92. Plaintiffs bring this case to the UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE, given the foreseeable connections of an eventual decision in favor of Plaintiffs with Case No: 1:17-mc-00151 CRYSTALLEX INTERNATIONAL CORP., v. BOLIVARIAN REPUBLIC OF VENEZUELA, PETRÓLEOS DE VENEZUELA, S.A. et al.

## 93. THE PARTIES

### 94. Plaintiffs

95. Plaintiffs are identified in Attachment I,



### 96. Defendants

97. **Defendant Petróleos de Venezuela, S.A. (PDVSA)** is a "corporation owned by the Bolivarian Republic of Venezuela and subordinated to the Venezuelan state," and "supervised and controlled by the Ministerio del Poder Popular

para el Petróleo - People's Power Ministry of Petroleum." Its business activities and interests in the United States are represented by Defendant "Junta Administradora Ad-Hoc de PDVSA" with the following address as per the Foreign Assets Registration Act Register: **Petróleos de Venezuela, S.A.**, Mr. Horacio Medina 2216 Adams Street #307, Hollywood, FL 33020

98. **Defendant PDV Holding, Inc.** is a Delaware corporation (State of Delaware Division of Corporations File 2742595) with its principal place of business at 1293 Eldridge Parkway, Houston, Texas 77077 and with the following address as per the Foreign Assets Registration Act Register: PDV Holding, Inc. Mr. Horacio Medina 2216 Adams Street #307, Hollywood, FL 33020 . Defendant is a wholly-owned direct subsidiary of Petróleos de Venezuela, S.A., a foreign corporation wholly owned and controlled by Venezuela. Defendant, in turn, wholly owns CITGO Holding, a Delaware corporation with the same address. It is controlled by Defendant "Junta Administradora Ad-Hoc de PDVSA" a.k.a "PDVSA Ad-Hoc". The following graph taken from the PDV Holding webpage on Aug.28.2023 indicates:



PDV Holding, Inc., a United States subsidiary of the Venezuelan National oil and gas company, Petróleos de Venezuela, S.A. ("PDVSA"), is a non-operating stock holding company incorporated in Delaware and headquartered in Texas. PDVH is the indirect sole stockholder of CITGO Petroleum Corporation, through ownership of 100% of the shares of its direct subsidiary CITGO Holding, Inc. (CITGO Holding, Inc. is the sole stockholder of CITGO Petroleum Corp.)

99.

100. **Defendant PDV America, Inc.** ("PDV America" or the "Company" and, together with its subsidiaries, the "Companies") was incorporated in 1986 in the State of Delaware and is a wholly owned subsidiary, effective April 2, 1997, of PDV Holding, Inc. ("PDV Holding"), a Delaware corporation. The Company's ultimate parent is Petroleos de Venezuela, S.A. (together with one or more of its subsidiaries, referred to herein as "PDVSA"), the national oil company of the Bolivarian Republic of Venezuela. Through its wholly owned operating subsidiaries, CITGO Petroleum Corporation ("CITGO") and PDV Midwest Refining L.L.C. ("PDVMR") (see below), PDV America refines, markets and transports petroleum products, including gasoline,

diesel fuel, jet fuel, petrochemicals, lubricants, asphalt and refined waxes, mainly within the continental United States.

101. **Defendant Junta Administradora Ad-Hoc de PDVSA** a.k.a "PDVSA Ad-Hoc" is the legal entity in charge of all matters relating to Petroleos de Venezuela S.A. in the United States and other countries as designated by the Asamblea Nacional de Venezuela in February 2019.

102. **Defendant CITGO Petroleum Corporation:** CITGO Petroleum Corporation ("CITGO") (1293 Eldridge Parkway, Houston, TX 77077) is an energy corporation incorporated in Delaware (State of Delaware Division of Corporations File 2005114). It is wholly owned by Citgo Holding, Inc.

103. **Defendant CITGO Holding:** (1293 Eldridge Parkway, Houston, TX 77077) is an energy corporation incorporated in Delaware (State of Delaware Division of Corporations File 2107402) is a wholly-owned operating subsidiary of PDV America, Inc. ("PDV America"), a wholly indirectly owned subsidiary of Petroleos de Venezuela, S.A. ("PDVSA", which may also be used herein to refer to one or more of its subsidiaries), the national oil company of the Republic of Venezuela.

104. **Co Conspirators**

105. **CoConspirators 1:** SERVIFERTIL, INTESA, Bariven, PALMAVEN, S.A.Corpoven, S.A., Pequiven, S.A.; Petropiar, S.A.; Petromiranda, S.A.; Petromonagas, S.A.; Petroanzoátegui, S.A.; Petrodelta, S.A.; Petrocaribe, S.A.; CITGO Petroleum Corporation; PDVSA Gas, S.A., PDV Marina; PDVSA Gas; PDVSA Comunal Collectively addressed as "PDVSA et al" are wholly-owned operating subsidiaries of Petroleos de Venezuela S.A. and share the same Registered Address with Petroleos de Venezuela S.A.

106. **Co Conspirators 2:** Asociación Estratégica Cerro Negro, Sincrudos de Oriente, S.A. (often just referred to as Cerro Negro), Shares: PDVSA (41.67%), ExxonMobil (41.67%), and BP (16.66%) after nationalization became known as PetroMonagas; Petrozuata C.A. between PDVSA (49.9%) and ConocoPhillips (50.1%); Asociación Estratégica Hamaca, Petrolera Ameriven, S.A. (commonly known as Ameriven), Original Shares: PDVSA (40%), ChevronTexaco (now Chevron) (30%), and Phillips Petroleum Company (which later merged to become ConocoPhillips) (30%), after nationalization it was renamed: Petropiar C.A.; Asociación Estratégica Sincor, Petroalianza Sincrudos del Orinoco C.A. (often simply called Sincor), Original Shares: PDVSA (38%), TotalFinaElf (now Total) (47%), and Statoil (now Equinor) (15%), after nationalization renamed as Petrocedeno: Collectively addressed as "PDVSA Joint Ventures"

107. **Co Conspirators 3:** ExxonMobil, British Petroleum, Conoco, Chevron, TOTAL, Statoil, Repsol, Marathon Collectively addressed as "PDVSA Associates"

108. **Co Conspirators 4:** Siemens Venezuela, Siemens Energy, Collectively addressed as "Corruption Facilitators". Defendant SIEMENS S.A. (VENEZUELA) ("SIEMENS VENEZUELA"), headquartered in Caracas, Venezuela, was a wholly owned subsidiary of Siemens Aktiengesellschaft ("Siemens"), a corporation organized under the laws of Germany with its principal offices in Berlin and Munich, Germany. Through its operating groups, subsidiaries, officers, directors, employees, and agents, Siemens was engaged in a variety of business activities for, among others, national, state, and municipal governments. This included, among other things, developing, constructing, selling, and servicing telecommunications equipment and systems; power generation, transmission, and distribution equipment and systems; transportation equipment and systems; medical equipment and systems; and industrial and traffic equipment and systems. SIEMENS VENEZUELA was a regional company that contracted for and managed projects relating to all Siemens operating groups. According to the U.S. Securities and Exchange Commission in a release dated December 15th, 2008 that reads "Washington, D.C., Dec. 15, 2008 — The Securities and

Exchange Commission today announced an unprecedented settlement with Siemens AG to resolve SEC charges that the Munich, Germany-based manufacturer of industrial and consumer products violated the Foreign Corrupt Practices Act (FCPA) by engaging in a systematic practice of paying bribes to foreign government officials to obtain business." Siemens was in violation of FCPA and RICO in several countries including Venezuela and relates to this case. Siemens has benefited from its wrongdoings and schemes of corruption and bribery in Venezuela. Plaintiffs have requested Siemens to refrain from pretending to collect allegedly due monies from assets of Venezuela, PDVSA and similars (see. Letter from Siemens in Crystallex International Corp. v. Bolivarian Republic of Venezuela D. Del. C.A. No. 1:17-mc-00151-LPS ) in obtaining gains in relation to their wrongdoings in the country until an injunctive relief is provided by Siemens to the people of Venezuela together with compensation to be determined or agreed.

109. **Francisco a.k.a. "Pancho" Illaramendi;** was sentenced January 29, 2015 by U.S. District Judge Stefan R. Underhill in Bridgeport to 156 months of imprisonment, followed by three years of supervised release, for orchestrating a Ponzi scheme that defrauded investors and creditors of hedge funds he managed out of hundreds of millions of dollars, and for obstructing

the ensuing investigation of his conduct. It is believed Defendant is imprisoned under federal custody.

110. **Kenwood Management Group;** Under receivership, see S.E.C. v. Illarramendi, No. 3:11-cv-00078, 2014 .

111. **Co Conspirators 5:** Rafael Ramirez (Former President of PDVSA and Minister of Petroleum), Felix Rodriguez (former President of CITGO), Jose Alejandro Rojas (Former Minister of Finance), Collectively addressed as "Government Officers"; Francisco a.k.a. "Pancho" Illaramendi; Kenwood Management Group are individuals known to the US Courts and US Department of Justice for several cases of money laundering and violations of RICO and FCPA.

112. **Co Conspirator 6: The Bolivarian Republic of Venezuela (Venezuela).**

## SUMMARY OF ARGUMENT AND ARGUMENT

113. All facts and allegations are based on information and belief.

114. ████████████████████████████████
████████████████████████████████████████
████████████

115. ████████████████████████████████████
██████████████████████████







129.

128.







133.

134.



