143. 

144.

145.

146.

147.

148.

149.

150.

151.



152.

153.

154.

155.

156.





164.

165. CITGO has collaborated with other Defendants and Co-Conspirators (República Bolivariana de Venezuela, PDVSA, PDV America, PDV Holding and others) in order to imprison workers. Some cases have been broadly discussed and are known to the public such as Tomeu Vadell, Dennysse Vadell and Cristina Vadell v. CITGO Petroleum Corporation, March 24, 2023, 4:2023cv01082, US District Court for the Southern District of Texas ) while hundreds of other cases are not yet publicly known. We pray the court to notice that this single claim is for an amount in excess of one hundred million US dollars, and being the case of dozens and hundreds of similar cases, relief would become unattainable for the injured.

166. In September of 2017, Tarek William Saab, Prosecutor General of Venezuela, began arresting PDVSA officers and managers on behalf of Maduro and Venezuela Saab arrested and imprisoned more than 50 PDVSA officers and managers by the time CITGO ordered several of its executives to travel to Venezuela in order to have them imprisoned, as stated in the case

known as "The CITGO six" . A clear evidence of the coordinated political activities done from and by CITGO on behalf of the Venezuelan government. See CAUSE NO. 2023-17486 TOMEU VADELL, v. CITGO PETROLEUM CORPORATION IN THE DISTRICT COURT HARRIS COUNTY, TEXAS 334TH JUDICIAL DISTRICT. where it is alleged by claimant, and evidence provided that regarding Conspiracy and Aiding & Abetting, CITGO, PDVSA, and Venezuela sought to accomplish the objective of having six CITGO employees wrongfully arrested and imprisoned in retaliation for U.S. sanctions on Venezuela and PDVSA, among other reasons. CITGO, PDVSA, and Venezuela reached a meeting of the minds on this objective when CITGO forced the executives to travel to PDVSA's offices in Caracas, Venezuela, and then worked with Maduro to coordinate their arrest and imprisonment. The arrest and imprisonment were both unlawful and overt acts taken in pursuance of the objective of having them wrongfully arrested and imprisoned in retaliation for U.S. sanctions on Venezuela and PDVSA, among other reasons. Additionally, or alternatively, CITGO knowingly and substantially assisted with and participated in their unlawful arrest and detention, including, but not limited to, by sending them to Venezeula

on an alleged "business trip" under false pretenses, sending only CITGO

executives of Venezuelan-descent, and then remaining deliberately silent, rather than support, its innocent employee wrongfully detained abroad. As a result of CITGO's conspiring with, or knowingly and substantially assisting with and participating in their unlawful arrest and detention, the families of those affected have sustained, and continue to sustain, severe injuries and damages.

This case, as recent as it is, shows the role of CITGO in the continuous wrongdoings against Venezuelans in general and Venezuelan oil workers in particular.

167. **According to statements of Horacio Medina, President of Defendant Junta Administradora Ad hoc de PDVSA the Venezuelan government with PDVSA as financial arm is " organized crime from power, with drug traffickers closely allied with them, with unlimited corruption that loots the country in all its expressions and that has an absolutely corrupt military leadership that participates in that looting."**

168. **PDVSA is a criminal and terrorist entity according to its representative in the United States, Mr. Horacio Medina. No further discussion seems to be necessary upon such confession.**

169. But it is not only looting but links to terrorist activities from PDVSA which have been expressly recognized by Venezuelan government high ranking officials, such as former Ambassador to Brazil (Republica Federativa do Brasil) Mrs. Maria Teresa Romero who specified on May, 20th, 2020 in the official web page of the Asamblea Nacional de Venezuela that "–It is no longer just a matter –Specifies Ambassador Romero– of the presence of Latin American terrorist groups such as the Revolutionary Armed Forces of Colombia (FARC), the National Liberation Army (ELN), but also of extra-continental terrorist groups such as the Hezbollah group which also maintains a close relationship with the hierarchy that usurps power in Venezuela.

170. **According to the diplomat, since 2007, when Maduro met in Damascus with Hassan Nasrallah, Secretary General of Hezbollah, the first commercial and criminal ties with the group were born. The Islamic Revolutionary Guard Corps (IRGC), led by Qasem Soleimani, who was discharged by the US on January 3, would have opened its subsidiaries in Venezuela and moved money through the state oil company, Petróleos de Venezuela, SA (PDVSA). ), using it to enter the international financial system and evade sanctions. " The quoted**

**opinion is part of Attachment II and considered hereby reproduced in its entirety.**

171. It is to be noted that the IRGG is a Designated Foreign Terrorist Organization, designated as such on April 15, 2019, according to the U.S. DoS FTO List as of September 5th, 2023.

172. According to written statements in a detailed press article signed by **Horacio Medina, President of Defendant Junta Administradora Ad hoc de PDVSA the Venezuelan government and PDVSA "those workers and union leaders who have dared to denounce this precarious situation and the calamitous operational realities of PDVSA are persecuted , their homes raided, repressed, imprisoned without prior trials; others have gone into exile or are in hiding. The cases of Guillermo Zarraga , Eudis Girot and Iván Freites serve as an example ."** Complete article is cited in Attachment II and hereby considered as reproduced in its entirety.

173. A number of workers dismissed from PDVSA were discriminated against by CITGO and were banned or blacklisted for employment in CITGO and other subsidiaries of PDVSA in the U.S. and Europe.

174. **The undisputed control of Tareck EL AISSAMI, PDVSA President in 2018 of PDVSA and CITGO operations, being Tareck EL AISSAMI a US Sanctioned individual.**

175. It is to be noted that Mr. Asdrubal Chavez was at or about the same time Vice President of Human Resources in PDVSA (Caracas), Member of the Board PDVSA (Caracas), **Member of the Board (CITGO),** President of CITGO Petroleum, President of PDVSA (Caracas) and Minister of Oil. In all these positions Mr. Chavez actively participated in the discrimination against workers and contractors for political reasons.

176. **Political operators and persecutors of opposition such as,**

   **Mr. Orlando Chacin ("Chacin") was at all relevant times a director of both PDVH and CITGO Holding. Case 4:18-cv-01458 Document 1 Filed in TXSD on 05/07/18 Page 5 of 59 - 6 - 23. ; Jesus Luongo ("Luongo") was at all relevant times a director of PDVSA (Venezuela), PDVH and CITGO Holdings.**

   **Mr. Eulogio del Pino ("Pino") was at all relevant times a director, chairman of the board and president of CITGO Holding, PDVSA Director, PDVSA (Venezuela) President.**

   **Mr. Nelson Martinez (deceased) was at all relevant times either a director, chairman of the board and president of CITGO Holding, PDV America, PDVSA Director, PDVSA (Venezuela) President, Minister of Oil and Energy in the Maduro regime.**

**In all these positions in the U.S. as CITGO officers and in Venezuela as PDVSA officers, these political operators actively participated in the discrimination against workers and contractors for political reasons.** This is clear evidence of the political assignments of CITGO on behalf of PDVSA, and the wrongful duties performed by CITGO against Venezuelans in general and the oil industry workers in specific.

177.   CITGO, PDVSA and The Bolivarian Republic of Venezuela have acted as mirrors of one another with respect to Venezuela and a number of policies and tactics relevant to labor.  Furthermore, CITGO has been instrumental for many of PDVSA wrongdoings by providing coverage, financing and similar, and has collaborated with other Defendants in order to imprison workers. Some cases have been broadly discussed and are known to the public such as Tomeu Vadell, Dennysse Vadell and Cristina Vadell v. CITGO Petroleum Corporation, March 24, 2023, 4:2023cv01082, US District Court for the Southern District of Texas ) while hundreds of other cases are not yet publicly known. **We pray the court to notice that this single claim is for an amount in excess of one hundred million US dollars, and being the case of dozens and hundreds of similar cases, relief would become unattainable for the injured.**

178. 

179. These decisions and actions have had a devastating impact on the lives of the affected persons. Many of them have lost their income, their homes, and their livelihoods. Some have had to emigrate from the country in search of opportunities, others have committed suicide linked to hardship, others have been evicted from their properties or housing when their property was located in or near PDVSA facilities. Children were banned from attending their regular schools as these children were the family of the wronged employees and contractors.

180. In the specific case of ██████████████





185.  Additionally it is known to the public that a number of high ranking government officers, including the President of Venezuela, Lt. Col. Chavez, the Minister of Oil, the President of PDVSA, the police, tribunals and all state powers threatened, imprisoned, killed, tortured, workers and other venezuelans on political grounds.

  a. In December 2002, the President of PDVSA, Alí Rodríguez Araque, said that striking workers were "terrorists" and that they should be "shot."

  b. In January 2003, the President of Venezuela, Hugo Chávez, said that striking workers were "traitors" and that they should be "fired."

  c. In February 2003, Chávez ordered the military to take control of PDVSA and to remove striking workers from the company's facilities.

  d. In March 2003, Chávez said that he would "break the necks" of striking workers.

These statements and orders led to a number of damages suffered by PDVSA employees and contractors, including:

e. Termination of employment. Thousands of PDVSA employees were fired for participating in the strikes.

f. Loss of wages and benefits. The terminated employees lost their wages, benefits, and pensions.

g. Harassment and intimidation. Many employees were harassed and intimidated by the government and by pro-government groups.

h. Physical violence. Some employees were physically attacked by pro-government groups.

i. Psychological trauma. Many employees suffered and continue to suffer psychological trauma as a result of the events of 2003 and 2004.

j. Psychological trauma. Many employees suffered and continue to suffer psychological trauma as a result of the illegal and violent process against any PDVSA employee, contractor or similar who is deemed by PDVSA or the Venezuelan government to be in favor of parties different from the government party, known as "opposition parties".

186. The damages suffered by PDVSA employees and contractors were significant and long-lasting. The terminated employees have been unable to find new jobs, and they have struggled to make ends meet. The harassment and intimidation have created a climate of fear and uncertainty, and the

physical violence has left some employees with permanent injuries. The psychological trauma has made it difficult for some employees to function normally.

187. The statements and orders made by the President of PDVSA and the President of Venezuela in 2003 and 2004 were a violation of the rights of PDVSA employees and contractors. These statements and orders were also a violation of the law. The employees and contractors who were harmed by these statements and orders have a right to seek justice.

188. PDVSA also failed to provide Plaintiffs Ivan FREITES and Plaintiff 3 , Plaintiff 6 and Plaintiff 7 with adequate health insurance and retirement benefits.

**COMMENTS ON THE PDVSA PENSION FUND FRAUD**

189. Additionally a massive fraud was perpetrated against the Pension Fund of the PDVSA workers whereby in a fraudulent way a hedge fund headed by Francisco Illaramendi was appointed as the manager of the PDVSA Workers Retirement Fund in 2003. He was responsible for investing the fund's assets and ensuring that they were properly managed. See *S.E.C. v. Illarramendi*, No. 3:11-cv-00078, 2014 WL 545720 (D. Conn. Sept. 10, 2014).

190. The Board in charge of managing the Pension Fund of the PDVSA workers was illegally appointed by PDVSA in 2014 in detriment of workers

interest as it became obvious with the total loss of the capital of the fund, in excess of several hundred million US Dollars.

191. The Hedge Fund headed by Illaramendi engaged in a series of fraudulent activities that resulted in the depletion of the fund's assets. These activities included:

192. Making unauthorized investments in risky and speculative assets.

193. Using the fund's assets to pay for personal expenses.

194. Embezzling money from the fund.

195. Francisco Illarramendi, the Venezuelan-American venture capital manager who served as PDVSA's financial adviser, was sentenced to 13 years in prison for a pyramid fraud, in which much of the money belonged to the Pension Fund of the Venezuelan state-owned company.

196. Illarramendi was accused of embezzling $20 million in a fraudulent scheme that fueled his friendships with high-ranking PDVSA officials. He was linked to the former president of the state oil company, Rafael Ramírez, and the former Finance Minister, José Rojas, to whom he was a close advisor.

197. The fraud became known in 2011 when the federal court of the United States linked Francisco Illarramendi and Moris Beracha, also a Venezuelan financial operator, to designing a Ponzi or pyramidal scheme for $500

million, which consisted of capturing money from investors and using it for

their personal benefits. , through a series of offshore companies, funds and

banks in tax havens such as Switzerland and the Cayman Islands.

198.  Illarramendi used his firm Michael Kenwood Group (MKG) since 2006

to capture the money that he fed into his fraudulent scheme. John C. Carney,

trustee appointed by the US court, assured that the financier took advantage

of his contacts in PDVSA to pay millionaire bribes and obtain resources

from the state Pension Fund between 2009 and 2010.

199.  After learning about the fraud, PDVSA restructured its board of directors,

promised greater internal surveillance, joined the lawsuit against the

Venezuelan financier and promised to assume the losses of its Pension Fund,

which covers more than 2,400 people. PDVSA did not assume the losses of

the Pension Fund.

200.  In 2011, Illarramendi pleaded guilty to the criminal charges to which he

was accused.

201.  The SEC, the US stock market regulator, also participated in the lawsuit

against Illarramendi by offering opaque data and transactions carried out by

the operator in tax havens. It even helped to recover part of the funds granted

by the affected investors.

202. During the trial, the SEC accused the financier of paying $3 million to forge certifications in order to justify capital movements before the US authorities.

203. Illarramendi is an economist graduated in the US and son of a Venezuelan diplomat. In 2005, he asked for a leave of absence from his work as an operator of the Credit Suisse bank to work as an executive advisor to PDVSA. He also participated as an advisor to the Ministry of Finance Mr. Jose Alejandro Rojas (Defendant).

204. Sources that knew about the case linked "Pancho" Illarramendi with former Minister Ramírez and, especially, with José Alejandro Rojas, former Finance Minister during the government of Hugo Chávez. The relationship between these persons was fundamental for the fraud against the beneficiaries of the PDVSA Pension Fund.

205. According to an official report from the Canadian Board for Refugees:

206. In January 2003, the daily El Universal reported that Juan Fernández, the President of Petroleum People (Gente del Petróleo), a Venezuelan organization that represents the employees dismissed by the state oil company Petróleos de Venezuela (PDVSA) (Country Reports 2003 25 Feb. 2004, Sec. 2.b), refused PDVSA's offer to rehire the fired workers, and said that [translation] "freedom cannot be negotiated" (El Universal 16 Jan.

2003). Fernández also said that PDVSA had published a list of the dismissed employees' names in the national newspapers (ibid.; BBC Mundo 10 Feb. 2003). According to an article published by BBC Mundo, Fernández and Horacio Medina, another spokesperson for the employees, were also on the list (ibid.).

207. See Attachment II on additional evidence on political persecution, murder, torture, etc. against Venezuelan workers and companies and others.

208. These are just a few examples of the many statements made by the presidents of PDVSA and Venezuela that threatened violence against members of the opposition who worked for PDVSA. These statements have created a climate of fear and intimidation among PDVSA workers and Contractors, and have made it difficult for them to speak out against the government.

## TOLLING OF STATUTE OF LIMITATIONS AND RELATED ISSUES

209. Extraordinary circumstances of Plaintiffs and the reasons on why it was not a sound possibility to take legal action against defendants is self-evident as it was life threatening for the Plaintiffs to insist in bringing legal actions while in Venezuela, as the repression of the Venezuelan regime has only worsened as years pass.

210. 

211.

212.

213.

214.

215. Plaintiffs, as Venezuelan citizens or residents, risk their life, limb and property by bringing this or any similar action while in Venezuela. Actually, Plaintiffs still fear they could face retaliation but given the latest changes in the recognition of Venezuelan authorities and the perceived risk of total insolvency by Defendants made the Plaintiffs decide to proceed in this action.

216. Under the "continuing violations doctrine'" after Bodner v. Banque Paribas it is clear that not even the passage of several decades between the seizures and the institution of the plaintiffs' lawsuit dictate for dismissal of the claims pursuant to the applicable statute of limitations. In Bodner v. Paribas and to the defendants' surprise and chagrin, the court determined that if the plaintiffs' allegations were true, the statute of limitations had not yet

even begun to run on their claims.  Instead, the defendants' allegedly

ongoing refusal to pay the claimants proper compensation, return seized

property and return confiscated or wrongfully appropriated money  represent

a "continuing violation" of international law that persisted up through the

time of suit. The continuing violations doctrine thus breathed new life into

claims that otherwise might have accrued and expired more than a

half-century earlier. The basic theory behind the continuing violations

doctrine is that in some situations, continuing misconduct by a defendant

will justify

the aggregation or parsing of its misbehavior, with the effect of rescuing a

plaintiff's claim or claims from the statute of limitations. Yet this seemingly

straightforward principle has frustrated judges and litigants for many years,

for it has proven exceedingly difficult to determine which claims are

"continuing" in nature, and which are not. The United States Supreme Court

has stepped in to provide guidance as to specific causes of action, as it did

this past term in a Title VII case, Ledbetter v. Goodyear Tire & Rubber Co.

Plaintiffs allege and count on the favorable opinion of the court that, in

addition to any statute of limitation provision, this case fulfills the criteria

for tolling any statute of limitations that would be applicable in ordinary

circumstances on the "continuing tort doctrine", "continuing wrong doctrine" or "continuing violations doctrine".

Additionally the Alien Tort Statute does not provide for specific statute of limitations and the **Torture Victim Protection Act** (TVPA) 'calls for consideration of all equitable tolling principles in calculating [the statute of limitations] period with a view towards giving justice to plaintiff's rights.'" Because the TVPA allows for equitable tolling, courts have been asked to decide whether the ATS provides the same protection. Courts have decided unanimously that it does. The extraordinary circumstances required for equitable tolling are assessed on a case by case basis, but include "situations where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against her. . . ."

All evidence shows that a continuing wrong has been exerted by Defendants against Plaintiffs and against putative class members at least from 2003 until present.

**Extraordinary circumstances have also been found when the political climate of a country made the safe initiation of a law suit impossible, although the plaintiff is required to file the lawsuit within a reasonable time after the extraordinary circumstances are removed.**

**Therefore Plaintiffs pray the court can agree that limitation statutes are tolled under equitable tolling and justice considerations.**

217. **LEGAL ALLEGATIONS AND CAUSE OF ACTION**

218. The Plaintiffs allege the following.

219. **ALLEGATIONS**

220. Plaintiffs file this action with standing as follows:

221. Plaintiffs suffered similar damages due to similar actions from Defendants (Persecution, seizing of assets, etc.).

222. Plaintiffs have suffered the same type of injury as a result of actions of the Defendants, as Defendants acted or conspired with co-conspirators to fire, deny rights to the workers, fraudulently conceal assets to avoid collection from the Plaintiffs or any other affected by the wrongdoings of Defendants;

223. Plaintiffs suffered discrimination injury, political persecution injury;

224. Defendant PDVSA was unjustly enriched to the detriment of Plaintiffs, entitling Plaintiffs to disgorgement of all monies resulting therefrom; and as Plaintiffs are entitled to restitution and/or disgorgement, in addition to, or as a substitute for, damages under applicable US and Venezuelan law.

225. Defendant CITGO financed a large number of illegal activities for PDVSA in the United States.

226.   The claims of the Plaintiffs are legitimate as they were injured, and may continue to be injured, in the same manner by the Defendants and unlawful, criminal and inequitable methods, acts, and practices, i.e., they have persecuted and performed sustainable damage to the Plaintiffs from 2002 to this date. Moreover, it is likely the defenses would involve common issues with respect to the Plaintiffs.

227.   Plaintiffs risk losing all and any possibility of recovery due to the financial situation of Defendants unless prompt action is granted by the court. Plaintiffs are to submit several motions for Writ of Attachment, motion for Declaration of Preferential Collection in favor of workers and others.

**228.   FIRST CAUSE OF ACTION - Contractual**

229.   Defendants violated the written contracts with Plaintiffs by *De facto* actions. Contracts were De facto terminated and compensation, due wages, due benefits, etc. were not paid.

230.   Breach of contract: PDVSA clearly failed to perform their obligations as outlined in the contracts with workers and contractors, all based in political motivations from PDVSA. The Plaintiffs allege and will beyond doubt establish the existence of valid contracts, their own performance and readiness to perform as well as the defendant's failure to perform, and

resulting damages. The Plaintiffs allege that PDVSA breached their employment contracts by failing to pay them their full wages and benefits, deprived them unlawfully of adequate health insurance; failed to pay due invoices and proceeded on termination of contracts without just cause and without compensation to the wronged party.

231. In summary with regards with the First Cause of Action the following assertions are made against defendants:

232. Breach of Contract:

233. Anticipatory Breach: PDVSA, in a *De facto* way communicated its intention to not fulfill contractual duties before the performance was due in the case of agreed and contracted purchase orders, service orders and maintenance orders to the Plaintiffs. This gives the Plaintiffs the right to treat the contract as breached and pursue legal remedies for each of the breached contracts to each of Plaintiffs.

234. As remedy, monetary damages are to be provided to Plaintiffs in order to restore the economic capacity of Plaintiffs.

235. All in violation of the Decree with Rank, Value and Force of Organic Law on Labor, Men and Women Workers ("DLOTTT") establishes that it will be applicable to the employment relationship executed or agreed upon in Venezuela.

236. All according to the Venezuelan Civil Code Section I: § 3° Of the effects of contracts, Civil Code Article 1159, Title: Section I: § 3° Of the effects of contracts; Civil Code Article 1159, Contracts have the force of law between the parties. They cannot be revoked except by mutual consent or for reasons authorized by Law.; Civil Code Article 1160 Title: Section I: § 3° Of the effects of contracts; Civil Code Article 1160 Contracts must be executed in good faith and require not only compliance with what is expressed in them, but also all the consequences that arise from the contracts themselves, according to equity, use or the Law.

237. Defendants acted against ██████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

██████ newspaper ████████████████ deceased editor and politician Teodoro PETKOFF.

238. **SECOND CAUSE OF ACTION-Tort-related causes of action**

239. Fraudulent misrepresentation,

240. The Defendant PDVSA made a false representation regarding several material facts on which the Plaintiffs relied. Some of the facts fraudulently represented by the Defendants include the promise of fair treatment of the cases at a later date (see statements of PDVSA President Rafael RAMIREZ

and of Minister Ali Rodriguez above), the promise of compensation for seized property or the promise of returning or repairing the damaged property, and other well documented facts. The case of fraud against the PDVSA Workers Pension Fund was carried out with complicity and fraudulent misrepresentation to the Plaintiffs of the facts surrounding the fraud. This fraudulent misrepresentation affected Plaintiffs who were employees of PDVSA.

241. The Plaintiffs suffered all sorts of damages and injuries by relying on the fraudulent misrepresentations of the Defendants.

242. All according to the provisions of the Venezuelan Civil Code , Article 1281: Creditors may also request a declaration of simulation of the acts carried out by the debtor. This action lasts five years from the day on which the creditors learned of the simulated act.

243. In this case, even as recent as of this month, Defendants have engaged in simulation and fraudulent misrepresentations to Plaintiffs and others in similar situation.

244. As of this month of September it has been recorded that Citgo Petroleum has been valued by its parent company PDVSA at between $32 billion and $40 billion, according to a hearing in this court of law. It was disclosed during the hearing to update a U.S. judge on talks to enact a court-ordered

auction of shares in Citgo's parent to satisfy more than $23 billion in claims against Venezuela and its state oil company PDVSA.

245. The refiner's value was based on Citgo's earnings of $4 billion before interest, taxes, depreciation and amortization, Ray Schrock, an attorney for a court official, told the court. He said Citgo's parent was seeking an indemnity bond of that value in a related dispute over the parent's share certificate.

246. As recent as August, Defendant PDVSA Ad-hoc had stated through its President of the board, that CITGO Petroleum had a value of about 12 billion USD, and therefore it was not feasible to honor the debts with PDVSA workers. Such a difference of 28 billion USD, from 12 billion to 40 billion, in one week, can not be reasonably explained, other that by the pretension of concealing the value of an asset in order to defraud a rightful creditor such as workers.

247. Accordingly, the Junta Administradora de PDVSA Ad hoc has fraudulently concealed from workers the estimated value of the assets from which some monetary relief could be obtained.

248. The Junta Administradora de PDVSA Ad hoc is in the known that workers wages, indemnification from terrorism, indemnification for work related wrongs and similar wrongs, have a preferential creditor status, under

both laws of the United States and Venezuela. Only secured creditors would have any arguable standing similar to workers, and there is not a single secured creditor in the current process of Crystallex v. Bolivarian Republic of Venezuela. Therefore the evidences of fraudulent concealment are clear and speak for themselves.

**249. Conversion**

250.   The Defendants deprived the interest of the plaintiffs in property through unauthorized acts and causing losses. The Defendant seized, occupied, took possession of, properties, goods, real estate, machinery, etc. it was not entitled to.  The default remedy is the damages, considering the fair market value of the property or returning the properties. ███████████████

███████████████████████████████████████████████

███████████████████████████. All in violation of Constitution of the Bolivarian Republic of Venezuela, stating,

   a. *Article 115.- The right to property is guaranteed. Every person has the right to use, enjoy, and dispose of his or her property. The property will be subject to the contributions, restrictions and obligations established by law for purposes of public utility or general interest. Only for reasons of public utility or social interest, through a final*

judgment and timely payment of fair compensation, the expropriation of any type of property may be declared.

b.  Article 116.- Confiscations of property will not be decreed or executed except in the cases permitted by this Constitution. By way of exception, the assets of natural or legal persons, national or foreign, responsible for crimes committed against public assets, the assets of those who have been illicitly enriched under the protection of the Public Power, and the goods coming from commercial, financial or any other activities linked to the illicit trafficking of psychotropic substances and narcotics.

251. **In the case of** ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

252. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

253. **Additionally, in the case of** ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮**, the question of exile for political reasons and its relationship with the de facto loss or**



expropriation of a citizen's property raises complex considerations in the field of legal philosophy.  In this essay, we will explore the reasons supporting the idea that political exile intrinsically entails the loss of an individual's capacities to use, fruit, and abuse property.

254.    First of all, it is essential to understand the very concept of political exile and its implication in the legal sphere.  Political exile refers to the forced expulsion of an individual from their country of origin due to political reasons, usually as a consequence of ideological conflicts with the ruling regime.  This act, although often justified as a national security measure, raises fundamental questions about individual rights and private property.

255.    Property, understood as the exclusive right of use, fruit and abuse of a good, forms the basis of many philosophical and legal theories.  From the Lockean perspective, for example, property arises from labor mixed with nature, and the loss of that property is a direct violation of natural law.  In the context of political exile, this violation manifests itself in the deprivation of the individual's ability to use his property, since he is prevented from residing in his place of origin.

256.    Fruitfulness, another crucial component of property, is significantly affected in political exile.  The inability to access the economic and social

benefits derived from property, such as renting real estate or participating in productive activities, constitutes a tangible loss for the exiled individual. This economic deprivation not only impacts his material well-being, but also contributes to the exile's vulnerability and dependence on his new environment.

257.    The dimension of abuse, which implies the right to dispose of property freely and autonomously, is equally undermined in political exile. Restrictions imposed by the host state or the absence of a legal framework familiar to the exiled individual limit his ability to make decisions about his property in accordance with his own interests and values. This aspect raises ethical questions about the legitimacy of restricting a person's autonomy in relation to his possessions as a consequence of his political situation.

258.    From a broader perspective, the loss of the capacities of use, fruit and abuse in political exile can also be interpreted as a form of de facto expropriation. Although the term "expropriation" is often associated with direct state action, political exile can be considered a de facto expropriation, as it deprives the individual of fundamental rights associated with property.

259.     The argument in favor of the loss of property in political exile is also supported by contemporary theories of human rights.  The Universal Declaration of Human Rights proclaims the right to property as an essential component of human dignity.  The deprivation of this right, as occurs in political exile, raises questions about the coherence of States with respect to their international human rights commitments.

260.     On the other hand, it could be objected that the loss of property in political exile is not intrinsic, but a contingent consequence of the decisions of the affected individual.  From a liberal perspective, one could argue that by choosing to resist or challenge the state, the individual consciously assumes the risk of losing certain rights, including property.  However, this perspective omits the complexities of political situations and the real limitations that the exiled individual faces when making decisions.

261.     In conclusion, the relationship between political exile and the de facto loss or expropriation of a citizen's property involves profound philosophical and ethical considerations.  The denial of the capacities to use, fruit and abuse as a consequence of political exile raises questions about justice, individual autonomy and human rights.  As the international community seeks to address the challenges associated with

**political exile, it is crucial to consider these issues from a perspective grounded in the philosophy of law and ethical principles that underpin our understanding of property and human dignity.**

**262. Negligence and Bad Faith**

263.   The Defendants had legal duties with respect to the workers and their rights as established in Venezuelan Law, U.S. Law and International Treaties subscribed by Venezuela;

264.   Defendants failed to honor its duties with workers and contractors, such as due care, fiduciary duties (embezzlement of workers pension fund), *paterfamilias* duties (destruction or neglect of contractors equipment in Defendant installations)

265.   Plaintiffs suffered great damage by actions of Defendant;

266.   The Failure to perform a number of duties  by Defendants result in this Cause of Action.

267.   Intentional Torts: Plaintiffs suffered the  deliberate actions taken by PDVSA that caused harm to them and their property. In the case of  all and each Plaintiff the following torts can be asserted:

268.   Assault where Defendant PDVSA intentionally created the apprehension of imminent harmful or offensive contact against the plaintiffs can be clearly established.

269.   Battery:  where Defendant PDVSA intentionally caused harmful or offensive contact with the plaintiffs.

270.   False Imprisonment: The defendant intentionally confined or restrained the plaintiff's freedom of movement. ███████████████

███████████████████████

271.   Intentional Infliction of Emotional Distress: The defendant engaged in extreme and outrageous conduct that caused severe emotional distress to all plaintiffs. All Plaintiffs have suffered financial duress due to the wrongdoings of Defendants.

272.   Trespass: The defendant intentionally entered onto the plaintiff's property without permission specifically in the cases of ███████████

███████████████

273.   Defamation, falsity and harm. As President of Venezuela, Ministers, Members of Parliament and other Defendants made derogatory and false statements, both verbal and written, with malice leading to the loss or injury to the reputation of Plaintiffs, including labeling them and terrorists, leading imprisonment, exile and persecution, and such statements were not made under underprivileged circumstances. PDVSA and CITGO officers have accused Plaintiffs and others in a similar situation of being terrorists.

274. Even as of present, the 

275. **THIRD CAUSE OF ACTION - Precedent causes of action**

276. Plaintiffs respectfully bring to the court the similarities of this case with the case of the Victims of the September 11th Terrorist attack v. Taliban in the attachment of Central Bank of Afghanistan. As this is an evolving issue, where the Department of State recognizes "**Nicolas Maduro continues to claim to be the leader of Venezuela and retains control and the loyalty of the Venezuelan Armed Forces (FANB). Members of the Maduro regime continue to engage in criminal activities and members of several Colombian FTOs — including the Revolutionary Armed Forces of Colombia-People's Army (FARC-EP), Segunda Marquetalia, and the National Liberation Army (ELN) — continue to operate in Venezuelan territory with relative impunity.**"(U.S.Department of State - Country Reports on Terrorism 2021: Venezuela) the cause of action stands based on the statements of the U.S. Department of State , the ongoing litigations

against states or de facto governments in control of a territory and similar
covered in the Terrorism Risk Insurance Act of 2002 (TRIA).

**277.  FOURTH CAUSE OF ACTION (Equity-related causes of action)**

**278.  For unjust enrichment**

279.  Defendants are responsible  for appropriation of money, assets and all
sort of property from the Plaintiffs.

280.  ███████████████████████████████

███████████████████████████████████

████████████. All Plaintiffs have claims on money from wages and unpaid
contractual obligations.

281.  The Plaintiffs seek compensation for the injuries inflicted by the
Defendants.

282.  In the case of ███████████████████████
████████due wages, violation of union privileges were incurred by
PDVSA.

283.  **Violation of labor laws:** Plaintiffs allege that PDVSA violated the labor
laws of the Republica Bolivariana de Venezuela by failing to pay them their
full wages and benefits, failing to provide them with adequate health
insurance, and failing to provide them with safe working conditions.

Persecution and discrimination on political grounds is clear on the cases of all Plaintiffs.

284. **Violation of international treaties:** Plaintiffs allege that PDVSA violated international treaties, such as the International Labour Organization's (ILO) Convention 158 on Termination of Employment, by failing to pay them their full wages and benefits, failing to provide them with adequate health insurance, and failing to provide them with safe working conditions.

285. The Plaintiffs allege that PDVSA's actions violated Plaintiffs employment contracts, as well as the laws of Republica Bolivariana de Venezuela and international treaties. The Plaintiffs deserve damages for their lost wages, benefits, and other losses. They also deserve to have compensation as Defendants enjoined from continuing to violate the rights of the Plaintiffs. The Plaintiffs are likely to succeed in their case. They have a strong case, and the law is on their side.

286. Additionally the actions of Defendants agains█████████████████
████████████████████████████████████████
████████████████████

287.   Violation of the Freedom of Speech Rights in the case of Lead Plaintiff relate to the closing, by means of financial threats █████████████ ██████████

## 288.   FRAUDULENT CONCEALMENT

289.   As stated above in Parr. 218 to Parr. 224, PDVSA and Junta Administradora Ad hoc de PDVSA have fraudulently concealed extremely relevant information to workers and contractors and taken deliberate steps to misrepresent facts in order to avoid honoring the rights of workers.

290.   Defendants deprived Plaintiffs of access to all documentation and evidence they were entitled.  Defendants systematically denied access to all type of electronic media to Plaintiffs. Defendants erased, deleted, blocked and performed other similar activities in order to delete or eliminate public sources of evidence including those in media.

291.   Even as of today, PDVSA and Junta Administradora Ad hoc de PDVSA allege that due to not having access to the workers and contractors files, no compensation can be agreed upon. **It is clear to law, equity and fairness that had the Defendants a willingness to voluntarily comply with the law and justice, some basic, initial, temporary and proper compensation could have been agreed upon.**

292.  Additionally, in the case of the PDVSA Pension Fund, the government

fraudulently concealed the injuries and offered the workers ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

293.  While the abusive actions were performed, Venezuela repeatedly,

including through its former President Hugo Chávez, Ministers and Vice

Ministers Rafael Ramirez, Nervis Villalobos, Jose Alejandro Rojas,

maintained that it would refuse to pay any compensation to the workers,

firms or others. To that end, Venezuela devised a fraudulent scheme to

transfer $2.8 billion out of the United States. It did so through a complex

series of debt offerings and dividend transfers involving Petróleos De

Venezuela S.A. and its wholly-owned Delaware subsidiaries, Citgo Holding,

Inc. ("Citgo Holding") and defendant PDV Holding, Inc. ("PDV Holding").

Venezuela's purpose was clear: to move its assets out of the United States to

prevent judgment creditors such as workers or private firms from executing

upon them. See 879 F.3d 79 United States Court of Appeals, Third Circuit.

CRYSTALLEX INTERNATIONAL CORP.v.PETRÓLEOS DE

VENEZUELA, S.A.; PDV Holding, Inc.; and CITGO Holding, Inc., f/k/a

PDV America, Inc. PDV Holding Inc., Appellant Nos. 16-4012 & 17-1439

Argued September 12, 2017 (Opinion filed: January 3, 2018)

## **DAMAGES**

 The Plaintiffs hereby adopt, restate, and relate each and every paragraph above as if fully set forth herein.  Defendants actions and omissions, as set forth above, proximately caused injuries to the Plaintiffs which resulted in the following damages for which the Plaintiffs are entitled to reasonable and proper compensation:

Recovery of damages for the lost, stolen and seized property.

Recovery of damages for the mental suffering of Plaintiffs.

Recovery of damages for the loss of retirement benefits that Plaintiffs would have earned but for the wrongful termination of contracts.

Recovery of damages for the loss of any benefits under plans governed by the Employee Retirement plans or funds, or otherwise.

Recovery of damages for defamation and injury to the reputation of Plaintiffs.

a) past and future medical expenses;

b) past and future physical pain and mental anguish;

c) past and future physical impairment;

e) past lost wages and future lost wage-earning capacity;

h) past and future pecuniary loss; and

i) attorneys' fees .

Plaintiffs seek to recover pre-judgment and post-judgment interest at the statutory rate or at such other rate as is set by this Court.

Plaintiffs seek all damages they are entitled to under the law, whether pled or not. This includes exemplary and punitive damages whereby exemplary damages caps do not apply according to Delaware Civil Code .

Plaintiffs ask for damages to be awarded to the under the common law and other statutes of the State of Delaware, such damages to be treble the amount of the actual damages proved.

## JURY TRIAL DEMAND

Pursuant to the provisions of FRCP Rule 38. Right to a Jury Trial and of Delaware Rules Civil Procedure Super. Ct. 38 and 39, Plaintiffs formally make this demand and application for a jury trial in this lawsuit. Plaintiffs hereby demand trial by jury for all causes of action, claims or issues in this action which are triable as a matter of right to a jury.

## PRAYER FOR RELIEF

For the foregoing reasons, the Plaintiffs respectfully request that the Court:

That the Court determine that Plaintiffs have right to bring this action for the claims alleged by the and that judgment be entered in favor of Plaintiffs and against Defendant;

That Defendant, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein; or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

That the Court adjudge and decree that Defendant's contract, conspiracy, or combination constitutes an illegal restraint of worker rights.

That the Court adjudge and decree that Defendant's contract, conspiracy, or combination constitutes a violation of most basic human rights.

Enjoin Defendants from continuing to violate the Plaintiff's rights.

That Plaintiffs be awarded their damages, in an amount according to injury;

That Plaintiffs be awarded restitution, including disgorgement of profits obtained by Defendant as a result of their acts of unjust enrichment, or any acts in violation of laws of fiduciary duties;

That Plaintiffs damages be declared as preferential in all collection proceedings, including attachments, bankruptcy and similar.

That Plaintiffs be awarded proper interest for damages after the date determined by the court; that damages be trebbled as permitted by law.

That Plaintiffs recover their costs of suit and reasonable attorney's fees; and

That the Court grant other legal and equitable relief as it may deem just and proper under the circumstances, including such other relief as the Court may deem just and proper to redress, and prevent recurrence of, the alleged violation to dissipate the effects of Defendant's violations.

Order Defendants to pay damages to Plaintiffs in an amount to be determined during the process; and grant such other relief as the Court may deem just and equitable.

Respectfully submitted,





Plaintiffs,

## PROPOSED ORDER -

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE



FILED

MAR  8 2024

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Plaintiffs

V.

| | |
|---|---|
| **Petróleos de Venezuela, S.A.** <br><br> **(PDVSA)**; Defendant <br><br> **PDV Holding;** Defendant <br><br> **PDV America;** Defendant <br><br> **CITGO Holding;** Defendant | **COMPLAINT FOR VIOLATION OF LABOR RIGHTS, HUMAN RIGHTS, BREACH OF CONTRACT AND OTHER CAUSES.** |

| CITGO Petroleum Corporation; Defendant Junta Administradora Ad-Hoc de PDVSA; Defendant | Civil Action No: 1:23-CV-00989-MN |
| --- | --- |
| Defendants, | |

### PROPOSED ORDER

ORDER

Upon initial revision of complaint, taken into account the facts and circumstances presented by Plaintiffs, this Court rules,

1. The Plaintiffs have a right to bring this action;

2. The complaint is NOT DISMISSED and service of process shall be issued.

3. Court orders case to remain sealed including name of initial claimants who have acted as *pro se* filers and in the case of any additional filing by such Plaintiffs in the case, that their names remain sealed as filers as well.

4. Court orders that name of all and any additional claimant on the matter of human rights violation in the case be sealed *in chambers* (court only)

5. That Plaintiffs damages and awards might be declared as preferential in all collection proceedings, including attachments, bankruptcy and similar.

6. Interim Injunction, the Court adjudges and decrees that Defendant's contract, conspiracy, or combination constitutes an illegal restraint of worker rights.

7. Interim Injunction, Court enjoins Defendants from continuing to violate the Plaintiffs' rights so that Defendant, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein; or from entering into any other conspiracy alleged herein, or from entering into ·any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

8.  Court grants *Plaintiffs* to seek discovery from the Defendants and counsel,

9. Court orders summons to be issued.

10. Court notifies the corresponding Judge in the District Court of Delaware, where the case Crystallex v. Venezuela (1:17-MC-00157) is currently under litigation, that this case has been entered by Plaintiffs, that a large number of additional Plaintiffs has been identified and have provided sworn testimony of their intention to join the action, and therefore will address the Hon. Judge

presiding on the case of Crystallex v. Venezuela about the prima facie considerations of the case initiated in this court as follows,

01. Credible Legal Arguments: The Plaintiffs have articulated legal arguments that, at first glance, appear to be well-founded in the applicable statutes, regulations, and case law. Plaintiffs have presented convincing interpretations of the law that deserve careful consideration.

02. Substantial Evidence: The Plaintiffs have presented a substantial body of evidence, including witness testimony and documentary exhibits, which suggests a strong prima facie case. The evidence appears to be consistent with their legal arguments and raises valid concerns that merit further examination.

03. Public Interest: The subject matter of this case is of significant public interest and has the potential to impact a broad segment of our society and The Americas. As such, a thorough and impartial review of the case is essential to ensure that the principles of justice are upheld.

04. Equity and Fairness: Preliminarily, it appears that the Plaintiffs may suffer substantial harm if their claims are not adequately addressed. It is incumbent upon our judicial system to ensure fairness and equity in all proceedings, and I believe this case highlights the need for such principles.

05. In light of the above, I respectfully request that your honorable court take into account the preliminary assessment of the case should the Plaintiffs obtain a favorable judgment.

11. Court orders a 180 days stay on all sales, liquidations, court ordered liquidations, assignments or similar disposition, of assets, shares, bonds, dividends by or of Petróleos de Venezuela, S.A. (PDVSA); PDV Holding; PDV America; CITGO Holding; CITGO Petroleum Corporation; Junta Administradora Ad-Hoc de PDVSA; in order to settle the controversy pertaining to the Plaintiffs and other in a similar situation as preferred creditors.

12. Court orders   Petróleos de Venezuela, S.A. (PDVSA); PDV Holding; PDV America; CITGO Holding; CITGO Petroleum Corporation;  to refrain from

issuing any type of debt  without the permission of this Court,  in order to prevent any substantial change in its equity, unreasonable issuance of debt or any other event which might damage the Plaintiffs.

13. Court orders Defendants and Plaintiff to arrange for a mediation meeting under the rules of this court, no later than the 10th of February 2024**; all expenses involved in attendance and preparation of mediation in charge to Defendant Junta Administradora de PDVSA ad hoc**.

UNITED STATES DISTRICT JUDGE

**Attachment I**

**List, identification and standing of Plaintiffs.**







[3] Exhibit I: See 2004 information and photographs on the installation of the CLIPP at:
http://urru.org/_eventos/octubre_2004/20041017_1.htm
http://urru.org/fotos/0_2004/20041017_CLIPP1.htm



---

[4] See complete Hearing at https://www.youtube.com/watch?v=PG5eKkSIFLY

[5] Exhibit III: Cover of UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA Miami Division PDVSA U.S. LITIGATION TRUST, Plaintiff, v. LUKOIL PAN AMERICAS LLC;et Al., Defendants. Case No. 1:18-CV-20818 (DPG)

[6] Exhibit IV: On Jorge Alejandro Rodriguez as a Public known person see the Google search for "Jorge Alejandro Rodriguez" CITGO:

https://www.google.com/search?safe=active&sxsrf=ALeKk00Q9mWTVT2XUKyCKb9sjhWlhzb5dw%3A1592945161235&ei=CWryXt_yDZiT8gKfh4XiAw&q=%22jorge+alejandro+rodriguez%22+citgo+pdvsa&oq=%22jorge+alejandro+rodriguez%22+citgo+pdvsa&gs_lcp=CgZwc3ktYWIQAzoCCAA6BggAEBYQHjoFCCEQoAE6BAghEBU6BwghEAoQoAFQtwdYyShgli1oAHAAeACAAXylAaMKkgEDNy42mAEAoAEBqgEHZ3dzLXdpc&sclient=psy-ab&ved=0ahUKEwifm-2T55jqAhWYiVwKHZ9DATkQ4dUDCAw&uact=5



















FILED

MAR 8 2024

MAB

U.S. DISTRICT COURT
DISTRICT OF DELAWARE


**Attachment II**

**Statements and evidence on terrorist activities of the Venezuelan Government including persecution of union leaders, civic leaders, etc.**

294.  In February 2003, The Economist and Agence France Presse (AFP) reported that the Venezuelan President, Hugo Chávez, had refused to rehire the strikers who had been laid off (The Economist 8 Feb. 2003; AFP 9 Feb. 2003). Chávez was also reported to have had every intention of taking the strikers to court (ibid.). BBC Mundo noted that Chávez believed that a large number of the fired workers [translation] "should go to jail" (10 Feb. 2003). That same month, several PDVSA employees asked the National Assembly to block a motion to dismiss 9,000 more strikers who were accused of [translation] "acts of sabotage," according to BBC Mundo (10 Feb. 2003). Energy and mines minister Rafael Ramirez said "the government will not countenance an amnesty for strikers (though it will consider the reinstatement of people who were ill, or on leave, at the time of the strike)" (Latin American Weekly Report 11 Feb. 2003).

295.  On 27 February 2003, AFP reported that a court had ordered the arrest of six former PDVSA executives because they had organized the December 2002 strike. Among the six managers were Juan Fernández, Horacio Medina and Edgar Quijano (AFP 27 Feb. 2003). According to their lawyer, the arrest was made [translation] "on political rather than legal grounds" (ibid.). Latin

American Regional Reports noted that an arrest warrant was issued against

seven former PDVSA managers, who "were accused of sabotage and

damage to property" (4 Mar. 2003). Latin American Weekly Report

indicated that a Caracas appeals court dismissed the arrest warrants on 18

March 2003 because of "violations of due process, the norms of competence,

the rights of the accused, the right to defense and the absence of

jurisdictional control" (25 Mar. 2003).

296.   On 13 March 2003, approximately 50 discharged employees held a

demonstration in front of the Embassy of France in Caracas to express their

dissatisfaction with French companies working with PDVSA (AFP 13 Mar.

2003).

297.   In May 2003, El Universal reported the creation of the Funds for

Resistance (Fondo de Resistencia), an organization formed by some 18,000

fired PDVSA workers that apparently offers employment projects in the oil

industry, as well as financial aid to families who have been the most

seriously affected by the lay-offs, because some have had trouble paying for

basic medial care (30 May 2003). The association was to offer its

management expertise in the oil industry to about 45 companies (El

Universal 30 May 2003). With this initiative, 3,424 former employees were

to benefit from medical insurance with a private company at an affordable

price; furthermore, 21,000 kilograms of food was distributed to the most needy families (ibid.). El Universal indicated that the association is entirely funded by donations and the income earned by members of the Funds for Resistance (ibid.). Members number approximately 5,000 and must contribute 24,000 bolívares per month (ibid.), or about CAN$17 (Bank of Canada 21 May 2004).

298.  El Universal reported that five employees who were laid off by PDVSA have died as a result of their difficult financial situation; four committed suicide, and the fifth was killed by members of organized crime while working as a taxi driver to make ends meet (30 May 2003). Most of the employees dismissed were executives (Latin American Weekly Report 11 Feb. 2003).

299.  According to an EFE News Service article, former PDVSA employees and pro-government demonstrators clashed in July 2003 in the State of Zulia, in western Venezuela (EFE 11 July 2003). PDVSA asked the courts to forcibly evict strikers from the company's housing complex (AP 22 July 2003). A spokesperson for Petroleum People (Gente del Petróleo), Edgar Paredes, said that armed men "were trying to violently evict the former oil workers from company-owned housing" (EFE 11 July 2003). A pro-Chávez demonstrator said that "since the former workers had been fired from the

company, they should vacate the firm's housing units" (ibid.). According to Paredes and Froilan Barrios, a representative of the CTV, the largest union in Venezuela, "the national guard had 'illegally' arrested between 14 and 17 people" in the commotion (ibid.). The Associated Press (AP) reported that in several housing complexes, such as Tia Juana, Cardon and Amuay, fired employees were fighting not only "eviction from their homes at the hands of the National Guard and Chávez activists," but also the possibility that their children will be "yanked out of company schools" (22 July 2003). AP indicated that during a demonstration in Tia Juana, Chávez supporters "shouted epithets and waved rocks" at fired workers (AP 22 July 2003).

300.   The AP also mentioned that Unapetrol, a union founded by strikers, had petitioned the courts to reinstate fired workers who had not received any severance pay and had had their pensions and savings accounts frozen (ibid.). Furthermore, the publishing of strikers' names has made it very difficult for them to secure other employment (ibid.).

301.   On 20 July 2003, the Weekly News Update on the Americas reported the death of a striker who had been fired from PDVSA; he was shot dead by a National Guard soldier during a demonstration in the State of Anzoategui, in which protesters demanded the rehiring of some 18,000 fired PDVSA workers.

302.   In accordance with the Labour Act, PDVSA President, Alí Rodríguez Araque, announced on 11 August 2003 that fired workers would not lose any of their benefits (El Universal 11 Aug. 2003). However, Araque also said that former employees were to vacate housing properties belonging to PDVSA (ibid.). A few days later, on 14 August 2003, El Universal reported that benefits for the fired workers would be canceled.

303.   According to Weekly News Update on the Americas, "[s]ome 400 National Guard soldiers and 50 state police agents used tear gas and rubber bullets . . . as they evicted fired oil workers and their families from houses belonging to Venezuela's national oil monopoly, Petróleos de Venezuela SA (PDVSA)," in Punto Fijo, State of Falcon (28 Sept. 2003). The Venezuelan Program of Action and Education in Human Rights (Programa Venezolano de Educación y Acción en Derechos Humanos, PROVEA), a non-governmental organization (NGO), "called for an end to violent evictions" (Weekly News Update on the Americas 28 Sept. 2003). In November 2003, El Universal published an article on the PDVSA's decision to postpone evicting former employees until the following year (26 Nov. 2003). According to this newspaper, several fired workers believe that they have the right to continue living in PDVSA houses because litigation cases against the oil company are still pending (El Universal 26 Nov. 2003).

304. On 15 May 2004, a representative of PROVEA provided the following information in correspondence sent to the Research Directorate:

305. Some fired PDVSA workers, particularly those who made public statements or held senior public service positions, face [translation] "real difficulties" in finding employment in the public sector because of the [translation] "unofficial veto" against hiring them in the public service. The representative did note, however, that the situation is less difficult for other fired workers, but, according to him, the situation in Venezuela is such that anyone who signs a statement against a member of the political opposition will find it difficult to secure employment in the private sector, and anyone who signs a statement against the Venezuelan president will find it difficult to secure employment in the public service. Much depends on whether a person has signed the petition to impeach President Chávez.

306. The PROVEA representative indicated that some private companies involved in the oil industry have been instructed not to hire fired PDVSA workers. However, he had heard of cases of employees being hired in the private sector, in the electrical power sector in Caracas, for example.

307. The PROVEA representative concluded by stating that a handful of fired PDVSA workers were victims of acts of [translation] "repression or violent

evictions from houses belonging to PDVSA," and he noted that strikers were not targeted by ill-treatment, except in [translation] "very isolated" cases.

308. Some additional statements from the Venezuelan Government and PDVSA include,

309. Hugo Chávez, President of Venezuela (2002-2013)  "We will not allow a coup d'état, and if they try it, we will drown it in blood." - Speech on December 12, 2002, after a failed coup attempt against him.

310. "I will not allow a group of fascists to take over PDVSA. If they try, I will personally fire them myself." - Speech on April 12, 2003, after a strike by PDVSA workers.

311. "The opposition is a bunch of fascists who want to destroy Venezuela. They will not succeed." - Speech on October 27, 2012, after the opposition won control of the National Assembly.

312. Rafael Ramírez, President of PDVSA (2004-2014)

313. "We will not tolerate any sabotage of PDVSA by the opposition. If they try it, we will crush them." - Speech on January 27, 2004, after a series of fires at PDVSA facilities.

314. "The opposition is a threat to the security of Venezuela. They must be stopped." - Speech on May 2, 2006, after the opposition held a protest against the government.

315. "We will not allow the opposition to take over PDVSA. We will defend the company with our lives." - Speech on December 1, 2012, after the opposition won control of the National Assembly.

316. Nicolás Maduro, President of Venezuela (2013-present)

317. "The opposition is a terrorist group that wants to destroy Venezuela. They will not succeed." - Speech on February 12, 2014, after a wave of protests against the government.

318. "The opposition is a bunch of coup plotters who want to overthrow the government. We will not allow it." - Speech on July 27, 2017, after the opposition held a referendum on Maduro's removal from office.

319. "The opposition is a threat to the security of Venezuela. They must be stopped." - Speech on January 23, 2019, after the opposition leader Juan Guaidó declared himself interim president.

JOINT HEARING    before the    SUBCOMMITTEE ON NATIONAL SECURITY,HOMELAND DEFENSE AND FOREIGN OPERATIONS of the COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM and theSUBCOMMITTEE ON THE WESTERN HEMISPHERE and the SUBCOMMITTEE ON THE MIDDLE EAST AND SOUTH ASIA of the COMMITTEE ON FOREIGN AFFAIRSHOUSE OF REPRESENTATIVES JUNE 24, 2011

https://www.govinfo.gov/content/pkg/CHRG-112hhrg71297/html/CHRG-11

2hhrg71297.htm

Among other public sources,

A Decade Under Chavez: Political Intolerance and Lost Opportunities for Advancing Human Rights in Venezuela: https://www.hrw.org/reports/2008/venezuela0908/2.htm: This report by Human Rights Watch documents the political intolerance and human rights abuses that occurred in Venezuela under the presidency of Hugo Chávez. The report includes a section on the dismissal of thousands of PDVSA workers for their political beliefs.
Phone calls, dismissal threats:

Venezuela pressures state workers to vote:
https://www.reuters.com/article/us-venezuela-politics-workers-idUSKBN1AE08P: This article by Reuters reports on the allegations that the Venezuelan government was pressuring state workers to vote in favor of the Constituent Assembly in 2017. The article includes a quote from a PDVSA vice president who allegedly threatened to fire workers who did not vote.
Venezuela:

Current situation of employees of the state oil company Petróleos de Venezuela (PDVSA) who were discharged following their participation in strikes during December 2002 and April 2003; work reintegration; access to the public service and the private sector; whether private companies are instructed not to hire workers fired by PDVSA; remedies undertaken by: https://www.refworld.org/docid/41501c7215.html: This report by the UN Refugee Agency (UNHCR) provides information on the situation of PDVSA workers who were dismissed for their participation in strikes in 2002 and 2003.
The United Nations High Commissioner for Refugees informed with respect to the attacks against El Nacional:

Case 1:28-cv-266989-BLH Document 1-35 Entered 03/08/24 Docket 14026/2025 Page #51d6225



New York, August 31, 2016 – Authorities should investigate incidents of vandalism of Venezuelan

newspaper offices and do everything in their power to ensure that journalists can work without fear

of reprisal, the Committee to Protect Journalists said today.



The damaged offices of El Nacional. Homemade explosives and excrement were thrown at the paper's Caracas offices this week. (El Nacional)

At around 2 a.m. yesterday, excrement and homemade explosives were thrown at the Caracas offices of the Venezuelan daily *El Nacional*. The attack comes less than a week after a separate incident in which unidentified assailants shot at the façade of *Diario de los Andes*, based in Valera, in the northwestern state of Trujillo.

In another incident in June, bags of animal excrement were thrown at the offices of *Correo del Caroní*, a daily newspaper in the eastern city of Puerto Ordaz. Security footage showed five men vandalizing the offices, according to local media reports.

Police are investigating the attack against *Diario de los Andes*, the paper's information director, Eylin Barrios, told CPJ. Miguel Otero, editor of *El Nacional*, also told CPJ that police were investigating the attacks against his paper. When CPJ called the Caracas police and the Public Ministry for comment, the calls went unanswered.

"The attacks against newspaper offices around the country is emblematic of the worsening environment for the press in Venezuela," said Carlos Lauría, CPJ's senior program coordinator for the Americas. "Venezuelan authorities must thoroughly investigate these attacks, bring all those responsible to justice, and ensure that journalists can do their work without fear of violence."

Citing witnesses, *El Nacional* reported that a group of men arrived at the offices in a white truck and threw homemade explosives and excrement at the premises. According to the report, the men shouted that the paper had betrayed Venezuela. In a similar attack in June *El Nacional's* offices were vandalized with spray paint and excrement, according to a report in the online news website *RunRun*.

In a separate incident, a security guard and another witness saw two men open fire on the offices of the daily *Diario de los Andes* on August 24, according to Barrios, the information director and a journalist at the newspaper. Barrios told CPJ that the newspaper's offices suffered significant damage, including broken windows and around 30 bullet holes. The newspaper was targeted on the day that it celebrated its 30th anniversary. Barrios told CPJ that she did not know the motive for the attack.

Both *El Nacional* and *Correo del Caroní* have faced harassment and legal persecution from authorities over their critical coverage, CPJ research shows.

Tensions are high in the country, which is in the midst of an economic crisis and political conflict over a proposed recall election to remove President Nicolás Maduro. Opposition leaders have scheduled a protest on September 1 to call on the National Electoral Council to schedule a recall referendum against the president.

The men who attacked *El Nacional* left a pamphlet titled "The march of 1S is the beginning of the end," referring to the September 1 march. According to *El Nacional*, the pamphlet was addressed to the editor of the newspaper. A translation of it read: "Miguel Henrique Otero: you openly expose your conspiratorial position against the people and the Bolivarian Revolution. Let it be clear to you that we are a free people, sovereign and patriotic. We will not allow unpatriotic people like you to govern again. Today we tell you that they will not return."

The pamphlet was signed "Chama Pueblo en Rebelión" (Chama-the people in rebellion), a pro-government group. The same phrase was spray painted on the front of *El Nacional*'s offices in the attack in June, the paper reported.

In a report published on *El Nacional*'s website yesterday, Otero said, "They have attacked the façade of *El Nacional* with excrement again. It seems like this is the only thing left in their brains and

it shows their lack of argument. They accuse us of all kinds of things, but they don't respond with ideas and disputes from their media. They simply appeal to insults, threats, and physical attacks."

CPJ research shows that under President Maduro, press freedom has deteriorated and independent journalists are restricted in their reporting. Journalists covering protests in Venezuela have faced violence and detentions in recent years.

Copyright notice: © Committee to Protect Journalists. All rights reserved. Articles

## Attachment III



















# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IVAN R. FREITES C., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-989 (JLH) |
| | ) | |
| THE BOLIVARIAN REPUBLIC OF | ) | |
| VENEZUELA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

At Wilmington, this 9th day of February 2024, having considered Plaintiffs' motion to seal (D.I. 16), Plaintiffs' motion to file a second amended complaint (D.I. 18), the CITGO Defendants' motion for an extension of time to respond to the amended complaint (D.I. 27), Plaintiffs' motion for leave to file a third amended complaint (D.I. 31), and the CITGO Defendants' January 30, 2024 letter to the Court (D.I. 34);

IT IS HEREBY ORDERED that:

1.      Plaintiffs' motion for leave to file a third amended complaint (D.I. 27) is **GRANTED**.

2.      The CITGO Defendants' motion for an extension of time to respond to the amended complaint (D.I. 27) and Plaintiffs' motion for leave to file a second amended complaint (D.I. 18) are **DENIED** as moot.

3.      Plaintiffs' motion to seal (D.I. 16), which, read in conjunction with Plaintiffs' motion for leave to file a third amended complaint (D.I. 31), requests that all but two of the

Plaintiffs (including those Plaintiffs added in the proposed third amended complaint) be referred

to by pseudonyms is **GRANTED**.[1]

_____

[1] Although, as a general rule, "[a] plaintiff's use of a pseudonym runs afoul of the public's common law right of access to judicial proceedings," the Third Circuit has noted that in "exceptional cases" plaintiffs may be permitted to do so where they "show both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." _Doe v. Megless_, 654 F.3d 404, 408 (3d Cir. 2011) (citations and internal quotation marks omitted). When considering permitting plaintiffs to so proceed, the Third Circuit has instructed courts to consider a non-exhaustive list of factors. Factors favoring anonymity include:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

_Id._ at 409 (quoting _Doe v. Provident Life and Acc. Ins. Co._, 176 F.R.D. 464, 467 (E.D. Pa. 1997)).

> Factors disfavoring anonymity include:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

_Id._ (quoting _Provident Life_, 176 F.R.D. at 467).

After considering the relevant factors in the context of the allegations in the proposed third amended complaint pertaining to Plaintiffs' fear of death, kidnapping, and imprisonment for themselves and their family members, the Court concludes that the factors weigh in favor of anonymity. In short, the Court concludes that Plaintiffs have demonstrated a reasonable fear of severe harm. _See Megless_, 654 F.3d at 408. Notably, the CITGO Defendants do not oppose anonymity. (D.I. 34 at 2.) This fact is not dispositive to the analysis, but it was considered by the Court in evaluating the factors disfavoring anonymity.

4. The CITGO Defendants' request that the case caption be changed so that a publicly identified Plaintiff is the first name listed (D.I. 34 at 2 n.2) is **GRANTED**. The Clerk of Court is directed to change the caption of the case to *Freites C., et al. v. The Bolivarian Republic of Venezuela, et al.*

5. On the docket, the Clerk of Court is directed to list Plaintiff Ivan R. Freites C. first, followed by Miguel Enrique Otero. The other five Plaintiffs shall be listed as Plaintiff 3, Plaintiff 4, Plaintiff 5, Plaintiff 6, and Plaintiff 7, respectively.[2] The parties shall refer to Plaintiffs with these pseudonyms in filings going forward.

6. Plaintiffs shall file a version of the proposed third amended complaint that incorporates the above-listed pseudonyms and effectuate service on Defendants of the same. The properly revised Third Amended Complaint shall be filed on or before **March 11, 2024**.

7. The Clerk of Court is directed to unseal this case, but to leave all filings up to and including D.I. 31 under seal. This Order shall not be placed under seal.

8. The Court will revisit the CITGO Defendants' request for a process for electronic service of case filings going forward, should it prove necessary. Electronic filing rights necessarily require registration through PACER, which results in the filer's name appearing on the docket. To date, the only Plaintiff that has requested and been granted electronic filing rights also wishes to proceed under a pseudonym, and for this reason has apparently declined to exercise his electronic filing rights.

The Honorable Jennifer L. Hall
United States District Judge

---

[2] The Plaintiff currently listed first in the proposed third amended complaint (D.I. 31-1 at 2) shall be "Plaintiff 3," the Plaintiff currently listed third shall be "Plaintiff 4," the Plaintiff currently listed fourth shall be "Plaintiff 5," the Plaintiff currently listed sixth shall be "Plaintiff 6," and the Plaintiff currently listed seventh shall be "Plaintiff 7."

3

PRO-SE1

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:23-cv-00989-JLH

Freites C., et al. v. Petroleos De Venezuela, S.A., et al.
Assigned to: Judge Jennifer L. Hall
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 09/07/2023
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Ivan R. Freites C.**                                    represented by   **Ivan R. Freites C.**
                                                                          Eichholzstrasse 2
                                                                          Steinhausen 6312
                                                                          CH
                                                                          PRO SE

**Plaintiff**

**Miguel Enrique Otero**                                 represented by   **Miguel Enrique Otero**
                                                                          Eichholzstrasse 2
                                                                          Steinhausen 6312
                                                                          CH
                                                                          PRO SE

**Plaintiff**

**Jorge Rodriguez, III**                                 represented by   **Jorge Rodriguez, III**
                                                                          Eichholzstrasse 2
                                                                          2
                                                                          Steinhausen
                                                                          Switzerland
                                                                          011792720069
                                                                          Email: jorge.r@intramaq.com
                                                                          PRO SE

**Plaintiff**

**Plaintiff 4**                                          represented by   **Plaintiff 4**
                                                                          Eichholzstrasse 2
                                                                          Steinhausen 6312
                                                                          CH
                                                                          PRO SE

**Plaintiff**

**Plaintiff 5**                                          represented by   **Plaintiff 5**
                                                                          Eichholzstrasse 2
                                                                          Steinhausen 6312
                                                                          CH
                                                                          PRO SE

**Plaintiff**

**Plaintiff 6**                                    represented by   **Plaintiff 6**
                                                                    Eichholzstrasse 2
                                                                    Steinhausen 6312
                                                                    CH
                                                                    PRO SE

**Plaintiff**

**Plaintiff 7**                                    represented by   **Plaintiff 7**
                                                                    Eichholzstrasse 2
                                                                    Steinhausen 6312
                                                                    CH
                                                                    PRO SE


V.

**Defendant**

**Bolivarian Republic of Venezuela**
*TERMINATED: 09/09/2024*

**Defendant**

**Petroleos De Venezuela, S.A.**
*PDVSA*
*TERMINATED: 03/25/2025*

**Defendant**

**PDV Holding**                                    represented by   **Alexandra M. Cumings**
*TERMINATED: 03/25/2025*                                            Morris, Nichols, Arsht & Tunnell LLP
                                                                    1201 North Market Street
                                                                    P.O. Box 1347
                                                                    Wilmington, DE 19899
                                                                    (317) 409-9066
                                                                    Email: acumings@mnat.com
                                                                    *TERMINATED: 03/25/2025*
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Kenneth J. Nachbar**
                                                                    Morris, Nichols, Arsht & Tunnell LLP
                                                                    1201 North Market Street
                                                                    P.O. Box 1347
                                                                    Wilmington, DE 19899
                                                                    (302) 351-9294
                                                                    Fax: (302) 425-3013
                                                                    Email: knachbar@mnat.com
                                                                    *TERMINATED: 01/02/2025*
                                                                    *LEAD ATTORNEY*

                                                                    **Susan W. Waesco**
                                                                    Morris, Nichols, Arsht & Tunnell LLP
                                                                    1201 North Market Street
                                                                    P.O. Box 1347
                                                                    Wilmington, DE 19899

(302) 351-9677
Fax: (302) 425-3088
Email: swaesco@mnat.com
*TERMINATED: 03/25/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel D. Birk**
Email: DBirk@eimerstahl.com
*TERMINATED: 03/25/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan P. Eimer**
Email: neimer@eimerstahl.com
*TERMINATED: 03/25/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**PDV America**                          represented by   **Alexandra M. Cumings**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth J. Nachbar**
(See above for address)
*TERMINATED: 01/02/2025*
*LEAD ATTORNEY*

**Kirk Andersen**
Morris Nichols Arsht & Tunnell LLP
Corporation Litigation
1201 N Market Street
PO BOx 1347
Wilmington, DE 19899
302‑351‑9102
Email: kandersen@morrisnichols.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susan W. Waesco**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel D. Birk**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan P. Eimer**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**CITGO Holding**                                 represented by   **Alexandra M. Cumings**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth J. Nachbar**
(See above for address)
*TERMINATED: 01/02/2025*
*LEAD ATTORNEY*

**Kirk Andersen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susan W. Waesco**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel D. Birk**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan P. Eimer**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Citgo Petroleum Corporation**                  represented by   **Alexandra M. Cumings**
*TERMINATED: 03/28/2025*                          (See above for address)
*TERMINATED: 03/28/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth J. Nachbar**
(See above for address)
*TERMINATED: 01/02/2025*
*LEAD ATTORNEY*

**Kirk Andersen**
(See above for address)
*TERMINATED: 03/28/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susan W. Waesco**
(See above for address)

*TERMINATED: 03/28/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel D. Birk**
(See above for address)
*TERMINATED: 03/28/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan P. Eimer**
(See above for address)
*TERMINATED: 03/28/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Junta Administradora Ad-Hoc de PDVSA**
*TERMINATED: 03/25/2025*

**Defendant**

**Francisco Illaramendi**
*also known as*
Pancho

**Defendant**

**Kentwood Management Group**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/07/2023 | 1 | [SEALED] MOTION to Seal Case and for Electronic Filing Rights - filed by Ivan R. Freites C., Plaintiff 5, Plaintiff 3, and Plaintiff 4. (Attachments: # 1 Text of Proposed Order, and # 2 Envelope) (mkr). (Entered: 09/07/2023) |
| 09/07/2023 | 2 | [SEALED] MOTION for Leave to Proceed in forma pauperis - filed by Plaintiff 3. (Attachments: # 1 Envelope) (mkr) (Entered: 09/07/2023) |
| 09/07/2023 | 3 | [SEALED] MOTION for Leave to Proceed in forma pauperis - filed by Ivan R. Freites C. (Attachments: # 1 Envelope) (mkr) (Entered: 09/07/2023) |
| 09/07/2023 | 4 | [SEALED] MOTION for Leave to Proceed in forma pauperis - filed by Plaintiff 5. (Attachments: # 1 Envelope) (mkr). Modified on 2/9/2024 (smg). (Entered: 09/07/2023) |
| 09/07/2023 | 5 | [SEALED] COMPLAINT for VIOLATION OF LABOR RIGHTS, HUMAN RIGHTS, BREACH OF CONTRACT, AND OTHER CAUSES filed Pro Se with Jury Demand against Bolivarian Republic of Venezuela, CITGO Holding, Citgo Petroleum Corporation, Francisco Illaramendi, Junta Administradora Ad-Hoc de PDVSA, Kentwood Management Group, PDV America, PDV Holding, and Petroleos de Venezuela, S.A. - filed by Plaintiff 4, Ivan R. Freites C., Plaintiff 5, and Plaintiff 3. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Envelope) (mkr) (Entered: 09/07/2023) |
| 09/07/2023 | 6 | [SEALED] Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (mkr) Modified on 2/9/2024 (smg). (Entered: 09/07/2023) |

| | | |
|---|---|---|
| 09/07/2023 | | Remark: U.S. Magistrate consent form and Privacy Notice has been mailed to all plaintiffs. (mkr) (Entered: 09/07/2023) |
| 09/13/2023 | | Case Assigned to Judge Maryellen Noreika. Please include the initials of the Judge (MN) after the case number on all documents filed. (rjb) (Entered: 09/13/2023) |
| 09/19/2023 | 7 | [SEALED] ORDER - IT IS HEREBY ORDERED that, within sixty (60) days from the date of this Order, each Plaintiff shall sign the Complaint and that Complaint shall be submitted to the Clerk's Office. Failure of any Plaintiff to timely sign the Complaint shall result in dismissal of said Plaintiff from the case without prejudice. IT IS FURTHER ORDERED that within sixty (60) days from the date of this Court, each Plaintiff shall submit a signed request to proceed in forma pauperis (Application to Proceed in District Court without Prepaying Fees or Costs, AO Form 239, attached hereto). Alternatively, Plaintiffs may pay in full the $402.00 filing fee. Assuming the $402.00 filing fee is not paid, failure of any individual Plaintiff to submit a signed request to proceed in forma pauperis will result in dismissal of said Plaintiff from the case without prejudice. IT IS STILL FURTHER ORDERED that Plaintiffs' motion to seal the case is DENIED without prejudice. Plaintiffs may re-file a signed copy of their motion for the Court's consideration. IT IS FINALLY ORDERED that Plaintiffs' request for electronic filing rights is DENIED without prejudice. Plaintiffs may re-file a signed motion and are advised that, per the CM/ECF Registration/Training section of the Court's website, in order to receive authorization to file electronically, a pro se party must indicate in their motion that they have independently reviewed all the materials and related topics on the Courts web site and that they have a PACER account. Signed by Judge Maryellen Noreika on 9/19/2023. ***Copy mailed to each Pro Se Plaintiff 9/19/2023***(dlw) (Entered: 09/19/2023) |
| 09/25/2023 | 8 | [SEALED] Return of Undeliverable Mail sent to Plaintiff 4 - RTS Reason: Unknown. (twk) Modified on 2/9/2024 (smg). (Entered: 09/25/2023) |
| 10/10/2023 | 9 | [SEALED] RESPONSE to Order at D.I. 7 Order - filed by Ivan R. Freites C., Plaintiff 5, Plaintiff 3, and Plaintiff 4. (Attachments: # 1 Envelope) (vfm) (Entered: 10/10/2023) |
| 10/10/2023 | 10 | [SEALED] AMENDED COMPLAINT filed Pro Se with Jury Demand against Bolivarian Republic of Venezuela, CITGO Holding, Citgo Petroleum Corporation, Francisco Illaramendi, Junta Administradora Ad-Hoc de PDVSA, Kentwood Management Group, PDV America, PDV Holding, Petroleos de Venezuela, S.A. - filed by Plaintiff 4, Ivan R. Freites C., Plaintiff 5, and Plaintiff 3. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Cover Letter) (vfm) Modified on 11/2/2023 (mpb). (Entered: 10/10/2023) |
| 10/10/2023 | 11 | [SEALED] MOTION for Leave to Proceed in forma pauperis - filed by Plaintiff 5. (Attachments: # 1 Cover Letter) (vfm) (Entered: 10/10/2023) |
| 10/10/2023 | 12 | [SEALED] MOTION for Leave to Proceed in forma pauperis - filed by Ivan R. Freites C.. (vfm) (Entered: 10/10/2023) |
| 10/10/2023 | 13 | [SEALED] MOTION for Leave to Proceed in forma pauperis - filed by Plaintiff 4. (vfm) (Entered: 10/10/2023) |
| 10/10/2023 | 14 | [SEALED] MOTION for Leave to Proceed in forma pauperis - filed by Plaintiff 3. (vfm) (Entered: 10/10/2023) |
| 10/10/2023 | 15 | [SEALED] MOTION for Electronic Filing Rights - filed by Plaintiff 3. (vfm) (Entered: 10/10/2023) |
| 10/10/2023 | 16 | [SEALED] MOTION to Seal Case - filed by Ivan R. Freites C., Plaintiff 5, Plaintiff 3, and Plaintiff 4. (Attachments: # 1 Cover Letter, # 2 Text of Proposed Order) (vfm) (Entered: 10/10/2023) |

| 10/10/2023 | | Remark: Courtesy copies of D.I. 9 , 10 , 11 , 12 , 13 , 14 , 15 and 16 have been placed in case jacket. (vfm) (Entered: 10/10/2023) |
|---|---|---|
| 10/12/2023 | 17 | [SEALED] Letter of Attached Judgement Statement and Related Issues. (Attachments: # 1 Exhibit A) (mkr) (Entered: 10/12/2023) |
| 10/12/2023 | | Remark: Courtesy Copies of D.I. 17 were received on October 12, 2023, and have been placed in the file (mkr) (Entered: 10/12/2023) |
| 11/02/2023 | 18 | [SEALED] MOTION to File Amended Complaint - filed by Ivan R. Freites C., Plaintiff 5, Plaintiff 3, and Plaintiff 4. (Summonses bearing the former Clerk of the Courts name directed to Defendants have been received and placed in case jacket) (Attachments: # 1 Proposed Amended Complaint, # 2 Envelope)(mpb) (Entered: 11/02/2023) |
| 11/06/2023 | 19 | [SEALED] ORDER DENYING 11 12 13 14 MOTIONS for Leave to Proceed in forma pauperis GRANTING 15 MOTION for Electronic Filing Rights filed by Plaintiff 3. Signed by Judge Maryellen Noreika on 11/6/2023. ***Copy mailed to each plaintiff 11/6/2023*** (dlw) (Entered: 11/06/2023) |
| 11/14/2023 | 20 | [SEALED] MOTION for Execution of E-Filing Privileges and Stay of Filing Fee Payment - filed by Plaintiff 3. (Attachments: # 1 Certificate of Compliance) (apk) (Entered: 11/15/2023) |
| 12/05/2023 | 21 | [SEALED] ORDER re 20 MOTION - IT IS HEREBY ORDERED that the motion is DENIED to the extent that it requests an exception to the established procedures for electronic filing rights and GRANTED to the extent that it requests a thirty-day extension to pay the filing fee. Signed by Judge Maryellen Noreika on 12/5/2023. ***Copy mailed to each Plaintiff 12/5/2023*** (dlw) (Entered: 12/05/2023) |
| 12/05/2023 | | Filing fee: $ 402.00, receipt number 1770 (jfm) (Entered: 12/05/2023) |
| 12/05/2023 | | Remark: Rule 4 with acknowledgement mailed to Plaintiffs: Plaintiff 3, Ivan R. Freites C., Plaintiff 4, & Plaintiff 5. (jfm) (Entered: 12/07/2023) |
| 12/07/2023 | 22 | [SEALED] NOTICE of Appearance by Kenneth J. Nachbar on behalf of CITGO Holding, Citgo Petroleum Corporation, PDV America, PDV Holding. ***Copy mailed to pro se plaintiffs*** (dlw) (Entered: 12/07/2023) |
| 12/07/2023 | 23 | [SEALED] NOTICE of Appearance by Susan W. Waesco on behalf of CITGO Holding, Citgo Petroleum Corporation, PDV America, PDV Holding. ***Copy mailed to pro se plaintiffs*** (dlw) (Entered: 12/07/2023) |
| 12/07/2023 | 24 | [SEALED] NOTICE of Appearance by Alexandra M. Cumings on behalf of CITGO Holding, Citgo Petroleum Corporation, PDV America, PDV Holding. ***Copy mailed to pro se plaintiffs*** (dlw) (Entered: 12/07/2023) |
| 12/07/2023 | 25 | [SEALED] MOTION for Pro Hac Vice Appearance of Attorney Daniel D. Birk - filed by CITGO Holding, Citgo Petroleum Corporation, PDV America, PDV Holding. ***Copy mailed to pro se plaintiffs*** (dlw) (Entered: 12/07/2023) |
| 12/07/2023 | 26 | [SEALED] MOTION for Pro Hac Vice Appearance of Attorney Nathan P. Eimer - filed by CITGO Holding, Citgo Petroleum Corporation, PDV America, PDV Holding. ***Copy mailed to pro se plaintiffs*** (dlw) (Entered: 12/07/2023) |
| 12/07/2023 | | SO ORDERED re 25 MOTION for Pro Hac Vice Appearance of Attorney Daniel D. Birk, 26 MOTION for Pro Hac Vice Appearance of Attorney Nathan P. Eimer filed by CITGO Holding, Citgo Petroleum Corporation, PDV America, PDV Holding. ORDERED by Judge Maryellen Noreika on 12/7/2023. ***Copy mailed to pro se plaintiffs*** (dlw) (Entered: 12/07/2023) |

| | | |
|---|---|---|
| 12/08/2023 | 27 | [SEALED] MOTION for Extension of Time to Answer or Otherwise Respond to the 10 First Amended Complaint - filed by CITGO Holding, Citgo Petroleum Corporation, PDV America, PDV Holding. (Attachments: # 1 Text of Proposed Order)(dlw) (Entered: 12/11/2023) |
| 12/08/2023 | 28 | [SEALED] Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent Petroleos de Venezuela, S.A., Corporate Parent PDV Holding, Inc. for CITGO Holding, Inc. f/k/a PDV America, Inc. filed by CITGO Holding, PDV America. (dlw) (Entered: 12/11/2023) |
| 12/08/2023 | 29 | [SEALED] Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent Petroleos de Venezuela, S.A., Corporate Parent PDV Holding, Inc., Corporate Parent CITGO Holding, Inc. for Citgo Petroleum Corporation filed by Citgo Petroleum Corporation. (dlw) Modified on 12/11/2023 (dlw). (Entered: 12/11/2023) |
| 12/08/2023 | 30 | [SEALED] Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent Petroleos de Venezuela, S.A. for PDV Holding filed by PDV Holding. (dlw) (Entered: 12/11/2023) |
| 12/11/2023 | | Remark - D.I. Nos. 27-30 mailed to all Pro Se Plaintiffs 12/11/2023 (dlw) (Entered: 12/11/2023) |
| 01/16/2024 | 31 | [SEALED] MOTION to File Second Amended Complaint and Response to D.I. 27 , Motion for Extension of Time - filed by Ivan R. Freites C., Plaintiff 5, Plaintiff 3, and Plaintiff 4. (Attachments: # 1 Proposed Second Amended Complaint, # 2 Envelope) (jfm) (Entered: 01/16/2024) |
| 01/23/2024 | | Case Reassigned to Judge Jennifer L. Hall. Please include the initials of the Judge (JLH) after the case number on all documents filed. (rjb) (Entered: 01/23/2024) |
| 01/26/2024 | 32 | [SEALED] Return of Undeliverable Mail D.I. 21 Order, sent to Plaintiff 4. Reason for return: Not deliverable as addressed and unable to forward. (mkr) (Entered: 01/29/2024) |
| 01/29/2024 | 33 | [SEALED] Return of Undeliverable Mail sent to Ivan R. Freites C. (D.I. 25 , 22 , 26 , 23 , & 24 ). (jfm) (Entered: 01/30/2024) |
| 01/30/2024 | 34 | Letter to The Honorable Jennifer L. Hall from Alexandra M. Cumings, Esq. regarding Motion to Seal. (Attachments: # 1 Exhibits 1-4, # 2 Text of Proposed Order, # 3 Certificate of Service)(ceg) (Entered: 01/30/2024) |
| 01/30/2024 | | Remark: D.I. No. 34 mailed to all Pro Se Plaintiffs 1/30/2024. (ceg) (Entered: 01/30/2024) |
| 02/01/2024 | 35 | [SEALED] Return of Undeliverable Mail sent to Plaintiff 5 (D.I. 22 , 23 , 25 , 26 ). (vfm) (Entered: 02/01/2024) |
| 02/05/2024 | 36 | [SEALED] Return of Undeliverable Mail sent to Plaintiff 4 (D.I. 22 , 23 , 25 , 26 ). (vfm) (Entered: 02/06/2024) |
| 02/09/2024 | 37 | MEMORANDUM ORDER: 1. Plaintiffs' motion for leave to file a third amended complaint (D.I. 27 ) is GRANTED. 2. The CITGO Defendants' motion for an extension of time to respond to the amended complaint (D.I. 27 ) and Plaintiffs' motion for leave to file a second amended complaint (D.I. 18 ) are DENIED as moot. 3. Plaintiffs' motion to seal (D.I. 16 ), which, read in conjunction with Plaintiffs' motion for leave to file a third amended complaint (D.I. 31 ), requests that all but two of the Plaintiffs (including those Plaintiffs added in the proposed third amended complaint) be referred to by pseudonyms is GRANTED. 4. The CITGO Defendants' request that the case caption be changed so that a publicly identified Plaintiff is the first name listed (D.I. 34 at 2 n.2) is GRANTED. The Clerk of Court is directed to change the caption of the case to Freites C., et al. v. The |

| | | |
|---|---|---|
| | | Bolivarian Republic of Venezuela, et al. 5. On the docket, the Clerk of Court is directed to list Plaintiff Ivan R. Freites C. first, followed by Miguel Enrique Otero. The other five Plaintiffs shall be listed as Plaintiff 3, Plaintiff 4, Plaintiff 5, Plaintiff 6, and Plaintiff 7, respectively. The parties shall refer to Plaintiffs with these pseudonyms in filings going forward. 6. Plaintiffs shall file a version of the proposed third amended complaint that incorporates the above-listed pseudonyms and effectuate service on Defendants of the same. The properly revised Third Amended Complaint shall be filed on or before March 11, 2024. 7. The Clerk of Court is directed to unseal this case, but to leave all filings up to and including D.I. 31 under seal. This Order shall not be placed under seal. (Please see Order for further details) Signed by Judge Jennifer L. Hall on 2/9/2024. (mkr) (Entered: 02/09/2024) |
| 02/09/2024 | | Case unsealed per D.I. 37 Signed by Judge Jennifer L. Hall on 2/9/2024. (mkr) (Entered: 02/09/2024) |
| 02/09/2024 | 38 | [SEALED] Return of Undeliverable Mail sent to Plaintiff 5 (D.I. 27 , 28 , 29 , 30 .) (mpb) (Entered: 02/12/2024) |
| 02/09/2024 | 39 | [SEALED] Return of Undeliverable Mail sent to Plaintiff 3 (D.I. 27 , 28 , 29 , 30 . (mpb) (Entered: 02/12/2024) |
| 02/12/2024 | | Address updated per: D.I. 20 MOTION. (mpb) (Entered: 02/12/2024) |
| 02/12/2024 | | Remark: D.I. 27 , 28 , 29 , and 30 re-mailed to Plaintiff 3 at address found on D.I. 20 . (mpb) (Entered: 02/12/2024) |
| 02/12/2024 | | Pro Hac Vice Attorneys Nathan P. Eimer and Daniel D. Birk for CITGO Holding, Citgo Petroleum Corporation, PDV America, and PDV Holding added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 02/12/2024) |
| 02/13/2024 | 40 | Return of Undeliverable Mail sent to Plaintiff 4 (D.I. 27 , 28 , 29 , 30 ). (mpb) (Entered: 02/13/2024) |
| 02/21/2024 | 41 | Return of Undeliverable Mail (D.I. 21 ) sent to Ivan R. Freites C. - Return to Sender. Vacant. Unable to Forward. (vfm) (Entered: 02/22/2024) |
| 02/28/2024 | 42 | [SEALED] Return of Undeliverable Mail sent to Plaintiff 5 (D.I. 34 ). (vfm) (Entered: 02/28/2024) |
| 02/28/2024 | 43 | [SEALED] Return of Undeliverable Mail sent to Ivan R. Freites C (D.I. 34 ). (vfm) (Entered: 02/28/2024) |
| 02/28/2024 | 44 | [SEALED] Return of Undeliverable Mail sent to Plaintiff 3 (D.I. 34 ). (vfm) (Entered: 02/28/2024) |
| 03/08/2024 | 45 | REDACTED VERSION of D.I. 31 MOTION to File Second Amended Complaint and Response to D.I. 27 Motion for Extension of Time - filed by Ivan R. Freites C., Plaintiff 3, Plaintiff 4, Plaintiff 5. (Attachments: # 1 REDACTED Proposed Second Amended Complaint, # 2 Cover Letter, # 3 Envelope)(mpb) (Entered: 03/11/2024) |
| 03/13/2024 | 46 | [SEALED] Return of Undeliverable Mail sent to Plaintiff 5 (D.I. 21 ). Not Deliverable as Addressed. (mpb) (Entered: 03/13/2024) |
| 03/13/2024 | 47 | [SEALED] Return of Undeliverable Mail sent to Plaintiff 5 (Blank Rule 4). Not Deliverable as Addressed. (mpb) (Entered: 03/13/2024) |
| 03/13/2024 | 48 | [SEALED] Return of Undeliverable Mail sent to Plaintiff 3 (Blank Acknowledgement of Receipt of Rule 4 and Rule 4). Not Deliverable as addressed. (mpb) (Entered: 03/13/2024) |

| 03/13/2024 | 49 | Return of Undeliverable Mail sent to Ivan R. Freites C. (Blank Acknowledgement of Receipt of Rule 4 and Rule 4). Not Deliverable as addressed. (mpb) (Entered: 03/13/2024) |
|---|---|---|
| 03/18/2024 | 50 | [SEALED] Return of Undeliverable Mail sent to Ivan R. Freites C. (D.I. 19 ). (mpb) (Entered: 03/19/2024) |
| 03/18/2024 | 51 | [SEALED] Return of Undeliverable Mail sent to Ivan R. Freites C. (D.I. 27 , 28 , 29 , 30 ). (mpb) (Entered: 03/19/2024) |
| 03/25/2024 | 52 | MOTION for Extension of Time to File Answer *or Otherwise Respond to the Proposed Second Amended Complaint on behalf of Defendants PDV Holdings, Inc., Citgo Holding, Inc. (f-k-a PDV America, Inc.) and Citgo Petroleum Corporation* - filed by CITGO Holding, Citgo Petroleum Corporation, PDV America, PDV Holding. (Attachments: # 1 Text of Proposed Order [Proposed] Order, # 2 Exhibit A)(Cumings, Alexandra) (Entered: 03/25/2024) |
| 04/17/2024 | 53 | ORDER: The CITGO Defendants' Motion is GRANTED. The deadline for the CITGO Defendants to respond to Plaintiffs' Proposed Second Amended Complaint is extended until 60 days after Petroleos de Venezuela, S.A. has been served under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, et. seq., and any sovereign-immunity-based objections have been resolved. Signed by Judge Jennifer L. Hall on 4/17/2024. (apk) (Entered: 04/17/2024) |
| 05/30/2024 | 54 | [SEALED] Emergency MOTION for Immediate Relief Due to Unauthorized Disclosure of Sealed Information - filed by Ivan R. Freites C., Miguel Enrique Otero, Plaintiff 3, Plaintiff 4, Plaintiff 5, Plaintiff 7. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Cover Letter, # 6 Text of Proposed Order)(apk) Modified on 5/31/2024 (ceg). (Entered: 05/31/2024) |
| 05/31/2024 | 55 | Letter to The Honorable Jennifer L. Hall from Alexandra M. Cumings regarding Request for Copy of Plaintiffs' Emergency Motion for Immediate Relief Due to Unauthorized Disclosure of Sealed Information - re 54 MOTION. (Cumings, Alexandra) (Entered: 05/31/2024) |
| 06/11/2024 | 56 | [SEALED] Letter to Judge Hall, from all of the Plaintiffs, regarding D.I. 54 Emergency Motion. (Attachments: # 1 Cover Letter)(apk) (Entered: 06/11/2024) |
| 06/11/2024 | | Remark: Plaintiff 3 has been changed to Jorge Rodriguez, III per the granting of his e-filing rights (D.I. 19 , 21 ) (mpb) (Entered: 06/11/2024) |
| 06/12/2024 | 57 | Letter to The Honorable Jennifer L. Hall from Alexandra M. Cumings regarding letter Plaintiffs filed under seal yesterday, June 11, 2024 (D.I. 56) - re 56 Letter, 54 MOTION, 55 Letter. (Andersen, Kirk) (Entered: 06/12/2024) |
| 06/14/2024 | 58 | SEALED ANSWERING BRIEF in Opposition *to (D.I. 57)* filed by Jorge Rodriguez, III.Reply Brief due date per Local Rules is 6/21/2024. (Rodriguez, Jorge) (Entered: 06/14/2024) |
| 06/14/2024 | 59 | Emergency MOTION to Seal Case *PRIVILEGES FOR SEALED E-FILING, TEMPORARY SEALING, AND CAPTION MODIFICATION* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 06/14/2024) |
| 06/14/2024 | 60 | MOTION for Leave to File *UNDER FRCP 60(b)(2) DUE TO FRAUD AGAINST PLAINTIFFS* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 06/14/2024) |
| 06/26/2024 | 61 | Emergency MOTION to Expedite *pending Motions* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 06/26/2024) |

| 06/27/2024 | 62 | NOTICE of Appearance by Kirk Andersen on behalf of CITGO Holding, Citgo Petroleum Corporation, PDV America (Andersen, Kirk) (Entered: 06/27/2024) |
|---|---|---|
| 06/27/2024 | 63 | RESPONSE to Motion re 54 MOTION *CITGO Defendants' Response to Plaintiffs' Emergency Motion for Immediate Relief and In Opposition to Motions to Seal and To Expedite* filed by CITGO Holding, Citgo Petroleum Corporation, PDV Holding. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Cumings, Alexandra) (Entered: 06/27/2024) |
| 06/28/2024 | 64 | ORDER, All communication from parties to the Court shall be made via motion or other submission filed on the Court docket. Should Plaintiffs wish the Court to consider their paper submissions, they must file them on the docket. All filings must be served on the other parties in accordance with Rule 5 of the Federal Rules of Civil Procedure. Plaintiffs' paper "ex parte" submissions to the Clerk's Office shall be returned. If Plaintiffs resubmit them, they will be placed on the docket, and Plaintiffs will be required to serve them on every party. In the future, Plaintiffs must first seek leave from Court before filing a motion they wish to be heard ex parte. Any such motion must identify a legal basis for the Court to consider the motion ex parte. Plaintiffs must serve the filings at D.I. 54 and D.I. 56 on the other parties in accordance with Rule 5 of the Federal Rules of Civil Procedure and file Certificates of Service on the docket on or before July 5, 2024. Should Plaintiffs wish the Court to review those submissions ex parte, they must seek leave of Court and identify a legal basis. ( Notice of Compliance deadline set for 7/5/2024.). Signed by Judge Jennifer L. Hall on 6/28/2024. (jfm) (Entered: 06/28/2024) |
| 07/03/2024 | 65 | RESPONSE to Order re 64 Order **-** filed by Jorge Rodriguez, III. (Attachments: # 1 Exhibit)(Rodriguez, Jorge) Modified on 7/3/2024 (ceg). (Entered: 07/03/2024) |
| 07/04/2024 | 66 | ANSWERING BRIEF in Opposition re 60 MOTION for Leave to File *UNDER FRCP 60(b)(2) DUE TO FRAUD AGAINST PLAINTIFFS*, 54 MOTION, 61 Emergency MOTION to Expedite *pending Motions*, 59 Emergency MOTION to Seal Case *PRIVILEGES FOR SEALED E-FILING, TEMPORARY SEALING, AND CAPTION MODIFICATION* filed by Jorge Rodriguez, III.Reply Brief due per Local Rules is 7/11/2024. (Attachments: # 1 Appendix)(Rodriguez, Jorge) (Entered: 07/04/2024) |
| 07/05/2024 | 67 | MOTION for Leave to File *Pray for Seal of D.I.54, D.I.56 and subsequent documents* **-** filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 07/05/2024) |
| 07/08/2024 | 68 | MOTION for Leave to File *EX PARTE MEMORANDUM RELATED TO POTENTIAL PLAINTIFFS IN SUPPORT OF PLAINTIFFS' D.I.54 AND SUBSEQUENT EX PARTE FILINGS* **-** filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 07/08/2024) |
| 07/08/2024 | 69 | MOTION for Leave to File *SEALED FILING OF THREATS RECEIVED BY A PLAINTIFF* **-** filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 07/08/2024) |
| 07/09/2024 | 70 | MEMORANDUM in Support re 60 MOTION for Leave to File *UNDER FRCP 60(b)(2) DUE TO FRAUD AGAINST PLAINTIFFS*, 54 MOTION, 67 MOTION for Leave to File *Pray for Seal of D.I.54, D.I.56 and subsequent documents*, 66 Answering Brief in Opposition, 65 Response to Order, 58 Answering Brief in Opposition, 61 Emergency MOTION to Expedite *pending Motions*, 63 Response to Motion, 59 Emergency MOTION to Seal Case *PRIVILEGES FOR SEALED E-FILING, TEMPORARY SEALING, AND CAPTION MODIFICATION*, 68 MOTION for Leave to File *EX PARTE MEMORANDUM RELATED TO POTENTIAL PLAINTIFFS IN SUPPORT OF PLAINTIFFS' D.I.54 AND SUBSEQUENT EX PARTE FILINGS*, 69 MOTION for Leave to File *SEALED FILING OF THREATS RECEIVED BY A PLAINTIFF MEMORANDUM OF LAW D.I.54 and D.I.56 drawing from report of Special Master Pincus* filed by Jorge Rodriguez, III.Answering Brief/Response due date per Local Rules is 7/23/2024. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit Exhibit A: Case 1:17-mc-00151-LPS Document 1155) (Rodriguez, Jorge) (Entered: 07/09/2024) |
| 07/10/2024 | 71 | Letter to The Honorable Jennifer L. Hall from Alexandra M. Cumings regarding Plaintiffs filings at D.I. 65-70 to request a single, omnibus response to the filings. (Cumings, Alexandra) (Entered: 07/10/2024) |
| 07/10/2024 | 72 | ANSWERING BRIEF in Opposition *D.I.71 - DEFENDANTS' REQUEST TO FILE AN OMNIBUS RESPONSE* filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 07/10/2024) |
| 07/10/2024 | 73 | Emergency MOTION to Expedite *PENDING EX PARTE MOTIONS, REQUESTS AND PAPER SUBMISSIONS -* filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 07/10/2024) |
| 07/12/2024 | 74 | ORAL ORDER: Defendants may file an omnibus response to Plaintiffs' filings at D.I. 65-70, 72-73 and any subsequent related filings on or before July 24, 2024. Ordered by Judge Jennifer L. Hall on 7/12/2024. (twk) (Entered: 07/12/2024) |
| 07/16/2024 | 75 | Emergency OPENING BRIEF in Support re 54 MOTION, 68 MOTION for Leave to File *EX PARTE MEMORANDUM RELATED TO POTENTIAL PLAINTIFFS IN SUPPORT OF PLAINTIFFS' D.I.54 AND SUBSEQUENT EX PARTE FILINGS*, 67 MOTION for Leave to File *Pray for Seal of D.I.54, D.I.56 and subsequent documents*, 73 Emergency MOTION to Expedite *PENDING EX PARTE MOTIONS, REQUESTS AND PAPER SUBMISSIONS*, 60 MOTION for Leave to File *UNDER FRCP 60(b)(2) DUE TO FRAUD AGAINST PLAINTIFFS*, 59 Emergency MOTION to Seal Case *PRIVILEGES FOR SEALED E-FILING, TEMPORARY SEALING, AND CAPTION MODIFICATION*, 69 MOTION for Leave to File *SEALED FILING OF THREATS RECEIVED BY A PLAINTIFF*, 61 Emergency MOTION to Expedite *pending Motions* filed by Jorge Rodriguez, III.Answering Brief/Response due date per Local Rules is 7/30/2024. (Rodriguez, Jorge) (Entered: 07/16/2024) |
| 07/24/2024 | 76 | RESPONSE to Motion re 68 MOTION for Leave to File *EX PARTE MEMORANDUM RELATED TO POTENTIAL PLAINTIFFS IN SUPPORT OF PLAINTIFFS' D.I.54 AND SUBSEQUENT EX PARTE FILINGS*, 67 MOTION for Leave to File *Pray for Seal of D.I.54, D.I.56 and subsequent documents*, 69 MOTION for Leave to File *SEALED FILING OF THREATS RECEIVED BY A PLAINTIFF*, 73 Emergency MOTION to Expedite *PENDING EX PARTE MOTIONS, REQUESTS AND PAPER SUBMISSIONS CITGO Defendants' Response to Plaintiffs' Miscellaneous Requests for Relief* filed by CITGO Holding, Citgo Petroleum Corporation, PDV America, PDV Holding. (Andersen, Kirk) (Entered: 07/24/2024) |
| 07/31/2024 | 77 | [SEALED] Return of Undeliverable Mail sent to Plaintiff 4, Plaintiff 5, Plaintiff 6, and Plaintiff 7 (D.I. 64 ). (jfm) (Entered: 07/31/2024) |
| 08/07/2024 | 78 | SUR-REPLY BRIEF re 60 MOTION for Leave to File *UNDER FRCP 60(b)(2) DUE TO FRAUD AGAINST PLAINTIFFS*, 54 MOTION, 68 MOTION for Leave to File *EX PARTE MEMORANDUM RELATED TO POTENTIAL PLAINTIFFS IN SUPPORT OF PLAINTIFFS' D.I.54 AND SUBSEQUENT EX PARTE FILINGS*, 67 MOTION for Leave to File *Pray for Seal of D.I.54, D.I.56 and subsequent documents*, 69 MOTION for Leave to File *SEALED FILING OF THREATS RECEIVED BY A PLAINTIFF*, 73 Emergency MOTION to Expedite *PENDING EX PARTE MOTIONS, REQUESTS AND PAPER SUBMISSIONS*, 61 Emergency MOTION to Expedite *pending Motions*, 59 Emergency MOTION to Seal Case *PRIVILEGES FOR SEALED E-FILING, TEMPORARY SEALING, AND CAPTION MODIFICATION REFERRED TO OPPOSITION TO D.I.76 DEFENDANTS' OMNIBUS RESPONSE TO PLAINTIFFS' MISCELLANEOUS* |

| | | |
|---|---|---|
| | | *REQUESTS FOR RELIEF* filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 08/07/2024) |
| 08/09/2024 | 79 | Emergency MOTION to Expedite *PLAINTIFFS' D.I.78 RESPONSE TO DEFENDANTS' D.I. 76 AND OTHER PENDING MOTIONS* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 08/09/2024) |
| 08/14/2024 | 80 | RESPONSE to Motion re 79 Emergency MOTION to Expedite *PLAINTIFFS' D.I.78 RESPONSE TO DEFENDANTS' D.I. 76 AND OTHER PENDING MOTIONS* filed by CITGO Holding, Citgo Petroleum Corporation, PDV America, PDV Holding. (Andersen, Kirk) (Entered: 08/14/2024) |
| 08/14/2024 | 81 | SUR-REPLY BRIEF re 60 MOTION for Leave to File *UNDER FRCP 60(b)(2) DUE TO FRAUD AGAINST PLAINTIFFS*, 54 MOTION, 68 MOTION for Leave to File *EX PARTE MEMORANDUM RELATED TO POTENTIAL PLAINTIFFS IN SUPPORT OF PLAINTIFFS' D.I.54 AND SUBSEQUENT EX PARTE FILINGS*, 67 MOTION for Leave to File *Pray for Seal of D.I.54, D.I.56 and subsequent documents*, 79 Emergency MOTION to Expedite *PLAINTIFFS' D.I.78 RESPONSE TO DEFENDANTS' D.I. 76 AND OTHER PENDING MOTIONS*, 69 MOTION for Leave to File *SEALED FILING OF THREATS RECEIVED BY A PLAINTIFF*, 73 Emergency MOTION to Expedite *PENDING EX PARTE MOTIONS, REQUESTS AND PAPER SUBMISSIONS*, 61 Emergency MOTION to Expedite *pending Motions*, 59 Emergency MOTION to Seal Case *PRIVILEGES FOR SEALED E-FILING, TEMPORARY SEALING, AND CAPTION MODIFICATION* filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 08/14/2024) |
| 08/14/2024 | 82 | Return of Undeliverable Mail D.I. 64 sent to Ivan R. Freites C. Return to sender. Attempted - not known. Unable to forward. (Attachments: # 1 Order) (mrr) (Entered: 08/15/2024) |
| 08/28/2024 | 83 | MOTION to Seal Document - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 08/28/2024) |
| 08/29/2024 | 84 | Emergency MOTION for Leave to File *Official Document under Seal* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 08/29/2024) |
| 08/30/2024 | 85 | ORDER regarding Pending Motions (D.I. 54 , 59 , 60 , 61 , 67 , 68 , 69 , 73 , 79 , 83 , 84 ). (*See Order for details). Signed by Judge Jennifer L. Hall on 8/30/2024. (ceg) (Entered: 08/30/2024) |
| 09/03/2024 | 86 | Emergency RESPONSE to Order re 85 Order *Motion for Stay and Reconsideration* filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 09/03/2024) |
| 09/06/2024 | 87 | Emergency MOTION to Expedite *STAY PRAYED IN MOTION D.I.86 (STAY ON ORDER D.I. 85)* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 09/06/2024) |
| 09/09/2024 | 88 | Emergency MOTION to Stay re 86 Response to Order, 85 Order *MOTION TO STAY PENDING RECONSIDERATION* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 09/09/2024) |
| 09/11/2024 | 89 | MOTION for Leave to File *the attached Certificate of Service in compliance with the Courts Order D.I. 85.* - filed by Jorge Rodriguez, III. (Attachments: # 1 Certificate of Service)(Rodriguez, Jorge) (Entered: 09/11/2024) |

| | | |
|---|---|---|
| 09/11/2024 | 90 | ANSWERING BRIEF in Opposition re 87 Emergency MOTION to Expedite *STAY PRAYED IN MOTION D.I.86 (STAY ON ORDER D.I. 85)*, 88 Emergency MOTION to Stay re 86 Response to Order, 85 Order *MOTION TO STAY PENDING RECONSIDERATION* filed by CITGO Holding, Citgo Petroleum Corporation, PDV Holding.Reply Brief due date per Local Rules is 9/18/2024. (Cumings, Alexandra) (Entered: 09/11/2024) |
| 09/12/2024 | 91 | REPLY BRIEF *TO DEFENDANTS OPOSITION, D.I.90* filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 09/12/2024) |
| 09/16/2024 | 92 | MOTION for Leave to File *Third Amended Complaint* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 09/16/2024) |
| 09/20/2024 | 93 | ORAL ORDER: The Motion for Leave to File a Certificate of Service (D.I. 89 ) is terminated. A motion was not required as Plaintiff was only ordered to file a certificate of service as to D.I. 54 and 56 . The certificate of service attached to D.I. 89 is accepted as filed. Ordered by Judge Jennifer L. Hall on 9/20/2024. (ceg) (Entered: 09/20/2024) |
| 09/25/2024 | 94 | Return of Undeliverable Mail D.I. 64 and Proposed Motions not yet filed sent to Ivan R. Freites C. Return to sender. Attempted - not known. Unable to forward. (vfm) (Entered: 09/26/2024) |
| 09/30/2024 | 95 | RESPONSE to Motion re 92 MOTION for Leave to File *Third Amended Complaint* filed by CITGO Holding, Citgo Petroleum Corporation, PDV Holding. (Andersen, Kirk) (Entered: 09/30/2024) |
| 10/02/2024 | 96 | REPLY BRIEF re 92 MOTION for Leave to File *Third Amended Complaint REPLY TO DEFENDANTS DI 95* filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 10/02/2024) |
| 10/23/2024 | 97 | MOTION to Expedite *Pending Orders and Decisions Related to D.I. 96 and Previous Filings* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 10/23/2024) |
| 11/05/2024 | 98 | NOTICE of by Jorge Rodriguez, III re 54 MOTION, 96 Reply Brief, 92 MOTION for Leave to File *Third Amended Complaint*, 97 MOTION to Expedite *Pending Orders and Decisions Related to D.I. 96 and Previous Filings PLAINTIFFS' NOTICE OF DEATH THREATS AGAINST OFFENDER GUSTAVO LAINETTE AND REQUEST FOR MEASURES TO PROTECT THE INTEGRITY OF THE PROCEEDINGS* (Attachments: # 1 Appendix, # 2 Appendix)(Rodriguez, Jorge) (Entered: 11/05/2024) |
| 11/15/2024 | 99 | Emergency MOTION for Protective Order *and Expedited Relief due to recent imprisonment of Offender Gustavo LAINETTE* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 11/15/2024) |
| 11/15/2024 | 100 | MOTION to Seal - *PLAINTIFFS' MOTION FOR LEAVE TO FILE EX PARTE AND UNDER SEAL CONFIDENTIAL EVIDENCE PERTAINING TO THE ILLEGAL FINANCING OF CAMPAIGN TO HARM THE INTEGRITY OF THESE PROCEEDINGS BY DEFENDANTS* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 11/15/2024) |
| 11/19/2024 | 101 | RESPONSE to Motion re 99 Emergency MOTION for Protective Order and Expedited Relief due to recent imprisonment of Offender Gustavo Lainette and MOTION to Strike, filed by Citgo Petroleum Corporation, PDV Holding, CITGO Holding. (Attachments: # 1 Text of Proposed Order)(Cumings, Alexandra) Modified on 12/3/2024 (ceg). (Entered: 11/19/2024) |
| 11/21/2024 | 102 | REPLY BRIEF in Opposition and MOTION to Strike re 101 Response to Motion re 99 Emergency Motion for Protective Order and Expedited Relief due to recent imprisonment |

| | | of Offender Gustavo Lainette(Rodriguez, Jorge) Modified docket text on 11/25/2024 (ceg). (Entered: 11/21/2024) |
|---|---|---|
| 11/21/2024 | 103 | MOTION for Sanctions *due to Tortious Interference* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 11/21/2024) |
| 11/22/2024 | 104 | MOTION for Sanctions *against Yon Goicoechea, Gustavo Marcano and Yon Goicoechea* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 11/22/2024) |
| 12/02/2024 | 105 | RESPONSE to Motion re 100 MOTION to Seal - *PLAINTIFFS' MOTION FOR LEAVE TO FILE EX PARTE AND UNDER SEAL CONFIDENTIAL EVIDENCE PERTAINING TO THE ILLEGAL FINANCING OF CAMPAIGN TO HARM THE INTEGRITY OF THESE PROCEEDINGS BY DEFENDANTS* filed by Citgo Petroleum Corporation, PDV Holding, CITGO Holding. (Cumings, Alexandra) (Entered: 12/02/2024) |
| 12/02/2024 | 106 | REPLY in Support of 101 Motion to Strike, filed by Citgo Petroleum Corporation, PDV Holding, CITGO Holding. (Cumings, Alexandra) Modified on 12/3/2024 (ceg). (Entered: 12/02/2024) |
| 12/05/2024 | 107 | RESPONSE to Motion re 104 MOTION for Sanctions *against Yon Goicoechea, Gustavo Marcano and Yon Goicoechea,* 103 MOTION for Sanctions *due to Tortious Interference CITGO Defendants' Opposition to Plaintiffs' Motions for Sanctions for Tortious Interference* filed by Citgo Petroleum Corporation, PDV Holding, CITGO Holding. (Cumings, Alexandra) (Entered: 12/05/2024) |
| 12/13/2024 | 108 | REPLY to Response to Motion re 100 MOTION to Seal - *PLAINTIFFS' MOTION FOR LEAVE TO FILE EX PARTE AND UNDER SEAL CONFIDENTIAL EVIDENCE PERTAINING TO THE ILLEGAL FINANCING OF CAMPAIGN TO HARM THE INTEGRITY OF THESE PROCEEDINGS BY DEFENDANTS* filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 12/13/2024) |
| 12/13/2024 | 109 | MEMORANDUM in Opposition re 106 Reply Brief, 99 Emergency MOTION for Protective Order *and Expedited Relief due to recent imprisonment of Offender Gustavo LAINETTE,* 102 Answering Brief in Opposition, 101 Response to Motion, *PLAINTIFFS MEMORANDUM IN RESPONSE TO CITGO DEFENDANTS REPLY IN SUPPORT OF MOTION TO STRIKE* filed by Jorge Rodriguez, III.Reply Brief due date per Local Rules is 12/20/2024. (Rodriguez, Jorge) (Entered: 12/13/2024) |
| 12/13/2024 | 110 | Emergency MOTION for Sanctions *AGAINST DEFENDANTS AND THEIR COUNSEL* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 12/13/2024) |
| 12/18/2024 | 111 | REPLY to 107 Defendants' Opposition to Motion for Sanctions, filed by Jorge Rodriguez, III. (Rodriguez, Jorge) Modified docket text on 12/19/2024 (ceg). (Entered: 12/18/2024) |
| 12/18/2024 | 112 | NOTICE of by Jorge Rodriguez, III *Notification of Motion for Sanctions Medina et al* (Attachments: # 1 Exhibit, # 2 Exhibit)(Rodriguez, Jorge) (Entered: 12/18/2024) |
| 12/27/2024 | 113 | RESPONSE to Motion re 110 Emergency MOTION for Sanctions *AGAINST DEFENDANTS AND THEIR COUNSEL* filed by Citgo Petroleum Corporation, PDV Holding, CITGO Holding. (Andersen, Kirk) (Entered: 12/27/2024) |
| 12/31/2024 | 114 | MOTION to Dismiss for Lack of Prosecution - filed by Citgo Petroleum Corporation, PDV Holding, CITGO Holding. (Attachments: # 1 Certificate of Service to Motion to Dismiss, # 2 Text of Proposed Order Granting the Citgo Defendants' Motion to Dismiss) (Cumings, Alexandra) (Entered: 12/31/2024) |
| 12/31/2024 | 115 | OPENING BRIEF in Support re 114 MOTION to Dismiss for Lack of Prosecution filed by Citgo Petroleum Corporation, PDV Holding, CITGO Holding.Answering Brief/Response due date per Local Rules is 1/14/2025. (Attachments: # 1 Certificate of |

| | | |
|---|---|---|
| | | Service to CITGO Defendants' Opening Brief)(Cumings, Alexandra) (Entered: 12/31/2024) |
| 01/02/2025 | 116 | NOTICE of Withdrawal of Appearance of Kenneth J. Nachbar by Citgo Petroleum Corporation, PDV Holding, CITGO Holding (Cumings, Alexandra) (Main Document 116 replaced on 1/2/2025) (ceg). (Entered: 01/02/2025) |
| 01/02/2025 | | CORRECTING ENTRY: The pdf for the Notice of Withdrawal of Appearance found at D.I. 116 has been replaced with a corrected version per counsel's request. (ceg) (Entered: 01/02/2025) |
| 01/09/2025 | 117 | REPLY BRIEF re 110 Emergency MOTION for Sanctions *AGAINST DEFENDANTS AND THEIR COUNSEL* filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 01/09/2025) |
| 01/09/2025 | 118 | RESPONSE to Motion re 114 MOTION to Dismiss for Lack of Prosecution filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 01/09/2025) |
| 01/10/2025 | 119 | Letter to Judge Hall, from Jose V. Carrasquero, in response to 103 MOTION for Sanctions due to Tortious Interference. (Attachments: # 1 Exhibit, # 2 Envelope)(jfm) (Entered: 01/10/2025) |
| 01/13/2025 | 120 | ORAL ORDER: Plaintiffs' requests for extension of time to file responses (D.I. 117 , 118 ) are GRANTED. On or before January 23, 2025, Plaintiffs shall file a Reply Brief regarding Plaintiffs' Motion for Sanctions (D.I. 110 ) and an Answering Brief regarding Defendants' Motion to Dismiss for Lack of Prosecution (D.I. 114 ). Ordered by Judge Jennifer L. Hall on 1/13/2025. (ceg) (Entered: 01/13/2025) |
| 01/23/2025 | 121 | ANSWERING BRIEF in Opposition re 114 MOTION to Dismiss for Lack of Prosecution filed by Jorge Rodriguez, III.Reply Brief due date per Local Rules is 1/30/2025. (Rodriguez, Jorge) (Entered: 01/23/2025) |
| 01/23/2025 | 122 | MEMORANDUM in Support re 103 MOTION for Sanctions *due to Tortious Interference*, 110 Emergency MOTION for Sanctions *AGAINST DEFENDANTS AND THEIR COUNSEL*, 104 MOTION for Sanctions *against Yon Goicoechea, Gustavo Marcano and Yon Goicoechea SUPPLEMENTAL MOTION FOR SANCTIONS TO INCLUDE Petroleos de Venezuela, S.A. (PDVSA) AND THE Junta Administradora Ad-Hoc de PDVSA* filed by Jorge Rodriguez, III.Answering Brief/Response due date per Local Rules is 2/6/2025. (Rodriguez, Jorge) (Entered: 01/23/2025) |
| 01/30/2025 | 123 | REPLY BRIEF re 114 MOTION to Dismiss for Lack of Prosecution filed by Citgo Petroleum Corporation, PDV Holding, CITGO Holding. (Cumings, Alexandra) (Entered: 01/30/2025) |
| 02/06/2025 | 124 | MEMORANDUM in Opposition re 122 MEMORANDUM in Support,, *Plaintiffs' "Supplemental" Motion for Sanctions* filed by Citgo Petroleum Corporation, PDV Holding, CITGO Holding.Reply Brief due date per Local Rules is 2/13/2025. (Cumings, Alexandra) (Entered: 02/06/2025) |
| 02/13/2025 | 125 | SUR-REPLY BRIEF re 114 MOTION to Dismiss for Lack of Prosecution filed by Jorge Rodriguez, III. (Attachments: # 1 MEMORANDUM IN SUPPORT OF PLAINTIFFS REPLY TO DEFENDANTS REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR WANT OF PROSECUTION (D.I. 123))(Rodriguez, Jorge) (Entered: 02/13/2025) |
| 02/13/2025 | 126 | SUR-REPLY BRIEF re 100 MOTION to Seal - *PLAINTIFFS' MOTION FOR LEAVE TO FILE EX PARTE AND UNDER SEAL CONFIDENTIAL EVIDENCE PERTAINING TO THE ILLEGAL FINANCING OF CAMPAIGN TO HARM THE INTEGRITY OF THESE PROCEEDINGS BY DEFENDANTS*, 104 MOTION for Sanctions *against Yon Goicoechea, Gustavo Marcano and Yon Goicoechea*, 110 Emergency MOTION for |

| | | |
|---|---|---|
| | | Sanctions *AGAINST DEFENDANTS AND THEIR COUNSEL*, 103 MOTION for Sanctions *due to Tortious Interference*, 114 MOTION to Dismiss for Lack of Prosecution filed by Jorge Rodriguez, III. (Attachments: # 1 Exhibit Southern District of Florida Doc 01 (Complaint) in case No. 1:25-cv-20465-BB)(Rodriguez, Jorge) (Entered: 02/13/2025) |
| 03/05/2025 | 127 | MOTION to Expedite *and respectful status request* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 03/05/2025) |
| 03/07/2025 | 128 | ORDER regarding Pending Motions (D.I. 54 , 86 , 87 , 88 , 92 , 97 , 98 , 99 , 100 , 103 , 104 , 110 , 122 , 127 ). (*See Order for details). Signed by Judge Jennifer L. Hall on 3/7/2025. (ceg) (Entered: 03/07/2025) |
| 03/20/2025 | 129 | Summons Issued as to CITGO Holding and Citgo Petroleum Corporation on 3/20/2025. (Attachments: # 1 Summons Issued, Citgo Petroleum Corporation)(jfm) (Entered: 03/20/2025) |
| 03/20/2025 | 130 | NOTICE of Plaintiffs' withdrawal without prejudice of Defendants Petrleos de Venezuela, S.A. (PDVSA), PDV HOLDING INC and the Junta Administradora Ad-Hoc de PDVSA by Jorge Rodriguez, III (Rodriguez, Jorge) (Entered: 03/20/2025) |
| 03/20/2025 | 131 | NOTICE of Proof of Service and Summons CITGO Petroleum Corporation and CITGO Holding by Jorge Rodriguez, III (Rodriguez, Jorge) (Entered: 03/20/2025) |
| 03/20/2025 | 132 | NOTICE of PLAINTIFFS' JUDICIAL NOTIFICATION OF LITIGATION IN THE SOUTHERN DISTRICT OF FLORIDA by Jorge Rodriguez, III (Rodriguez, Jorge) (Entered: 03/20/2025) |
| 03/20/2025 | 133 | MOTION for Writ re: PLAINTIFFS' REQUEST FOR GUIDANCE ON COURT ORDER DI 128 IN LIGHT OF VOLUNTARY WITHDRAWAL OF FSIA DEFENDANTS AND SERVICE COMPLETION ON CITGO DEFENDANTS - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 03/20/2025) |
| 03/24/2025 | 134 | NOTICE of Affidavit of Jorge Alejandro Rodriguez by Jorge Rodriguez, III re 128 Order (Rodriguez, Jorge) (Entered: 03/24/2025) |
| 03/27/2025 | 135 | NOTICE of Voluntary Dismissal of Defendant CITGO Petroleum Corporation by Jorge Rodriguez, III (Rodriguez, Jorge) (Entered: 03/27/2025) |
| 04/01/2025 | 136 | MOTION to Seal Document: *PLAINTIFFS REQUEST FOR GUIDANCE REGARDING FILING OF AMENDED COMPLAINT UNDER SEAL I. CONTEXT* - filed by Jorge Rodriguez, III. (Rodriguez, Jorge) (Entered: 04/01/2025) |
| 04/01/2025 | 137 | NOTICE of PLAINTIFF JORGE ALEJANDRO RODRIGUEZ SUPPLEMENTAL NOTICE TO THE COURT REGARDING RELATED CRIMINAL PROCEEDINGS ARISING FROM UNAUTHORIZED DISCLOSURE AND HARASSMENT by Jorge Rodriguez, III re 136 MOTION to Seal Document: *PLAINTIFFS REQUEST FOR GUIDANCE REGARDING FILING OF AMENDED COMPLAINT UNDER SEAL I. CONTEXT* (Rodriguez, Jorge) (Entered: 04/01/2025) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/09/2025 08:40:14 | | |
| PACER Login: | ggazso001 | Client Code: |

| Description: | Docket Report | Search Criteria: | 1:23-cv-00989-JLH Start date: 1/1/1975 End date: 4/9/2025 |
|---|---|---|---|
| Billable Pages: | 14 | Cost: | 1.40 |

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

IVAN R. FREITES, et al.,

Plaintiffs,

v.

PETRÓLEOS DE VENEZUELA, S.A., et al.,

Defendants.

Civil Action No. 1:23-CV-00989-JLH

## PLAINTIFF JORGE ALEJANDRO RODRIGUEZ' SUPPLEMENTAL NOTICE TO THE COURT REGARDING RELATED CRIMINAL PROCEEDINGS ARISING FROM UNAUTHORIZED DISCLOSURE AND HARASSMENT

Plaintiffs respectfully submit this supplemental notice to inform the Court of ongoing criminal proceedings in Switzerland related to unauthorized disclosure of confidential case information and continued acts of harassment directly affecting this litigation.

### I. BACKGROUND AND PROCEDURAL CONTEXT

On January 31, 2025, Plaintiff Jorge Alejandro Rodriguez filed a formal criminal complaint within the Kantonspolizei Zürich against Mr. Cesar Moya, a resident of Zürich, Switzerland. The complaint alleges acts of cyber harassment, defamation, hate speech, and obstruction of justice, primarily executed via Mr. Moya's verified X (formerly Twitter) account '@zuricht94' **jointly with Gustavo Lainette, José Vicente Carrasquero and other offenders known to this Court.**

## II. SUMMARY OF ALLEGATIONS

The complaint includes documented evidence that Mr. Moya jointly and in coordination with Mr. Lainette and Mr. Carrasquero published a series of defamatory, threatening, and misleading statements between September and October 2024. These communications falsely accused Plaintiffs of collusion with corrupt actors, financial misconduct, and misuse of litigation. More critically, Mr. Moya referenced sealed matters pending in this Court (Case No. 1:23-CV-00989-JLH), disseminating distorted information to the public in a manner that jeopardizes the safety of the Plaintiffs and impairs judicial integrity.

## III. COORDINATION WITH FORMER DEFENDANTS AND ESCALATING RISKS

There is credible evidence suggesting that Mr. Moya's campaign was coordinated and financially supported by former Defendants in this case, **including Petróleos de Venezuela, S.A. (PDVSA) and the Junta Administradora Ad-Hoc de PDVSA as well as individuals associated with said Defendants,  such as Horacio Medina and Yon Goicoechea.** These findings are part of Plaintiffs' forthcoming amended claims for tortious interference and obstruction supplementary to the claims known to the court in these proceedings. .

## IV. RELEVANCE AND REQUEST FOR JUDICIAL NOTICE

In light of these developments, Plaintiffs request that the Court take judicial notice of the criminal proceedings initiated in Switzerland and consider them when ruling on forthcoming motions for sealing, protection orders, and sanctions.

## V. CONCLUSION

These criminal proceedings underscore the severity of ongoing retaliatory conduct against the Plaintiffs and warrant heightened confidentiality and security measures. Plaintiffs

respectfully request that the Court take appropriate notice and remain advised that further information will be submitted as necessary.

Respectfully submitted,

/s/ Jorge Alejandro Rodriguez

Pro Se Plaintiff

Eichholzstrasse 2

6312 Steinhausen, Switzerland

Date: April 1, 2025

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-24176-CIV-ALTONAGA/Reid

IVAN R. FREITES C, *et al.*,

      Plaintiffs,

v.

ORLANDO VIERO-BLANCO, *et al.*,

      Defendants.

_____/

### **ORDER**

**THIS CAUSE** came before the Court *sua sponte*. On October 28, 2024, Plaintiffs filed a Complaint [ECF No. 1] stating 11 claims against several Defendants. Upon review, the Court finds the Complaint suffers from multiple deficiencies and must be dismissed. The Court explains.

***Shotgun Pleading.*** Under Federal Rule of Civil Procedure 8(a)(2), a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Id.* (alterations added). "Rule 8(a)(2)'s purpose is to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *LaCroix v. W. Dist. of Ky.*, 627 F. App'x 816, 818 (11th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Hence, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). Moreover, under Federal Rule of Civil Procedure 10(b), claims must be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *Id.*

"Complaints that violate either Rule 8(a)(2) or Rule 10(b) . . . are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (alteration added). Plaintiffs' Complaint runs afoul of both provisions.

"[A] typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (alteration added). Such a structure makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (citation omitted). For this reason, "shotgun pleadings are routinely condemned by the Eleventh Circuit." *Real Estate Mortg. Network, Inc. v. Cadrecha*, No. 11-cv-474, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)).

Plaintiffs' 11 claims for relief — which are not numbered, as required by Rule 10(b) — "incorporate by reference all preceding paragraphs[.]" (Compl. 12–18 (alteration added)).[1] By recycling every prior paragraph into subsequent claims, Plaintiffs make it difficult to ascertain what factual allegations and legal conclusions correspond to the second through eleventh claims. (*See id.*); *see also Beckwith v. Bellsouth Telecommc'ns Inc.*, 146 F. App'x 368, 372 (11th Cir. 2005). This is precisely the kind of shotgun pleading the Eleventh Circuit has repeatedly condemned, as "[t]he result is that [the second through eleventh] count[s] [are] replete with factual allegations [and legal conclusions] that could not possibly be material to th[ose] specific count[s]." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (alterations added).

**Fictitious-Party Pleading.** The Complaint also lists John Does 1–7 as Defendants. "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citation omitted). A limited exception exists when "the

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

plaintiff[s'] description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Id.* (alteration added; quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). In such circumstances, the description must be "sufficiently clear to allow service of process" on the fictitious defendant. *Dean*, 951 F.2d at 1216; *see also Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020). Plaintiffs' vague references to the fictitious Defendants — identified only by their alleged Twitter usernames — do not meet this narrow exception. (*See* Compl. 11).

*Counts II, III, V, and VI.* "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (citations omitted). "[O]nce a federal court determines that it is without subject matter jurisdiction, [it] is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (alteration added). As part of this inquiry, the Court must "assure [itself] of a litigant's standing under Article III[.]" *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1169 (11th Cir. 2006) (alterations added; citation omitted). Here, Plaintiffs lack standing with respect to Counts II, III, V, and VI.

In Count II, Plaintiffs allege that "Defendants knowingly used electronic communications, including social media platforms and email, as part of a scheme to harm and defraud Plaintiffs, in violation of [the federal wire fraud statute,] 18 U.S.C. [section] 1343." (Compl. 13 (alterations added)). But "[t]he federal wire . . . fraud statute[] [is a] criminal statute[] which do[es] not provide for civil remedies." *Austin v. Glob. Connection*, 303 F. App'x 750, 752 (11th Cir. 2008) (alterations added; citations omitted). "Furthermore, the Supreme Court has explained that private

3

citizens lack 'a judicially cognizable interest in the prosecution or nonprosecution of another.'" *Id.* (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 767 n.13 (2005)). Because the federal wire fraud statute "do[es] not create [a] private cause[] of action," "jurisdiction cannot be established on that basis." *Truthinadvertisingenforcers.com v. My Pillow, Inc.*, 17-cv-169, 2017 WL 382725, at *2 (M.D. Fla. Jan. 27, 2017) (alterations added; citations omitted).

In Count III, Plaintiffs allege that "Defendants used social media platforms to disseminate false and defamatory statements, targeting Plaintiffs with the intent to harm, in violation of [the Communications Decency Act,] 47 U.S.C. [section] 230" ("section 230"). (Compl. 13 (alterations added)). Without a statutory manifestation of congressional intent, however, "a private cause of action does not exist[,] and courts may not create one." *King v. Facebook, Inc.*, No. 22-15602, 2023 WL 5318464, at *1 (9th Cir. Aug. 18, 2023) (alteration adopted; other alteration added; citation and quotation marks omitted). Section 230 does not explicitly create a private right to sue, *see* 47 U.S.C. section 230, nor does its "language, structure, context, [or] legislative history" imply any congressional intent to establish one, *Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 5 F.4th 952, 958 (9th Cir. 2021).

In Count V, Plaintiffs allege that "Defendants engaged in tampering and retaliatory actions in violation of 18 U.S.C. [section] 1512 . . . by intimidating Plaintiffs to prevent their participation in legal proceedings." (Compl. 15 (alterations added)). Plaintiffs also allege "Defendants . . . violated 18 U.S.C. [section] 1513 . . . by retaliating against Plaintiffs for their legal advocacy, disclosing sealed information to cause harm." (*Id.* (alterations added)). Once again, however, "[neither] of these criminal statutes provides a private cause of action, [so Plaintiffs] may not assert them in this civil case." *Pena v. Raich*, No. 23-cv-23912, 2023 WL 7182226, at *2 (S.D. Fla. Nov. 1, 2023) (alterations added; citations and footnote call number omitted); *see also Smith v. JP*

4

*Morgan Chase*, 837 F. App'x 769, 770 (11th Cir. 2021) (noting "that criminal statutes do not provide for private civil causes of action, so it follows that [the plaintiff's] Title 18 allegations are also without merit because those criminal statutes do not provide for private causes of action." (alteration added; citation omitted)).

In Count VI, Plaintiffs allege that "Defendants' actions constitute cyberstalking and harassment across state lines in violation of 18 U.S.C. [section] 2261A." (Compl. 15 (alteration added)). "[T]here is no evidence" — in the plain language of the statute or otherwise — from which the Court "can infer that Congress intended to create a private right of action under [section] 2261A." *Rock v. BAE Sys., Inc.*, 556 F. App'x 869, 871 (11th Cir. 2014) (alterations added). Thus, as with Counts II and V, Plaintiffs lack standing with respect to Count VI, precluding the Court from entertaining the claim.

Accordingly, it is

**ORDERED AND ADJUDGED** that the Complaint **[ECF No. 1]** is **DISMISSED without prejudice**. Plaintiffs have until **November 12, 2024**, to submit an amended complaint correcting the foregoing deficiencies, including removing any claims for which there is no private cause of action, failing which the case will be dismissed without prejudice.

**DONE AND ORDERED** in Miami, Florida, this 30th day of October, 2024.

*Cecilia M. Altonaga*

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     Plaintiffs, *pro se*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

**IVAN R. FREITES C.,**

*Plaintiff,*

v.

**HORACIO MEDINA, et al.,**

*Defendants.*                                    **CASE NO.: 1:25-CV-20465-BB**

FILED BY _____ D.C.

MAR 19 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**IVAN FREITES, MIGUEL ENRIQUE OTERO,**
**and JORGE ALEJANDRO RODRIGUEZ,**

**Plaintiffs,**

**v.**

**HORACIO MEDINA, ORLANDO VIERA-BLANCO, GUSTAVO**

**LAINETTE, JOSE VICENTE CARRASQUERO, ALEXIS ORTIZ,**

**FEDERICO MEDINA, THAELMAN URGELLES, LUIS JOSE**

CHACON-PACHECO, YON GOICOECHEA, LINO CARRILLO, CENTER FOR LIBERAL DEMOCRACY DEVELOPMENT, INC., RESISTENCIA VENEZOLANA CORP., ASM INVESTING LLC, FREEDOM FOR VENEZUELA, INC., TEZCUA INVESTMENTS LLC, VENEZUELAN AMERICAN ENGAGEMENT FOUNDATION, INC., VENEZOLANOS Y AMERICANOS, INC. (VenAmerica), VENEZUELAN AMERICAN PETROLEUM ASSOCIATION (VAPA), LATINO COMMUNICATIONS LLC, and ALTAMIRA CINEMA CORP.,

Defendants.

CASE NO.: CASE NO.: 1:25-CV-20465-BB

<u>AMENDED COMPLAINT</u>

INCORPORATION OF COMPLETE AMENDED COMPLAINT BY REFERENCE

*Plaintiffs hereby file this summarized document for procedural clarity and convenience. Attached hereto, and incorporated by reference in its entirety, is Plaintiffs' full and detailed First Amended Complaint (121 pages), which sets forth comprehensively the factual allegations, legal claims, and relief requested against each Defendant. Plaintiffs respectfully direct the Court and all parties to*

*that attached complete document for a full recitation and description of their claims and allegations.*

Plaintiffs Ivan Freites, Miguel Enrique Otero, and Jorge Alejandro Rodriguez (collectively, "Plaintiffs"), appearing pro se, pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, hereby file their Amended Complaint against all named Defendants, and state:

1. Plaintiffs fully incorporate and reallege all allegations, facts, claims, and causes of action set forth in the original Complaint, as if fully restated herein.

2. This Amended Complaint is timely filed within the 21-day period following service of Defendants' Motion to Dismiss under Rule 12(b), filed on February 26, 2025.

3. Plaintiffs incorporate additional factual allegations, revised and clarified claims, jurisdictional arguments, and all previously identified relief requests.

**COUNTS ALLEGED:**

Count I: Violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962 et seq.

Count II: Civil Conspiracy (Florida Common Law)

Count III: Defamation (Libel and Slander)

Count IV: Invasion of Privacy – Public Disclosure of Private Facts

Count V: Intentional Infliction of Emotional Distress (IIED)

Count VI: Negligence

Count VII: Conspiracy to Interfere with Civil Rights, 42 U.S.C. §§ 1985(2)-(3)

Count VIII: Neglect to Prevent Civil Rights Violations, 42 U.S.C. § 1986

Count IX: Aiding and Abetting (Common Law) (Against All Defendants)

Count X: Violation of the Law of Nations and Alien Tort Statute (28 U.S.C. § 1350)

## PRAYER FOR RELIEF:

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Award compensatory damages for reputational harm, emotional distress, financial losses, and other consequential damages; b. Award treble damages as allowed by statute; c. Award punitive damages due to Defendants' malicious and intentional misconduct; d. Grant injunctive relief prohibiting Defendants from further defamatory or retaliatory actions; e. Award reasonable attorneys' fees and costs, as permitted by applicable statutes; f. Grant declaratory relief affirming the wrongful nature of Defendants' actions; g. Provide pre- and post-judgment interest as permitted by law; h. Order any other relief deemed just and proper by this Court.

**DEMAND FOR JURY TRIAL:**

Plaintiffs hereby demand a jury trial on all issues so triable.

**CERTIFICATION AND CLOSING:**

Under Federal Rule of Civil Procedure 11, Plaintiffs certify that this Amended

Complaint is:

1. Not presented for any improper purpose;

2. Supported by existing law or nonfrivolous argument;

3. Factually supported or likely to have evidentiary support upon reasonable

   investigation and discovery;

4. Compliant with Rule 11 requirements.

Plaintiffs will promptly inform the Clerk's Office of any address changes.

Respectfully submitted,

**/s/ Ivan R. Freites C.**

**Ivan R. Freites C., Pro Se**

℅ Villasana

4370 NW 107 Ave, Apt. 102

Doral, FL 33178

Email: freites.usdcsf.1.25.cv.20465.bb@gmail.com

---

**Miguel Enrique Otero (Plaintiff, Pro Se)** 

**March 10th, 2025 In Madrid, Spain.**

**Mailing address:** % RODRIGUEZ, Eichholzstrasse 2, 6312-Steinhausen, CH

---

**Jorge Alejandro Rodriguez (Plaintiff, Pro Se)** 

**March 12th, 2025 In Zürich, Switzerland.**

**Mailing address:** Eichholzstrasse 2, 6312-Steinhausen, CH

**CERTIFICATE OF SERVICE**

I hereby certify that on this **19th day of March, 2025**, I electronically filed the foregoing

**Document** with the Clerk of the Court using the **CM/ECF system**, which will send a

notice of electronic filing to all counsel of record.

Dated: **On this same same as above of  2025**

**Respectfully submitted,**

/s/ Ivan R. Freites C.
 **Ivan R. Freites C., Pro Se**
 % Villasana
 4370 NW 107 Ave, Apt. 102
 Doral, FL 33178
 Email:   freites.usdcsf.1.25.cv.20465.bb@gmail.com

## TABLE OF AUTHORITIES

**CASES**

Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)

Haddle v. Garrison, 525 U.S. 121 (1998)

H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)

New York Times Co. v. Sullivan, 376 U.S. 254 (1964)

Robertson v. Wegmann, 436 U.S. 584 (1978)

Sosa v. Alvarez-Machain, 542 U.S. 692 (2004)

**STATUTES AND REGULATIONS**

Alien Tort Statute, 28 U.S.C. § 1350

Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988

Civil Rights Conspiracy, 42 U.S.C. §§ 1985(2), (3)

Neglect to Prevent Conspiracy, 42 U.S.C. § 1986

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968

RICO Civil Remedies Provision, 18 U.S.C. § 1964(c)

Wire Fraud, 18 U.S.C. § 1343

Obstruction of Justice, 18 U.S.C. § 1503

Witness Tampering and Retaliation, 18 U.S.C. §§ 1512, 1513

Hobbs Act Extortion, 18 U.S.C. § 1951

Money Laundering, 18 U.S.C. §§ 1956, 1957

Foreign Corrupt Practices Act (FCPA), 15 U.S.C. §§ 78dd-1, et seq.

Internal Revenue Code, Tax Fraud and False Statements, 26 U.S.C. § 7206

**JURISDICTIONAL AND PROCEDURAL RULES**

Federal Question Jurisdiction, 28 U.S.C. § 1331

Civil Rights Jurisdiction, 28 U.S.C. § 1343

Supplemental Jurisdiction, 28 U.S.C. § 1367

Venue Statute, 28 U.S.C. § 1391

Florida Long-Arm Statute, Fla. Stat. § 48.193

Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 38